Andrew Schwartz (N.J. Bar No. 092242013)
Andrew C. Bernstein (admitted *pro hac vice*)
KASOWITZ LLP
1633 Broadway
New York, New York 10019
(212) 506-1700
ASchwartz@Kasowitz.com
ABernstein@Kasowitz.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID PIEGARO,<br><br>                     Plaintiff,<br><br>          v.<br><br>THE TRUSTEES OF PRINCETON UNIVERSITY and KENNETH E. STROTHER, JR.,<br><br>                     Defendants. | Civil Action No. 3:25-cv-13919-ZNQ-JTQ |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

INTRODUCTION .................................................................................................................. 1

BACKGROUND ................................................................................................................... 5

   I.    Princeton's Chief of Police Unjustifiably Attacks Piegaro .................................... 5

   II.   Chief Strother Fabricates Evidence to Pursue Charges Against Piegaro ............... 7

   III.  Princeton Conducts a Sham Internal Disciplinary Investigation ........................... 8

   IV.  Piegaro Is Found Not Guilty at Trial .................................................................... 9

LEGAL STANDARD ......................................................................................................... 10

ARGUMENT ...................................................................................................................... 10

   I.    Defendants Improperly Request Judicial Notice of Disputed Facts ................... 10

   II.   Piegaro Properly Pleads His Constitutional and Assault Claims (Counts 1-6) ... 12

       A.   Post-Acquittal Commentary on Probable Cause Does Not Justify Dismissing Piegaro's Retaliation, Unlawful Arrest/False Imprisonment, or Malicious Prosecution Claims (Counts 1-2, 5) ............................................ 12

       B.   Piegaro Properly Pleads Excessive Force (Count 3) .................................. 19

       C.   Piegaro Properly Pleads Assault and Battery (Count 4) ............................. 22

       D.   Piegaro Properly Pleads Fabrication of Evidence (Count 6) ...................... 24

   III.  Piegaro Properly Pleads *Monell* Liability Against Princeton (Count 7)........... 26

       A.   Piegaro Pleads Single-Incident Liability ................................................... 26

       B.   Piegaro Pleads Deliberate Indifference...................................................... 29

   IV.  Piegaro Properly Pleads Emotional Distress Torts ............................................ 32

       A.   Intentional Infliction of Emotional Distress (Count 8)............................... 32

       B.   Negligent Infliction of Emotional Distress (Count 9) ................................ 35

CONCLUSION.................................................................................................................... 38

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acerra v. Thomas*,
  2024 WL 3226814 (D.N.J. June 28, 2024)...............................................................21

*Allen v. Umbrell*,
  2015 WL 5916862 (E.D. Pa. Oct. 9, 2015).............................................................28

*A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*,
  372 F.3d 572 (3d Cir. 2004)...................................................................................27

*Bagic v. Univ. of Pittsburgh*,
  773 F. App'x 84 (3d Cir. 2019) ........................................................................10, 11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................................................10

*Berg v. County of Allegheny*,
  219 F.3d 261 (3d Cir. 2000) (per curiam)...............................................................27

*Black v. Montgomery County*,
  835 F.3d 358 (3d Cir. 2016)........................................................................26, 31, 32

*Boseman v. Upper Providence Township*,
  680 F. App'x 65 (3d Cir. 2017) ........................................................................24, 25

*Brijall v. Harrah's Atl. Cty.*,
  905 F. Supp. 2d 617 (D.N.J. 2021) .........................................................................23

*Bynum v. Trs. of the Univ. of Pa.*,
  2014 WL 6473344 (E.D. Pa. Nov. 18, 2014) .........................................................28

*Campbell v. Balon*,
  2017 WL 2880856 (M.D. Pa. July 6, 2017)......................................................18, 19

*Carter v. City of Philadelphia*,
  181 F.3d 339 (3d Cir. 1999).............................................................................29, 31

*Carter v. Reynolds*,
  815 A.2d 460 (N.J. 2003)........................................................................................23

*Castro v. Delaware River Port Auth.*,
  2014 WL 2916506 (D.N.J. June 26, 2014) .............................................................28

*Colello v. Bayshore Cmty. Health Servs.*,
  2010 WL 1753164 (N.J. Super. Ct. App. Div. Apr. 28, 2010) ...............................................23

*Collick v. William Paterson Univ.*,
  2016 WL 6824374 (D.N.J. Nov. 17, 2016) ......................................................................37, 38

*Connick v. Thompson*,
  563 U.S. 51 (2011) .........................................................................................................27

*Dansby v. Borough of Paulsboro*,
  1995 WL 352995 (D.N.J. June 7, 1995) .............................................................................17

*Davis v. Devereux Found.*,
  37 A.3d 469 (N.J. 2012) .................................................................................................23

*Decker v. Borough of Hughestown*,
  2009 WL 4406142 (M.D. Pa. Nov. 25, 2009) ................................................................30, 31

*District of Columbia v. Wesby*,
  583 U.S. 48 (2018) .........................................................................................................32

*Dobbins v. Hudson United Bank*,
  2004 WL 2913182 (E.D. Pa. Dec. 16, 2004) ......................................................................22

*Doe v. Princeton Univ.*,
  30 F.4th 335 (3d Cir. 2022) .............................................................................................11

*Doss v. Osty*,
  2011 WL 2559558 (D.N.J. June 27, 2011) .....................................................................23, 24

*El v. City of Pittsburgh*,
  975 F.3d 327 (3d Cir. 2020).............................................................................................20

*Evans v. Newark City*,
  152 F.4th 537 (3d Cir. 2025) ...........................................................................................17

*F.K. v. Integrity House, Inc.*,
  213 A.3d 937 (N.J. Super. Ct. App. Div. 2019).....................................................................37

*Fields v. City of Philadelphia*,
  862 F.3d 353 (3d Cir. 2017).............................................................................................31

*Forrest v. Parry*,
  930 F.3d 93 (3d Cir. 2019)....................................................................................27, 29, 30

*Forsman v. Dykstra*,
  2023 WL 3145165 (D.N.J. Apr. 28, 2023) .....................................................................24, 33

*Gaymon v. Esposito,*
  2013 WL 4446973 (D.N.J. Aug. 16, 2013) ...................................................23

*Glob. Network Commc'ns, Inc. v. City of New York,*
  458 F.3d 150 (2d Cir. 2006)...................................................................11

*Goodwin v. Conway,*
  836 F.3d 321 (3d Cir. 2016)................................................................13, 14

*Graham v. Connor,*
  490 U.S. 386 (1989)..........................................................................32

*Graham-Smith v. Wilkes-Barre Police Dep't,*
  739 F. App'x 727 (3d Cir. 2018) ...........................................................21

*Groman v. Township of Manalapan,*
  47 F.3d 628 (3d Cir. 1995)...................................................................22

*Gross v. Cairo,*
  2023 WL 8646265 (3d Cir. Dec. 14, 2023) ...............................................21

*Hardwicke v. Am. Boychoir Sch.,*
  902 A.2d 900 (N.J. 2006)....................................................................35

*Henderson v. Fisher,*
  631 F.2d 1115 (3d Cir. 1980)...............................................................26

*Hendrix v. City of Trenton,*
  2009 WL 5205996 (D.N.J. Dec. 29, 2009)................................................22

*Jean Alexander Cosms., Inc. v. L'Oreal USA, Inc.,*
  458 F.3d 244 (3d Cir. 2006).................................................................17

*Jones v. Pi Kappa Alpha Int'l Fraternity, Inc.,*
  2017 WL 4074547 (D.N.J. Sept. 13, 2017) ...............................................38

*Khetani v. Plainsboro Township,*
  2024 WL 3861043 (D.N.J. Aug. 19, 2024) ...............................................25

*Kwanzaa v. Tell,*
  2022 WL 16756334 (3d Cir. Nov. 8, 2022)...............................................14

*Kwanzaa v. Tell,*
  2024 WL 2991194 (D.N.J. June 14, 2024) ................................................14

*In re Lipitor Antitrust Litig.,*
  868 F.3d 231 (3d Cir. 2017)................................................................12

iv

*Martinez v. City of Asbury Park*,
   2021 WL 1343837 (D.N.J. Mar. 5, 2021)...................................................................27, 29, 30

*Martinolich v. N.J. State Police*,
   2025 WL 3011977(N.J. Super. Ct. App. Div. Oct. 28, 2025) ..................................34

*Mason v. Sportsman's Pub*,
   702 A.2d 1301 (N.J. Super. Ct. App. Div. 1997)....................................................35

*Melone v. Cryoport Inc.*,
   2024 WL 1743108 (D.N.J. Apr. 23, 2024) ...............................................................36

*Merkle v. Upper Dublin Sch. Dist.*,
   211 F.3d 782 (3d. Cir. 2000)......................................................................................13

*Merritt v. Kelly*,
   2023 WL 7220142 (N.J. Super. Ct. App. Div. Nov. 2, 2023) .............................15, 16, 18, 19

*Montgomery v. De Simone*,
   159 F.3d 120 (3d Cir. 1998)........................................................................................13

*Morales v. Maxwell*,
   2024 WL 4651757 (D.N.J. Nov. 1, 2024) (Quraishi, J.) .......................................14

*Moran v. Hawthorne Police Dep't*,
   2025 WL 842315 (D.N.J. Mar. 18, 2025)..................................................................32

*Moretz v. Trs. of Princeton*,
   2023 WL 9017155 (D.N.J. Dec. 29, 2023) ...............................................................37

*MSKP Oak Grove, LLC v. Venuto*,
   875 F. Supp. 2d 426 (D.N.J. 2012) ...........................................................................15

*Nunnery v. Salesian Missions, Inc.*,
   2008 WL 1743436 (D.N.J. Apr. 15, 2008) ...............................................................33

*O'Neal v. Middletown Township*,
   2019 WL 77066 (D.N.J. Jan. 2, 2019) ......................................................................32

*Olivieri v. Y.M.F. Carpet, Inc.*,
   897 A.2d 1003 (N.J. 2006)..........................................................................................18

*Onely v. Redner's Mkts., Inc.*,
   2022 WL 1773606 (E.D. Pa. June 1, 2022)...............................................................29

*Peronace v. City of Philadelphia*,
   2024 WL 1660543 (E.D. Pa. Apr. 16, 2024) ...................................................30, 31

*Pinkston v. City of Jersey City*,
    2020 WL 4251485 (D.N.J. July 24, 2020)..............................................................32

*Powell v. Seton Hall Univ.*,
    2022 WL 16922100 (D.N.J. Nov. 14, 2022) ....................................................36, 37

*Rivas v. City of Passaic*,
    365 F.3d 181 (3d Cir. 2004)...................................................................................21

*Ryanair DAC v. Booking Holdings Inc.*,
    636 F. Supp. 3d 490 (D. Del. 2022).......................................................................12

*Sanders v. Jersey City*,
    2021 WL 1589464 (D.N.J. Apr. 23, 2021) ............................................................34

*Sines v. Darling Ingredients Inc.*,
    2020 WL 5015488 (D.N.J. Aug. 25, 2020) ...........................................................36

*Skinner v. Switzer*,
    562 U.S. 521 (2011).................................................................................................10

*Sotto v. U.S.I.N.S.*,
    748 F.2d 832 (3d Cir. 1984)...................................................................................12

*Southey v. Township of Vernon*,
    2025 WL 1341742 (D.N.J. May 7, 2025) .........................................................29, 32

*Starnes v. Butler Cnty. Ct. of Common Pleas*,
    971 F.3d 416 (3d Cir. 2020).............................................................................10, 20

*Taylor v. Metzger*,
    706 A.2d 685 (N.J. 1998)...............................................................................34, 35

*Thomas v. City of Philadelphia*,
    2019 WL 4039575 (E.D. Pa. Aug. 27, 2019) ........................................................31

*Thomas v. Cumberland County*,
    749 F.3d 217 (3d Cir. 2014).............................................................................27, 28

*Trafton v. City of Woodbury*,
    799 F. Supp. 2d 417 (D.N.J. 2011) .......................................................................27

*Trevino v. Merscorp, Inc.*,
    583 F. Supp. 2d 521 (D. Del. 2008).......................................................................11

*United States v. Reyes-Romero*,
    959 F.3d 80 (3d Cir. 2020).....................................................................................17

*United States ex rel. Doe v. Heart Sol., PC*,
    923 F.3d 308 (3d Cir. 2019)..................................................................16

*Warman v. Mount St. Joseph Univ.*,
    144 F.4th 880 (6th Cir. 2025) ..............................................................26

*Wheeler v. Wheeler*,
    639 F. App'x 147 (3d Cir. 2016) ..........................................................14

*Williams v. Papi*,
    30 F. Supp. 3d 306 (M.D. Pa. 2014)....................................................21

*Wilson v. Parker*,
    2018 WL 6696783 (D.N.J. Dec. 20, 2018)...................................15, 35

*Wright v. State*,
    778 A.2d 443 (N.J. 2001).....................................................................23

*Yujie Wang v. N.J. State Police*,
    2019 WL 3887126 (D.N.J. Aug. 19, 2019) ..........................................33

**Statutes**

Charitable Immunity Act, N.J.S.A. § 2A:53A-7 *et seq.* ................35, 36, 37, 38

Civil Rights Act, N.J.S.A. § 10:6-1 *et seq.* ............................................13, 27

N.J.S.A. § 2C:12-1 .....................................................................................6, 7

N.J.S.A. § 2C:18-3 ........................................................................................6

N.J.S.A. § 2C:29-1 .....................................................................................6, 7

N.J.S.A. § 2C:29-2 .....................................................................................6, 7

N.J.S.A. § 18A:6-2.4 ...................................................................................26

N.J.S.A. § 18A:6-4.5 ...................................................................................26

**Other Authorities**

N.J. R. Ct. 7:2-2(a)(3) ...................................................................................9

Fed. R. Civ. P. 8 ...........................................................................................26

Fed. R. Civ. P. 12 ......................................................................................3, 12

Plaintiff David Piegaro respectfully submits this brief in opposition to Defendants The Trustees of Princeton University ("Princeton") and Kenneth E. Strother, Jr.'s ("Chief Strother") motion to dismiss the Complaint.[1]

## **INTRODUCTION**

David Piegaro—a U.S. Army and New Jersey National Guard veteran—went to a protest at his school to observe and document it, not to participate. He stayed peaceful, recorded events in public spaces, and exercised core First Amendment rights. Princeton's Chief of Police responded by attacking him, arresting him without probable cause, and then fabricating evidence to justify the arrest. Princeton only doubled down on this farce.

On April 29, 2024, during a massive protest, Piegaro recorded three men conversing on a public sidewalk. One was a professor associated with the protestors, many of whom had just been arrested and then released. As the trio approached Whig Hall, Chief Strother—wearing a suit, not a uniform—snapped. Without warning or identification, he grabbed Piegaro, lifted him up—according to a witness, "horizontally like an open pair of scissors"—and dropped him down a flight of stone steps. Piegaro suffered a concussion and rib injuries.

---

[1] The Complaint (Dkt. 1) is cited herein as "¶ _." Defendants' motion to dismiss ("Motion," Dkt. 17-1) is cited herein as "Mot."

1

Chief Strother then ordered Piegaro arrested and charged him with four crimes—aggravated assault, obstruction of the administration of law, resisting arrest, and defiant trespass—even though Chief Strother knew Piegaro had broken no law and could not have known Chief Strother was an officer. Princeton then adopted Chief Strother's version of events wholesale. It charged Piegaro without investigation, banned him from campus and his home, and imposed nine months of disciplinary probation.

Ultimately confronted with the evidence (or lack thereof), by the end of trial, the prosecution had dropped three charges and downgraded the fourth (aggravated assault) to simple assault. The Municipal Court then fully acquitted Piegaro. Only after rendering a not-guilty verdict—and without notice, briefing, or reasoning—did the court make a brief, post-verdict comment that probable cause existed. That issue was never litigated, was not essential to the judgment, and has no preclusive effect here. Yet Defendants essentially base their entire Motion around this disputed issue.

Piegaro brings nine claims against Princeton and Chief Strother. Defendants' Motion fails for many independent reasons.

First, for Piegaro's claims for retaliation, unlawful arrest and false imprisonment, excessive force, assault and battery, malicious prosecution, fabrication of evidence, and intentional infliction of emotional distress ("IIED") (Counts 1-6, 8), Defendants ask this Court to take judicial notice of disputed facts

2

and to make premature credibility determinations in Defendants' favor—an impermissible shortcut around Rule 12, discovery, and the jury's role.

Second, Defendants concede that Piegaro adequately pleads retaliation (Count 1), unlawful arrest and false imprisonment (Count 2), and malicious prosecution (Count 5), but argue that those claims are barred by the Municipal Court's post-acquittal probable-cause comment. Third Circuit precedent squarely rejects efforts to graft criminal case determinations over to a civil rights action. In any event, Defendants cannot (and do not try to) meet the requirements for issue preclusion.

Third, in the face of Piegaro's claims for excessive force (Count 3), assault and battery (Count 4), IIED (Count 8), and negligent infliction of emotional distress ("NIED") (Count 9), Defendants raise new arguments in breach of this Court's order (Dkt. 15), which permits them to move to dismiss only on "the arguments set forth in their pre-motion letter" ("Pre-Motion Letter," Dkt. 13). Their defiance should not be rewarded, and regardless, their arguments fail to support dismissal.

Fourth, Defendants claim that Piegaro's common-law assault and battery claim (Count 4) fails because Chief Strother's attack was privileged and because Princeton bears no responsibility. This argument, which is grounded in disputed facts, ignores Piegaro's allegations that Chief Strother responded to Piegaro's non-threatening behavior with rash and unwarranted violence, and that he did so within the scope of his employment with Princeton—all that is required at this stage.

Fifth, Defendants invent a heightened pleading standard for Piegaro's fabrication of evidence claim (Count 6). Piegaro adequately alleges all that he needs to: that absent Chief Strother's fabrications, he would not have been criminally charged or prosecuted.

Sixth, Defendants claim that Piegaro's *Monell* claim (Count 7) must be based on a pattern of constitutional violations. That is not correct. A *Monell* claim can arise from even a single incident, and Piegaro is entitled to discovery regarding Princeton's police training and policies.

Seventh, Defendants ask the Court to find, as a matter of law, that Piegaro's allegations for IIED (Count 8), taken together, are not "extreme and outrageous" enough. The allegations concerning Chief Strother's unjustified attack on a student and the absurdity of Defendants' subsequent coverup readily meet the pleading standard.

Finally, while Defendants concede that Piegaro sufficiently alleges NIED (Count 9), they ignore the Complaint's allegations of intentional and reckless conduct and seek dismissal under a fact-based affirmative defense.

For these reasons and those set forth more fully below, Defendants' Motion should be denied.

# BACKGROUND

## I. Princeton's Chief of Police Unjustifiably Attacks Piegaro

On April 29, 2024, Piegaro went to observe and report on—not participate in—a protest at Princeton's Clio Hall. ¶¶ 27-30. Outside, he found a crowd of students rallying in support of those staging a sit-in inside Clio Hall. ¶¶ 29-32. He also observed students blocking a bus holding arrested and detained protesters. *Id.*

Piegaro documented the events as best he could. He took photos and videos of the scene, tried to pass details on to several journalists, and posted breaking information about the events online. ¶¶ 30, 33. To secure a better vantage point, Piegaro entered nearby buildings, including neighboring Whig Hall. ¶¶ 33-34.

Eventually Princeton capitulated and released the detained students. ¶ 35. Later, Piegaro saw a man in a black suit (*i.e.*, not in uniform)—later identified as Princeton's Assistant Vice President for Public Safety and Chief of Police, Defendant Strother—speaking with two other men, one of whom Piegaro recognized as a faculty member closely associated with the protesters. ¶¶ 16, 36. Piegaro approached the group, at which point Chief Strother told him they were having a private discussion. ¶ 36. Piegaro responded respectfully that he had a right to be present in a public location and began video recording. ¶¶ 36-37.

Piegaro walked behind the group to the top of the stairs of Whig Hall—the same building Piegaro had been in moments earlier—where Piegaro asked the man

in the black suit for his name and position at Princeton. ¶ 37. Instead of responding, Chief Strother used his ID to tap into Whig Hall and held the door open. ¶¶ 37-38. When Piegaro attempted to walk through, Chief Strother, without warning, grabbed Piegaro's arm and violently pulled him away. ¶ 39. Piegaro pleaded with this then-unidentified man not to touch him. *Id.* According to eyewitness testimony, Chief Strother picked Piegaro up, held him "horizontally like an open pair of scissors," and dropped him down Whig Hall's stone steps. ¶¶ 39-41. Chief Strother then held Piegaro's wrist while ordering others to handcuff Piegaro. ¶ 42.

While in Princeton's custody, Piegaro, who was in severe pain, pleaded for medical attention. ¶¶ 42-43. An examination at the hospital later revealed that Piegaro had sustained a concussion, rib injuries, and multiple abrasions from the attack. ¶¶ 43-44; *see also* ¶ 62 (Piegaro also suffered emotional distress, PTSD, and anxiety from the attack and Princeton's subsequent acts).

Princeton and Chief Strother then doubled down. Princeton's Department of Public Safety issued a criminal complaint and summons—based solely on Chief Strother's statements—charging Piegaro with: (1) fourth degree aggravated assault on a police officer in violation of N.J.S.A. § 2C:12-1(b)(5)(A); (2) fourth degree obstruction of the administration of law in violation of *id.* § 2C:29-1(a); (3) third degree resisting arrest with use of physical force in violation of *id.* § 2C:29-2(a)(3); and (4) defiant trespass in violation of *id.* § 2C:18-3(b). ¶¶ 47, 76.

## II.    Chief Strother Fabricates Evidence to Pursue Charges Against Piegaro

Chief Strother's statements, which were the basis for the criminal charges, were knowingly false. ¶¶ 48, 63-81. His reports of the incident are contradicted by various evidence, including video and eyewitness testimony. *Id.* For example:

| Chief Strother's Reports/Testimony | Contradicting Evidence |
|---|---|
| Chief Strother used a "de-escalation method or tactic" before using physical force—namely, a "warning." ¶ 72. | Video evidence confirms that Chief Strother did not provide any warning, identify himself as a police officer, or say the building was closed. ¶ 72. |
| Piegaro's efforts to pull away caused Chief Strother to lose his grip, causing Piegaro to fall down the steps of his own accord. ¶¶ 68-69. | An eyewitness confirmed that Piegaro "was frozen, not struggling" while Chief Strother held him in the air and then "dropped him." ¶¶ 68-69. |
| Chief Strother wrote and testified that Whig Hall was closed to students at the time he stopped Piegaro from entering. ¶¶ 64-65. | Students freely entered Whig Hall immediately before and after Chief Strother's attack. ¶ 65. |
| Chief Strother told Piegaro the building was closed. ¶ 67. | Video evidence confirms that Chief Strother said nothing about the building to Piegaro. ¶ 67. |
| Piegaro made the first physical contact. ¶ 66. | Video evidence shows that Chief Strother hastily threw himself in front of Piegaro before ramming into Piegaro and grabbing his arm. ¶ 66. |

And though several charges required that Chief Strother exhibited evidence of his authority as an officer or that Piegaro knew he was an officer, *see* N.J.S.A. §§ 2C:12-1(b)(5)(a), 2C:29-1(a), 2C:29-2(a)(3), the charging documents omit that Chief Strother was dressed in a suit with no visible indication that he was an officer,

nor that before the attack, Piegaro asked Chief Strother who he was and for his position at Princeton. ¶¶ 37, 73-75. At trial, Chief Strother testified he was holding a police radio; video evidence confirms it was a cell phone. ¶ 74. On cross, Chief Strother admitted that Piegaro had no way of knowing he was a police officer based on his physical appearance. *Id.*

The criminal complaint against Piegaro could not have been issued, nor prosecution maintained, without these falsehoods and material omissions. Indeed, Princeton's police department hastily charged Piegaro without even a cursory investigation, including into eyewitness testimony or Piegaro's evidence. ¶¶ 76-77.

### III.    Princeton Conducts a Sham Internal Disciplinary Investigation

The day after the attack, Princeton police banned Piegaro and forced him off campus. ¶¶ 50-54. According to an officer, the edict was given by Chief Strother. ¶ 54. As Chief Strother later testified, he did not have the authority to institute such a ban. ¶ 71. Princeton adopted the ban and kept it in place for months. ¶ 55.

From May to October 2024, Princeton conducted a sham internal disciplinary investigation into Piegaro concerning the incident. ¶ 58. Princeton's disciplinary investigator spoke to several witnesses but inexplicably failed to interview Chief Strother or any of the other officers involved. *Id.* At one point, the Princeton investigator admitted to one interviewee that the investigation likely would not lead to any disciplinary action because witness accounts were so inconsistent. ¶ 59.

8

Nevertheless, Princeton chose to place Piegaro on disciplinary probation for nine months. *Id.*

## IV.    Piegaro Is Found Not Guilty at Trial

Unsurprisingly, following a review of the evidence, the prosecution dismissed most of the charges against Piegaro (*i.e.*, obstruction, resisting arrest, and defiant trespass). ¶ 78. The prosecution also reduced the aggravated assault charge to simple assault. ¶¶ 78-79. Following a bench trial, the Municipal Court found Piegaro not guilty of the only remaining charge. *Id.*

*After* the court rendered its not guilty verdict on the simple assault charge, the prosecutor pressed on whether the court had determined if probable cause existed "for the issuance of *the* [remaining] charge." Dkt. 17-2, Ex. C at 20:17-20. Neither the court nor any other judicial officer had made any finding on the record to that point.[2] *See generally* Dkt. 17-2, Ex. C. In response to the prosecutor's spontaneous inquiry, the court asked whether defense counsel would stipulate to probable cause. *Id.* at 21:1-2. Piegaro's defense counsel declined. *Id.* at 21:3-4. The court nevertheless commented, "I'm going to find there was probable cause for the arrest." *Id.* at 21:5-6. The court provided no reasoning, and defense counsel was not given an opportunity to be heard. *Id.* at 20:21-21:6. The superfluous, post-verdict comment

---

[2] Under New Jersey Rule of Court 7:2-2(a)(3), a complaint-summons may be issued *without* a probable cause determination if the complainant is a law enforcement officer, as was the case here.

was only memorialized in the transcript and does not appear in the final Certification of Disposition.

## LEGAL STANDARD

In deciding a motion to dismiss, a court "must accept [the] well-pleaded allegations as true, construe them in the light most favorable to [the nonmoving party], and draw all reasonable inferences in [his] favor." *Starnes v. Butler Cnty. Ct. of Common Pleas*, 971 F.3d 416, 422 (3d Cir. 2020). The motion must be denied if the complaint pleads "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility question is "not whether [the plaintiff] will ultimately prevail," but "whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011) (citation modified). At this stage, courts should not resolve material issues such as factual or credibility disputes, particularly where claims turn on intent, motive, reasonableness, and credibility, which are questions for the jury. *See, e.g.*, *Bagic v. Univ. of Pittsburgh*, 773 F. App'x 84, 87 (3d Cir. 2019).

## ARGUMENT

### I. Defendants Improperly Request Judicial Notice of Disputed Facts

As a threshold matter, save for a few minor pleading arguments, the bulk of Defendants' Motion depends on factual arguments derived from three purported transcripts from the Municipal Court criminal proceedings, *see* Dkt. 17-2, Exs. A-C,

of which Defendants ask the Court to take judicial notice. Defendants' request stretches judicial notice beyond its breaking point and should be rejected.

On a motion to dismiss, courts may notice the *existence* of another court's opinion, not the truth of its *contents*. *See e.g.*, *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) ("We may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion." (citation modified)). Defendants advocate for the latter. They ask the Court to take notice, for example, of the Municipal Court's passing commentary concerning whether a certain building was restricted, who initiated contact, whether witnesses were credible, and whether, under the circumstances, Chief Strother had probable cause to arrest Piegaro. Mot. at 5-7, 11, 13-16, 23, 26, 30. Defendants ask for precisely what the doctrine forbids: the introduction and acceptance of disputed facts. *See, e.g.*, *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (holding it is inappropriate to base a conclusion as to disputed issues on judicially noticed extraneous documents); *Bagic*, 773 F. App'x at 87 (a court "may not weigh the credibility of the parties' positions on a question of disputed material fact at the motion to dismiss stage, but rather should leave such considerations to a jury"); *Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 526-27 (D. Del. 2008) (declining to "reach outside [plaintiff's] pleadings" to notice facts in public records which "are subject to dispute").

11

Defendants' expansion of judicial notice would collapse Rule 12 into collateral estoppel without meeting the estoppel test (which, as detailed below, Defendants would fail). *See In re Lipitor Antitrust Litig.*, 868 F.3d 231, 268 (3d Cir. 2017) ("If it were permissible for a court to take judicial notice of a fact merely because it has been found to be true in some other action, the doctrine of collateral estoppel would be superfluous." (citation omitted)). The Court should reject Defendants' request and not notice anything beyond the *existence* of the Municipal Court opinion. *See* Dkt. 17-2, Ex. C.[3]

## II. Piegaro Properly Pleads His Constitutional and Assault Claims (Counts 1-6)

### A. Post-Acquittal Commentary on Probable Cause Does Not Justify Dismissing Piegaro's Retaliation, Unlawful Arrest/False Imprisonment, or Malicious Prosecution Claims (Counts 1-2, 5)

Defendants do not contest that Piegaro adequately pleads retaliation, false arrest and false imprisonment, and malicious prosecution. Instead, their Motion

---

[3] Even were it appropriate to consider Defendants' exhibits, the Court should disregard them for the additional reason that they contain *over 640 "indiscernible"* notations and obvious transcription errors. *See Sotto v. U.S.I.N.S.*, 748 F.2d 832, 838 (3d Cir. 1984) ("The scope of the omissions in the transcript is disturbing."); *Ryanair DAC v. Booking Holdings Inc.*, 636 F. Supp. 3d 490, 498 (D. Del. 2022) ("Concerns regarding the authenticity or completeness of a document . . . render [it] reasonably subject to dispute.").

hinges on the Municipal Court's post-verdict probable-cause comment, which they label as a "complete defense." Mot. at 13. There is no such thing here.[4]

The Municipal Court's commentary—which should not be considered in the first place, *see supra* Arg. § I—has no preclusive effect on this action. *See Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 789 (3d. Cir. 2000) ("[A] magistrate's prior finding that probable cause exists does not apply to section 1983 actions."). Even if Piegaro was convicted (he was not), "[a]pplying a presumption of probable cause" in a section 1983 action "on the sole basis of a municipal conviction" would still be improper, because it would "undermine[] one of the Civil Rights Act's *raisons d'etre*, *i.e.*, to interpose the federal courts, as guardians of federal rights, between the authority of the states and the people." *Montgomery v. De Simone*, 159 F.3d 120, 125 (3d Cir. 1998). Accordingly, the "question of probable cause in a section 1983 damage suit is one for the jury." *Id.* at 124.

Defendants' supposed "complete defense" cases belie their argument that Piegaro's claims should be automatically barred on a motion to dismiss. *See* Mot. at 13. For example, in *Goodwin v. Conway*, 836 F.3d 321, 327 (3d Cir. 2016), the Third Circuit confirmed that "the question of probable cause is generally left to the

---

[4] Defendants engage in double-speak. Defendants liberally cite the Municipal Court's proceedings but, when it suits them, argue that the Municipal Court's holdings should be paid no mind. *See, e.g.*, *id.* at 12 (arguing that "Plaintiff [] ultimately [being] found not guilty by the Municipal Court is of no consequence").

jury." And while the court said that a "finding of probable cause is a complete defense" to certain claims, *id.*, it was discussing the finding to be made by the civil action's factfinder—whether that be the jury or the court on summary judgment— not a probable cause determination made in a separate criminal proceeding.

In *Morales v. Maxwell*, 2024 WL 4651757, at *10 (D.N.J. Nov. 1, 2024) (Quraishi, J.), Mot. at 13, this Court explained, *on summary judgment*, that plaintiff—unlike Piegaro here—had not "challenge[d] the existence of probable cause for his arrest." In *Wheeler v. Wheeler*, 639 F. App'x 147, 149-51 (3d Cir.2016), Mot. at 13, the district court and the Third Circuit independently concluded that plaintiff "fail[ed] to plead facts supporting a lack of probable cause," and gave the courts "[no] reason to question" the officer's probable cause conclusion. Defendants similarly find no support in *Kwanzaa v. Tell*, 2024 WL 2991194, at *7 (D.N.J. June 14, 2024), Mot. at 13, where, *on summary judgment*, the court detailed plaintiff's full opportunity to litigate probable cause during his criminal action, after which the criminal court issued a detailed written probable cause opinion. Notably, on appeal of the earlier motion to dismiss in *Kwanzaa*, the Third Circuit held that the district court had "improperly credited" a police report to find probable cause barred plaintiff's claims, where plaintiff alleged that the report "included false statements." *Kwanzaa v. Tell*, 2022 WL 16756334, at *3 (3d Cir. Nov. 8, 2022).

14

To have had any chance of importing significance to the Municipal Court's commentary, rather than arguing for an automatic "complete defense," Defendants were required to engage with the collateral estoppel doctrine. Defendants did not and should not be permitted to do so on reply. *See Wilson v. Parker*, 2018 WL 6696783, at *5 (D.N.J. Dec. 20, 2018) (disregarding arguments raised first on reply).

A party seeking to prevent relitigating an issue has the tall task of showing that: "(1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to . . . the earlier proceeding." *MSKP Oak Grove, LLC v. Venuto*, 875 F. Supp. 2d 426, 440 (D.N.J. 2012) (citation omitted). "Each factor must be satisfied for collateral estoppel to apply." *Merritt v. Kelly*, 2023 WL 7220142, at *6 (N.J. Super. Ct. App. Div. Nov. 2, 2023).

Defendants would have failed to establish collateral estoppel had they deigned to try. For example, as relevant to the first factor (*i.e.*, identical issues), four charges in the criminal complaint (which Piegaro challenges here) were dismissed and not even before the Municipal Court when it made its remark. ¶¶ 6, 47, 78-79. As to the second factor, an issue is "actually litigated" when it is "properly raised, by the pleadings or otherwise, submitted for determination, and is determined." *Merritt*,

2023 WL 7220142, at *6 (citation modified) (holding that municipal court's informal, post-verdict probable cause finding was not "actually litigated" and did not bar subsequent civil rights suit). Here, probable cause was never litigated. The prosecutor's spontaneous prompt to the court regarding probable cause for the downgraded simple assault charge—made after Piegaro was found not guilty and without any prior notice or opportunity to brief or argue the issue—is insufficient. *See id.* at *7 ("[T]he municipal court made its [probable cause] finding only *after* dismissing the summons. Further, the municipal court gave the parties no advance notice of its intent to address probable cause, nor did it identify the issue as disputed. As such, plaintiff had no opportunity to present evidence or make argument on the matter before the court ruled."); *United States ex rel. Doe v. Heart Sol., PC*, 923 F.3d 308, 316 (3d Cir. 2019) (holding "collateral estoppel cannot apply when [party] . . . did not have a full and fair opportunity to litigate that issue"). Nor did the Municipal Court provide any reasoning for its probable cause commentary. *See Merritt*, 2023 WL 7220142, at *6 (finding no preclusive effect in part because "the municipal court provided no basis for its finding, nor is there any indication of what evidence it reviewed and evaluated").

Defendants attempt to bolster the Municipal Court's unexplained commentary by noting the court's earlier comment that Piegaro's attempt to exercise his right to record and enter Whig Hall could "be perceived as conduct likely to escalate

16

tension." Mot. at 6; *see* Dkt. 17-2, Ex. C at 7:20-8:3. But this commentary is both improper to consider via judicial notice at the pleading stage, *see supra* Arg. § I, and irrelevant to whether "the facts and circumstances" in Chief Strother's knowledge, ¶ 76, were sufficient "to warrant a reasonable person to believe" that Piegaro had committed a criminal offense, *Evans v. Newark City*, 152 F.4th 537, 546 (3d Cir. 2025). Indeed, as the Municipal Court and Defendants observe, "not all inappropriate or ill-advised behavior constitutes criminal conduct." Mot. at 7.

As to the fourth factor, the Municipal Court's post-hoc finding was, by definition, not "essential" to its not-guilty verdict. *See Jean Alexander Cosms., Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 250 (3d Cir. 2006) ("incidental" issues that were decided without "close judicial attention" or "careful deliberation and analysis" cannot bind the parties in subsequent litigation (citations omitted)); *United States v. Reyes-Romero*, 959 F.3d 80, 94 (3d Cir. 2020) ("In defining whether an issue was 'essential,' we ask whether it was critical to the judgment or merely dicta." (citation modified)). In Defendants' words, the verdict "is of no consequence" to the Municipal Court's probable cause comment. Mot. at 12; *see also Dansby v. Borough of Paulsboro*, 1995 WL 352995, at *12 (D.N.J. June 7, 1995) (holding that probable cause is "a question of fact for the jury" and the criminal court's probable cause finding—which "was not essential to" and, indeed, "irrelevant" to its not guilty verdict—had no preclusive effect), *aff'd*, 79 F.3d 1137 (3d Cir. 1996).

17

The defendants in *Merritt* tried a similar sleight of hand at the motion to dismiss stage, arguing that a probable cause determination in the municipal court barred plaintiff's subsequent civil rights claims. 2023 WL 7220142, at *5-7. The *Merritt* court found that the municipal court "did not make any factual findings in support of its [probable cause] determination," "made its finding only *after* dismissing the summons," "gave the parties no advance notice of its intent to address probable cause, nor [] identif[ied] the issue as disputed," and thus denied plaintiff the "opportunity to present evidence or make argument on the matter before the court ruled." *Id.* at *7. Here too, the Municipal Court issued Piegaro a favorable verdict *before* commenting on probable cause (for a charge that was not in the original criminal complaint), without factual findings, notice, or an opportunity to be heard.

And even if Defendants could establish all five factors, issue preclusion would still not be appropriate. *See Olivieri v. Y.M.F. Carpet, Inc.*, 897 A.2d 1003, 1009 (N.J. 2006) ("[E]ven where these [five] requirements are met, the doctrine, which has its roots in equity, will not be applied when it is unfair to do so." (citation omitted)). Equity disfavors preclusion, for example, where the party opposing the preclusion "did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action." *Id.* at 1011; *see also Campbell v. Balon*, 2017 WL 2880856, at *6 (M.D. Pa. July 6, 2017) (holding that since plaintiff's "acquittal prevented him from appealing pretrial determinations, he is not collaterally estopped

from arguing a lack of probable cause in the instant civil matter"). Were that not enough, there are "[o]ther compelling circumstances" that make it "appropriate . . . to relitigate the issue." *Merritt*, 2023 WL 7220142, at *7 (citation omitted). Namely, because any purported probable cause finding in the Municipal Court was informed by Chief Strother's alleged falsehoods, *e.g.*, ¶¶ 63-78, 113, 120-22, the factfinder here should "properly vet" the parties' arguments and reach an independent determination after "full development of the factual record," *Campbell*, 2017 WL 2880856, at *6 (no preclusion given to previous probable cause finding, even though it was "raised repeatedly" during criminal trial, where plaintiff alleged probable cause affidavit contained numerous "falsehoods and/or omissions" contradicted by video footage).

### B.    Piegaro Properly Pleads Excessive Force (Count 3)

Piegaro alleges that he was peacefully recording when Chief Strother suddenly lifted and dropped him down stone steps. ¶¶ 37-41. That alone adequately pleads excessive force (Count 3). Defendants' arguments to the contrary fail.

First, Defendants' Pre-Motion Letter makes no mention of Piegaro's well-pleaded excessive force claim, which Defendants now challenge for the first time. Defendants' defiance of the Court's order, Dkt. 15, should not be condoned.

Second, Defendants argue Piegaro's allegations are "implausible" because Whig Hall was "restricted," and by trying to enter while recording, Piegaro "*likely*

19

[] escalate[d] tension."[5] Mot. at 15 (emphasis added). The Complaint, which must be credited at this stage, *see Starnes*, 971 F.3d at 422, alleges otherwise, *e.g.*, ¶¶ 4, 6, 33, 37-38, 64-65, 84, 87, 94, 114, 137, 147.

The question on this Motion is whether Piegaro pleads that "a seizure occurred and that it was unreasonable under the circumstances." *El v. City of Pittsburgh*, 975 F.3d 327, 336 (3d Cir. 2020) (citation omitted). He does. Piegaro alleges that as he lawfully attempted to walk through the door of Whig Hall, Chief Strother suddenly and violently picked him up, held him "horizontally like an open pair of scissors" and, while Piegaro was "frozen, not struggling," dropped him down the stairs. ¶¶ 41, 69, 100. "In [] situation[s] like th[ese]," an arrestee "has the right not to be taken to the ground," *El*, 975 F.3d at 342, even if he was "passively resist[ing] the police," *id.* at 340, or could have been perceived as "escalat[ing] tension," Mot. at 15.

The Court should decline Defendants' request to ignore Piegaro's allegations and rule that it was reasonable, as a matter of law, for Chief Strother to seize Piegaro

---

[5] In support, Defendants cite not to the Complaint, but only to the Municipal Court's passing references, which they grossly mischaracterize, claiming it found Piegaro's "actions did cause a threat." Mot. at 15. Not that it matters—as Defendants cannot misuse judicial notice to smuggle in the Municipal Court's commentary to supplant facts in dispute, *see supra* Arg. § I—but Defendants' own exhibit shows the Municipal Court said nothing of the sort; indeed, it found that the evidence demonstrated that Piegaro had no intent "to cause harm," *e.g.*, Dkt. 17-2, Ex. C at 12:14-16. Regardless, Chief Strother was not on trial for excessive force in the Municipal Court, and the Municipal Court proceeding offers no basis for a preclusive resolution on the issue of whether Whig Hall access was restricted, because the prosecutors dropped the trespass charge. ¶ 78.

and drop him down a marble staircase. Such determinations of reasonableness are left to the jury.[6] *See Rivas v. City of Passaic*, 365 F.3d 181, 198-200 (3d Cir. 2004) ("The reasonableness of the use of force is normally an issue for the jury."); *Williams v. Papi*, 30 F. Supp. 3d 306, 312 (M.D. Pa. 2014) ("[I]t is surely premature to expect the Court to make such a resolution at the motion to dismiss stage.").

Third, Defendants claim that Piegaro's injuries are insufficient—another disputed fact that also fails on the law. Defendants rely on *Graham-Smith v. Wilkes-Barre Police Department*, 739 F. App'x 727 (3d Cir. 2018), to suggest both that excessive force claims turn on the extent of the alleged injuries, and that Piegaro's injuries are "de minimis." Mot. at 14-15. Neither is true. *Graham-Smith*, on appeal of summary judgment, merely held that the severity of injuries is *one* non-dispositive consideration for the factfinder in determining the reasonableness of the force. 739 F. App'x at 731 & n.16. And Piegaro pleads that he suffered severe injuries: a concussion, rib injuries, and multiple abrasions from the attack. ¶¶ 4, 44.

---

[6] Indeed, excessive force claims with similar facts routinely prevail. *See, e.g.*, *Gross v. Cairo*, 2023 WL 8646265, at *1 (3d Cir. Dec. 14, 2023) (no qualified immunity for officer who "suddenly" and "violently" struck plaintiff as she "moved towards the doorway"); *Acerra v. Thomas*, 2024 WL 3226814, at *2, *8 (D.N.J. June 28, 2024) (on summary judgment, no qualified immunity for officer who slammed plaintiff face-down into the pavement and handcuffed him after plaintiff had ignored officer's orders to get off the sidewalk).

### C.    Piegaro Properly Pleads Assault and Battery (Count 4)

Defendants assert a futile two-pronged attack on Piegaro's common-law assault and battery claim.

First, they assert that "the Municipal Court's probable cause finding defeats" this claim, because "police are privileged to commit a batter[y] in order to effect a lawful arrest." Mot. at 23. But Defendants' bald assertion fails for two reasons: (1) Defendants' only basis for asserting the "existence of probable cause" is their improper attempt to render gospel the Municipal Court's commentary, *see supra* Arg. §§ I-II; and (2) Defendants ignore that even if an arrest was lawful, an officer's privilege to commit battery is "negated by the use of excessive force," which Piegaro pleads, *Groman v. Township of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995); *Hendrix v. City of Trenton*, 2009 WL 5205996, at *13 (D.N.J. Dec. 29, 2009) (denying motion to dismiss assault and battery claim based on police officer's alleged use of excessive force); ¶¶ 2, 4, 39-42, 100-02, 106.[7]

Second, Defendants argue for the first time—again in violation of this Court's order, Dkt. 15—that Princeton cannot be vicariously liable for Chief Strother's

---

[7] Defendants cite *Dobbins v. Hudson United Bank*, 2004 WL 2913182, at *5 (E.D. Pa. Dec. 16, 2004), for the proposition that probable cause is a defense to a claim of police battery. But Defendants go too far in claiming that the Municipal Court's finding thus defeats the claim. Mot. at 23. *Dobbins* assessed the undisputed facts at summary judgment to independently determine probable cause. 2004 WL 2913182, at *4-5.

assault and battery. Mot. at 24. Under common law, an employer is vicariously liable for the torts of its employees when "the tortious act of the [employee] occurred within the scope of that employment." *Carter v. Reynolds*, 815 A.2d 460, 463 (N.J. 2003). Employees' intentional torts fall within the scope of their employment "when their attempts to enforce their employer's rules instigated violence." *Brijall v. Harrah's Atl. Cty.*, 905 F. Supp. 2d 617, 622 (D.N.J. 2021) (quoting *Davis v. Devereux Found.*, 37 A.3d 469, 491 (N.J. 2012)). Piegaro pleads that Chief Strother was acting within the scope of his employment as Chief of Police and was motivated, at least in part, by his attempt to enforce the law and Princeton's rules when he assaulted Piegaro.[8] *E.g.*, ¶ 108. That is more than sufficient at this stage. *See, e.g.*, *Gaymon v. Esposito*, 2013 WL 4446973, at \*21-23 (D.N.J. Aug. 16, 2013) (permitting assault and battery claims against law enforcement agency under *respondeat superior* theory).

Rather than addressing the appropriate standard for vicarious liability for Piegaro's *common-law* claim, Defendants cite cases considering municipal liability

---

[8] The same rationale supports Princeton's vicarious liability for Chief Strother's actions in causing a baseless criminal complaint to be issued against Piegaro and in coordinating with the prosecutor's office to pursue criminal charges. ¶ 115 (malicious prosecution); ¶ 141 (IIED); ¶ 146 (NIED); *see, e.g.*, *Colello v. Bayshore Cmty. Health Servs.*, 2010 WL 1753164, at \*14-16 (N.J. Super. Ct. App. Div. Apr. 28, 2010) (employer can be held vicariously liable for any tort committed by employee acting within scope of employment or acting upon apparent authority, including IIED); *Wright v. State*, 778 A.2d 443, 462 (N.J. 2001) (vicarious liability based on torts committed in carrying out investigation, arrest, and prosecution).

for officer assaults under a *section 1983* theory, which is subject to a different analysis. *See Doss v. Osty*, 2011 WL 2559558, at *7 (D.N.J. June 27, 2011) (finding allegations that municipal defendants had "policy, practice or custom of failing to adequately screen, train, supervise and discipline police personnel" insufficient to state claim for assault and battery); *Forsman v. Dykstra*, 2023 WL 3145165, at *7 (D.N.J. Apr. 28, 2023) (dismissing assault and battery claims against municipal defendants based on alleged "policy and/or custom [] to condone the actions of their agents").

### D. Piegaro Properly Pleads Fabrication of Evidence (Count 6)

Defendants argue that Piegaro's fabrication of evidence claim is subject to a heightened pleading standard that Piegaro does not meet, and that the Municipal Court's commentary renders Piegaro's allegations implausible. Mot. at 16-17. Both arguments fail.

First, Defendants contend that Piegaro's claim must be dismissed for failure to meet an unexplained "exacting pleading standard." Mot. at 16. As Defendants' own cited case holds, all that is required are allegations that the "proponents of the evidence [were] aware that evidence [wa]s incorrect or . . . offered in bad faith." *Boseman v. Upper Providence Township*, 680 F. App'x 65, 70 (3d Cir. 2017) (citation omitted). Piegaro more than satisfies this standard. *See* ¶¶ 63-79, 119-25.

The Complaint offers much more than "conclusory" and "blanket denial[s] of the criminal allegations." Mot. at 6-7, 16. Piegaro alleges, in detail, specific incidents of intentional, material fabrications in official reports and testimony used to justify his arrest and prosecution.[9] *E.g.*, ¶¶ 63-79, 120-22; *supra* Background § II. Indeed, the Complaint alleges that the four original criminal charges against Piegaro (three of which the prosecution dismissed, and the last of which was downgraded before trial, ¶¶ 47, 78) were entirely predicated on Chief Strother's material fabrications, ¶¶ 48, 63-77.

Second, Defendants improperly seek to resolve questions of fact based on the Municipal Court's commentary—which, as explained above, should not be considered. *See supra* Arg. § I. This time, Defendants misleadingly claim the Municipal Court found "Chief Strother's testimony was credible and consistent with other witnesses," which Defendants argue makes Piegaro's allegations "implausible."[10] Mot. at 6-7, 16. But even if Defendants were correct, it would not matter: a fabrication claim does not hinge on whether the fabricator is convincing.

---

[9] In light of these allegations, Defendants' attempt to liken the Complaint to those where plaintiffs merely "denie[d]" officers' conclusions or labeled them as "false," without detail, falls flat. *See* Mot. at 16-17 (citing *Boseman*, 680 F. App'x at 70; *Khetani v. Plainsboro Township*, 2024 WL 3861043, at *4 (D.N.J. Aug. 19, 2024)).

[10] What the Municipal Court actually said, according to Defendants' own exhibit, was that it, in general, found *all* "witnesses [] clear, credible, well prepared, [and] well mannered," and "consistent" towards its finding that Piegaro did not have the requisite intent for assault. Dkt. 17-2, Ex. C at 4:20-25, 8:24-12:20.

*See Black v. Montgomery County*, 835 F.3d 358, 370 (3d Cir. 2016) (holding that the use of fabricated evidence is an "affront to due process," whether or not the factfinder "correctly saw through fabricated evidence" (citation modified)).

## III. Piegaro Properly Pleads *Monell* Liability Against Princeton (Count 7)

Defendants argue that Piegaro's *Monell* claim against Princeton for failure to train and supervise its officers should be dismissed because Piegaro did not allege a "pattern of similar constitutional violations" and because Piegaro's supposed "bald allegations and mere recitation" of deliberate indifference "do not satisfy Rule 8."[11] Mot. at 17-23. Neither argument warrants dismissal.

### A. Piegaro Pleads Single-Incident Liability

Defendants posit that to establish *Monell* liability against Princeton, Piegaro must allege a "pattern of similar constitutional violations" and specific policies. Mot. at 21-23. That may be one way, but it is not the only way.

---

[11] Defendants "assum[e], without conceding" that Princeton is subject to municipal liability under section 1983. Mot. at 17. But there is no question. *Compare Henderson v. Fisher*, 631 F.2d 1115, 1118 (3d Cir. 1980) (campus police qualified as state actors because state delegated them the powers of municipal police), *and Warman v. Mount St. Joseph Univ.*, 144 F.4th 880, 893 (6th Cir. 2025) ("[O]fficers of a private university's campus police department . . . acted under color of state law and are therefore subject to § 1983 liability."), *with* Sworn University Police Officers, Princeton Public Safety, https://publicsafety.princeton.edu/about-us/our-teams/dps-divisions/sworn-university-police-officers (last visited Jan. 20, 2026) (Princeton police officers "shall possess all the powers of policemen and constables in criminal cases and offenses against the law anywhere in the State of New Jersey" (quoting N.J.S.A §§ 18A:6-2.4, 18A:6-4.5)).

A plaintiff can establish *Monell* liability in two ways: either based on a "policy or custom" that led to the constitutional injury *or*—as Piegaro alleges here (¶¶ 126-35)—that constitutional injuries "were caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice."[12] *Martinez v. City of Asbury Park*, 2021 WL 1343837, at *5 (D.N.J. Mar. 5, 2021) (quoting *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019)). The Third Circuit has consistently held that failure-to-train liability can arise from a "single-incident," "even without a pattern of constitutional violations," where the injury is a "highly predictable consequence" of inadequate training. *Thomas v. Cumberland County*, 749 F.3d 217, 223-25 (3d Cir. 2014); *see also A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572 (3d Cir. 2004) (recognizing single-incident liability on failure-to-train claim); *Berg v. County of Allegheny*, 219 F.3d 261 (3d Cir. 2000) (per curiam) (same).[13]

Single-incident municipal liability is not only available, but critical in situations likely to "recur"—like here, students documenting campus protests—and where "the need for training" is "so obvious" because constitutional deprivations are

---

[12] The New Jersey Civil Rights Act is interpreted analogously to section 1983. *See Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011).

[13] *Thomas* distinguished Defendants' cited case, *Connick v. Thompson*, 563 U.S. 51, 62 (2011), Mot. at 19—which held that a single-incident theory was not appropriate for allegations that prosecutors were not trained on disclosure obligations—from situations, as here, where law enforcement lacks obvious training on how to address likely situations. *Thomas*, 749 F.3d at 223-26.

a "highly predictable consequence" of officers' inability to handle the circumstances. *Thomas*, 749 F.3d at 223-25. As Piegaro alleges, and as discussed further below, "[i]t is obvious that officers would need to know how to address students observing and reporting on major events like protests, and to be accurately apprised of alleged campus building closures before stopping students," and "[i]t is predictable that without the necessary tools to handle these situations"—namely training and supervision on how to treat students at protests and on the need to testify truthfully—"[o]fficers will likely continue to violate students' constitutional rights." ¶ 134.

Defendants' cited cases, Mot. at 21-23, are inapposite for a host of reasons. *Bynum v. Trustees of the University of Pennsylvania*, 2014 WL 6473344, at *3-4 (E.D. Pa. Nov. 18, 2014), involved a *Monell* claim explicitly based on a "pattern and practice" of excessive force without any supporting factual allegations concerning a pattern or deliberate indifference. In *Castro v. Delaware River Port Authority*, 2014 WL 2916506, at *3, *6 (D.N.J. June 26, 2014), plaintiff alleged that the defendant was "deliberately indifferent to [certain] patterns, practices and customs," but failed to include any deliberate indifference allegations. And in *Allen v. Umbrell*, 2015 WL 5916862, at *3 (E.D. Pa. Oct. 9, 2015), plaintiff improperly tried to raise a single-incident theory for the first time during briefing and the complaint lacked any allegations suggesting the situation was likely to recur.

**B.    Piegaro Pleads Deliberate Indifference**

Failure to train or supervise liability follows from an institution's "'deliberate indifference' to the rights of persons with whom [its] employees will come into contact." *Martinez*, 2021 WL 1343837, at *5 (quoting *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999)). Deliberate indifference, in turn, requires that "(1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights."[14] *Forrest*, 930 F.3d at 106. Critically, a plaintiff "need not provide details about [the institution-defendant's] specific training programs or protocols at this stage of the case."[15] *Martinez*, 2021 WL 1343837, at *7 (citing *Carter*, 181 F.3d at 358 (plaintiff "cannot be expected to know, without discovery, exactly what training policies were in place or how they were adopted")). Piegaro's allegations meet the tripart deliberate indifference test.

---

[14] Defendants only challenge the first prong of the deliberate indifference test, and thus have waived any argument as to the others. *See Onely v. Redner's Mkts., Inc.*, 2022 WL 1773606, at *4 & n.8 (E.D. Pa. June 1, 2022) (failure to challenge elements of claims on a motion to dismiss waives argument).

[15] Defendants' claim that Piegaro must "'identify . . . specific deficiencies' in the officers' training," and their reliance on *Southey v. Township of Vernon*, 2025 WL 1341742, at *8 (D.N.J. May 7, 2025), Mot. at 20-21, is misguided. The issue in *Southey* was not that plaintiff failed to identify specific deficiencies, but a causation issue, namely, she alleged various deficiencies with officer training but failed to allege how those deficiencies caused the alleged sexual assault.

First, Piegaro pleads specific facts that Princeton knew or should have known its police officers would "confront a particular situation"—a protest, with both participants and bystanders. *See Martinez*, 2021 WL 1343837, at *5 (reporter at an anticipated protest); *Decker v. Borough of Hughestown*, 2009 WL 4406142, at *4 (M.D. Pa. Nov. 25, 2009) (defendant-municipality knew about free speech rights and that officers would confront people using obscene language). Piegaro pleads that, before he was attacked, there was a massive uptick in on-campus protests and demonstrations at Princeton and other campuses. ¶¶ 2, 18-26, 131. Princeton was aware of the April 2024 event in particular—Piegaro himself warned Princeton that it was planned. ¶¶ 23-26. Princeton acknowledged the then-upcoming event by issuing warnings to students. ¶ 24.

Second, Piegaro adequately alleges that this situation—interacting with students at protests—"involves a difficult choice" for officers. *Forrest*, 930 F.3d at 106. "A difficult choice is one that requires more than the application of common sense or one where the employee has powerful incentives to make the wrong choice." *Peronace v. City of Philadelphia*, 2024 WL 1660543, at *16 (E.D. Pa. Apr. 16, 2024) (citation modified). As Piegaro alleges, Princeton placed their officers in a position—overseeing publicized protests and demonstrations—where officers would have to balance their duty to maintain order against their obligation to honor the students' right to record and observe activity. ¶¶ 30, 36-37, 83-91, 129-34. And

30

Chief Strother had a powerful incentive to make the wrong choice when negotiating with faculty representatives over releasing arrested protesters, ¶¶ 31-33, 35-36, including by silencing anyone who observed the nefarious deal, *see Peronace*, 2024 WL 1660543, at *16 (officer could be tempted to violate rights of "particularly troublesome" inmates); *Thomas v. City of Philadelphia*, 2019 WL 4039575, at *22 (E.D. Pa. Aug. 27, 2019) (finding officers' decision not to include exculpatory evidence in affidavit for warrant was a difficult choice because officers are "motivated to bring a suspect to justice"); ¶ 134 ("failure to train and supervise officers on how . . . to testify truthfully[] reflects" deliberate indifference).

Third, Piegaro adequately alleges that the "wrong choice" would "frequently cause deprivation[s] of constitutional rights," including under the First Amendment. *Carter*, 181 F.3d at 357; *see* ¶¶ 133-34. Observing and recording a public protest is a constitutionally protected activity. *See Fields v. City of Philadelphia*, 862 F.3d 353, 360 (3d Cir. 2017) ("[T]he First Amendment . . . [encompasses a] right to record— photograph, film, or audio record—police officers conducting official police activity in public areas."). Accordingly, there is little doubt that physically assaulting, arresting, and fabricating evidence against bystanders will frequently deprive them of their constitutional rights. *See, e.g., Decker*, 2009 WL 4406142, at *4 ("[T]he wrongful issuance of a citation could frequently cause the deprivation of First Amendment rights."); *Black*, 835 F.3d at 370 ("Fabricated evidence is an affront to

31

due process of law, and state actors seeking to frame citizens undermine fundamental fairness and are responsible for corruption of the truth-seeking function of the trial process." (citation modified)); *District of Columbia v. Wesby*, 583 U.S. 48, 56-57, 64 (2018) (warrantless arrest without probable cause violates the Constitution); *Graham v. Connor*, 490 U.S. 386, 395 (1989) (excessive force during an arrest violates the Constitution).

Defendants' cited cases do not support their argument that the Complaint is conclusory. *See* Mot. at 19-21. The *Southey* court dismissed the complaint because it did not even mention the deliberate indifference elements and baldly stated that the police policies were inadequate. 2025 WL 1341742, at *7-8 & ECF No. 1-1; *see also Moran v. Hawthorne Police Dep't*, 2025 WL 842315, at *2 (D.N.J. Mar. 18, 2025) (complaint did not mention municipal liability); *O'Neal v. Middletown Township*, 2019 WL 77066, at *6 (D.N.J. Jan. 2, 2019) (complaint did not address any deliberate indifference element; instead alleged only that the "pattern, practice and/or policy of failing to train reflect[ed] deliberate indifference"); *Pinkston v. City of Jersey City*, 2020 WL 4251485, at *4-5 (D.N.J. July 24, 2020) (same).

## IV.    Piegaro Properly Pleads Emotional Distress Torts

### A.    Intentional Infliction of Emotional Distress (Count 8)

To adequately plead an IIED claim, a plaintiff must allege that "(1) defendant acted intentionally or recklessly, (2) the conduct was so outrageous in character and

extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community, (3) defendant's conduct is the proximate cause of plaintiff s emotional distress, and (4) the distress was so severe that no reasonable person could be expected to endure it." *Nunnery v. Salesian Missions, Inc.*, 2008 WL 1743436, at *6 (D.N.J. Apr. 15, 2008) (citation omitted). IIED claims are "rarely dismissed on a motion to dismiss." *Yujie Wang v. N.J. State Police*, 2019 WL 3887126, at *6 (D.N.J. Aug. 19, 2019).

Defendants do not dispute that Piegaro adequately pleads the first, third, and fourth elements of his IIED claim, arguing only that Piegaro failed to allege that Defendants' conduct was outrageous.[16] *See* Mot. at 25. Defendants assert that Piegaro "does not contend that he was beaten, held under unbearable conditions, or otherwise severely mistreated in any manner during [his arrest]." *Id.* (citing *Forsman*, 2023 WL 3145165, at *6). Yes, he does.

Piegaro explains, in detail, how Chief Strother used excessive force in an unjustified attack that caused serious bodily and emotional injury, which Defendants compounded with cruel post-arrest actions. Piegaro alleges, for example, that Chief Strother: (1) without justification, picked Piegaro up "like an open pair of scissors"

---

[16] Defendants again violate the Court's order, Dkt. 15, by arguing, for the first time, that the Municipal Court's probable cause comment regarding the *arrest* "bars" an IIED claim, Mot. at 26. This argument fails not only for the reasons discussed, *supra* Arg. §§ I-II, but also because none of the elements of IIED were at issue before the Municipal Court, nor was Defendants' post-arrest conduct. *See* ¶¶ 47-80, 137-41.

33

and dropped him down stone steps causing him rib injuries, a concussion, and multiple abrasions, ¶¶ 4, 39-44, 137; (2) knowingly provided false information about the attack to initiate and pursue criminal charges, ¶¶ 6, 63-79, 137; (3) orchestrated Princeton's retaliatory ban of Piegaro from campus (despite not having authority to do so) and removal from his home, ¶¶ 1, 5, 50-57, 138; and (4) perpetuated Princeton's sham investigation, which deliberately ignored witness, video, and photographic evidence, in an effort to intimidate Piegaro, ¶¶ 5-6, 50-79, 137-41. Defendants' actions caused Piegaro to suffer post-traumatic stress disorder and anxiety. ¶ 142.

These allegations—taken together or independently—sufficiently allege intentional and reckless conduct that is "beyond all possible bounds of decency" and "utterly intolerable in a civilized community." *Martinolich v. N.J. State Police*, 2025 WL 3011977, at *8 (N.J. Super. Ct. App. Div. Oct. 28, 2025) (IIED claim sufficiently pled where defendant's employee slammed a door on plaintiff's hand and foot); *Sanders v. Jersey City*, 2021 WL 1589464, at *23 (D.N.J. Apr. 23, 2021) (denying summary judgment because "excessive force . . . can be considered extreme and outrageous"). And the "power dynamics" between Chief Strother—a thirty-year law enforcement veteran and Princeton administrator/Chief of Police, ¶¶ 16, 137—and Piegaro—a Princeton undergraduate, ¶ 12—only further supports "the extremity and the outrageousness of the defendant's conduct," *Taylor v.*

*Metzger*, 706 A.2d 685, 695-96 (N.J. 1998) (holding abusive conduct by a defendant with "authority and power" over plaintiff supports an IIED claim (citation omitted)).

Princeton is both vicariously liable for Chief Strother's actions and independently liable for its own post-arrest conduct. *See Mason v. Sportsman's Pub*, 702 A.2d 1301, 1310 (N.J. Super. Ct. App. Div. 1997) (finding employer vicariously liable for employee's intentional torts intended to "serve the purpose of his employer in maintaining an orderly establishment"). Defendants fail to address either theory. Accordingly, this case must proceed to discovery on this claim. *See Wilson*, 2018 WL 6696783, at *5 (arguments raised for the first time on reply should be disregarded).

### B.    Negligent Infliction of Emotional Distress (Count 9)

Defendants claim that Piegaro's NIED claim must be dismissed under the New Jersey Charitable Immunity Act ("NJCIA"). The Court should reject this attempt for three independent reasons.

First, Defendants' Pre-Motion Letter does not raise this issue with respect to the claim against Chief Strother. By doing so now, Defendants flout the Court's order. Dkt. 15.

Second, the NJCIA "immunizes simple negligence only," not "intentional, reckless and wanton, or even grossly negligent behavior." *Hardwicke v. Am. Boychoir Sch.*, 902 A.2d 900, 917 (N.J. 2006) (citation omitted); *see also* N.J.S.A.

§ 2A:53A-7(c) (precluding immunity for "damage by a willful, wanton or grossly negligent act of commission or omission"). Piegaro adequately pleads the latter. Attempting to rewrite Piegaro's allegations, Defendants claim that Piegaro pleads only "ordinary negligence." Mot. at 29-30. But the elements (and thus pleading requirements) for negligence and gross negligence are "identical." *Powell v. Seton Hall Univ.*, 2022 WL 16922100, at *4 (D.N.J. Nov. 14, 2022). The difference is one "of degree rather than quality." *Sines v. Darling Ingredients Inc.*, 2020 WL 5015488, at *5 (D.N.J. Aug. 25, 2020) (citation modified). And "determinations as to the degree of negligent conduct are necessarily fact questions best left in the providence of a factfinder so long as negligence is appropriately pled." *Melone v. Cryoport Inc.*, 2024 WL 1743108, at *7 (D.N.J. Apr. 23, 2024).

Piegaro incorporated allegations of intentional and reckless conduct into his NIED claim, pleading: Chief Strother's intentional unprovoked and humiliating attack and false arrest; Defendants' efforts to ban Piegaro from campus, evict him from his apartment, and impose a nine-month disciplinary probation on Piegaro, all while ignoring evidence of Piegaro's innocence; and Defendants' maintenance of a nearly year-long criminal prosecution against Piegaro based on known falsehoods. ¶¶ 1-2, 4-7, 36-42, 48, 50-62, 68-79, 137-48. These acts demonstrate far worse than a "failure to exercise slight care or diligence," precluding dismissal at this stage. *See, e.g.*, *Powell*, 2022 WL 16922100, at *4 (gross negligence pled after school ignored

information about plaintiff's injury over several months); *Moretz v. Trs. of Princeton*, 2023 WL 9017155, at *6 (D.N.J. Dec. 29, 2023) (Princeton's "failure to take basic steps to protect Plaintiff" from faculty member's abuse despite reports stated claim for gross negligence).

Third, "charitable immunity [under the NJCIA] is an affirmative defense, as to which . . . defendants bear the burden of persuasion." *F.K. v. Integrity House, Inc.*, 213 A.3d 937, 944 (N.J. Super. Ct. App. Div. 2019) (citation modified). A defendant must establish—at this stage, using only the complaint—that it: "(1) was formed for nonprofit purposes; (2) is organized exclusively for religious, charitable or educational purposes; and (3) was promoting such objectives and purposes at the time of the injury to plaintiff who was then a beneficiary of the charitable works." *Collick v. William Paterson Univ.*, 2016 WL 6824374, at *26 (D.N.J. Nov. 17, 2016) (citation omitted). Dismissal is improper "unless it is clear from the face of the complaint that the immunity applies—*i.e.*, that plaintiffs have pled themselves out of court." *Id.* at *27.

Defendants assert that the Court must find, as a matter of law, that Defendants established the third prong—that at the "time of [his] injury" Piegaro "was then a beneficiary of [Princeton's] charitable works"—simply because Piegaro was a student. Mot. at 27-29 (relying entirely on summary judgment or post-trial opinions concerning slip-and-falls and other accidents that are leagues apart from the

intentional conduct in Piegaro's allegations). But a student is not "categorically define[d]" as an institution's beneficiary under the NJCIA "simply because [he was] enrolled as [a] student." *Collick*, 2016 WL 6824374, at *27. That is particularly true here, where Princeton was not promoting its charitable objectives at the protest (or after Piegaro's arrest) and Piegaro was not "truly engaged in and benefiting from educational pursuits at the time of the alleged negligence." *Id.* (denying motion to dismiss based on university's allegedly negligent investigation of students under the NJCIA); *see also Jones v. Pi Kappa Alpha Int'l Fraternity, Inc.*, 2017 WL 4074547, at *10 (D.N.J. Sept. 13, 2017) (denying university's motion to dismiss a student's claim related to on-campus assault because "[t]he relation between the events and the university's charitable mission presents a question of fact"), *aff'd in relevant part*, 765 F. App'x 802 (3d Cir. 2019).

## CONCLUSION

For the foregoing reasons, Defendants' Motion should be denied.

Dated:   February 3, 2026            Respectfully,
         New York, New York

                                     By: */s/ Andrew Schwartz*
                                         Andrew Schwartz
                                         (N.J. Bar No. 092242013)
                                         Andrew C. Bernstein
                                         (admitted *pro hac vice*)
                                         KASOWITZ LLP
                                         1633 Broadway
                                         New York, New York 10019
                                         (212) 506-1700
                                         ASchwartz@Kasowitz.com
                                         ABernstein@Kasowitz.com

                                     *Attorneys for Plaintiff David Piegaro*

## CERTIFICATE OF SERVICE

I, Andrew Schwartz, hereby certify that on February 3, 2026, a copy of the foregoing instrument was served via ECF on all counsel of record.

                                     By: */s/ Andrew Schwartz*
                                         Andrew Schwartz