Lawrence S. Lustberg
Anne M. Collart
Jessica A. Masi
**FBT GIBBONS LLP**
One Gateway Center
Newark, N.J. 07102-5310
Telephone: (973) 596-4500
Facsimile: (973) 596-0545

*Attorneys for Defendants The Trustees of Princeton University, and Kenneth E. Strother, Jr.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DAVID PIEGARO,<br><br>Plaintiff,<br><br>v.<br><br>THE TRUSTEES OF PRINCETON UNIVERSITY and KENNETH E. STROTHER, JR.,<br><br>Defendants. | Civil Action No. 3:25-cv-13919<br><br>***Document electronically filed***<br><br>**DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND JURY DEMAND** |

Defendants The Trustees of Princeton University ("Princeton") and Kenneth E. Strother, Jr. ("Chief Strother," and together with Princeton, the "Princeton Parties"), by their undersigned attorneys, hereby answer and respond to Plaintiff's Complaint (the "Complaint"). The Princeton Parties deny the allegations in the headings, subheadings, and footnotes in the Complaint. To the extent the Princeton Parties set forth headings and subheadings from the Complaint herein, such inclusion should not be construed as admitting the truth of any facts asserted therein but is instead set forth simply as organizational and reference aids to facilitate responding to the allegations of the Complaint.

## INTRODUCTION

1. The Princeton Parties admit that Plaintiff was banned from campus from May 1, 2024 until July 15, 2024, and as a result, was barred from his on-campus housing. By way of further response, the Princeton Parties deny that Plaintiff was "physically assaulted" by Chief Strother and "baselessly charged" with indictable offenses. The Princeton Parties lack sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations in Paragraph 1 of Plaintiff's Complaint, and therefore no response is required. To the extent a response is required, the Princeton Parties neither admit nor deny the same, leaving Plaintiff to his proofs.

2. The Princeton Parties deny the allegations in Paragraph 2 of Plaintiff's Complaint.

3. The Princeton Parties admit that several students had been arrested and were later released, that a Princeton bus was surrounded and vandalized, and that Plaintiff began recording "three men." The Princeton Parties deny the remaining allegations in Paragraph 3 of Plaintiff's Complaint.

4. The Princeton Parties admit that Chief Strother instructed a Department of Public Safety ("DPS") Officer to handcuff Piegaro. The Princeton Parties are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations regarding Piegaro's medical treatment, and therefore no response is required. To the extent a response is required, the Princeton Parties neither admit nor deny the same, leaving Plaintiff to his proofs. The Princeton Parties deny the remaining allegations in Paragraph 4 of Plaintiff's Complaint.

5. The Princeton Parties admit that Plaintiff was formally banned from campus from May 1, 2024 until July 15, 2024, and as a result, was barred from his on-campus housing. The Princeton Parties deny the remaining allegations of Paragraph 5 of Plaintiff's Complaint.

6. The Princeton Parties admit that the Mercer County Prosecutor's Office dismissed two offenses against Plaintiff and downgraded one offense, and that Plaintiff was a defendant in a criminal trial, at which the prosecutor dismissed one charge and the Court found that the State had not met its burden of showing that Plaintiff was guilty beyond a reasonable doubt of simple assault. The Princeton Parties further admit that Princeton initiated an internal disciplinary investigation into Plaintiff's conduct. The Princeton Parties deny the remaining allegations in Paragraph 6 of Plaintiff's Complaint.

7. The Princeton Parties deny the allegations in Paragraph 7 of Plaintiff's Complaint, including that there were any deliberate actions resulting in a constitutional violation or any "cover up."

## JURISDICTION AND VENUE

8. The allegations in Paragraph 8 of Plaintiff's Complaint set forth legal conclusions to which no response is required. To the extent a response is required, the Princeton Parties do not contest that this Court has subject matter jurisdiction and supplemental jurisdiction over the claims asserted in the Complaint.

9. The Princeton Parties admit the allegations in Paragraph 9 of Plaintiff's Complaint.

10. The allegations in Paragraph 10 of Plaintiff's Complaint set forth legal conclusions to which no response is required. To the extent a response is required, the Princeton Parties do not contest that this Court has personal jurisdiction over Chief Strother.

11. The Princeton Parties do not contest that venue is proper in the District of New Jersey.

## PARTIES

12. The Princeton Parties lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 12 of Plaintiff's Complaint, and therefore no response is required. To the extent a response is required, the Princeton Parties neither admit nor deny the same, leaving Plaintiff to his proofs.

13. The Princeton Parties admit the allegations in Paragraph 13 of Plaintiff's Complaint.

14. The Princeton Parties admit the allegations in Paragraph 14 of Plaintiff's Complaint.

15. The Princeton Parties admit the allegations set forth in the first sentence of Paragraph 15 of Plaintiff's Complaint. The remaining allegations in Paragraph 15 set forth legal conclusions to which no response is required. To the extent a response is required, the Princeton Parties neither admit nor deny the same, leaving Plaintiff to his proofs.

16. The Princeton Parties admit the allegations in the first sentence of Paragraph 16 of Plaintiff's Complaint. The remaining allegations in this Paragraph set forth legal conclusions to which no response is required. To the extent a response is required, the Princeton Parties neither admit nor deny the same, leaving Plaintiff to his proofs.

17. The allegations in Paragraph 17 of Plaintiff's Complaint set forth legal conclusions to which no response is required. To the extent a response is required, the Princeton Parties neither admit nor deny the same, leaving Plaintiff to his proofs.

## FACTUAL ALLEGATIONS

### A. Antisemitism Spreads at Princeton Following Hamas's October 7 Massacre.

18. The allegations in Paragraph 18 of Plaintiff's Complaint are not directed at the Princeton Parties and therefore no response is required.

19. The Princeton Parties deny the allegations set forth in Paragraph 19 of Plaintiff's Complaint.

20. The Princeton Parties admit that Princeton Students for Justice in Palestine held an event on October 13, 2023. The Princeton Parties are without sufficient knowledge or information to form an opinion as to the truth or falsity of what attendees "called for" during the event and therefore neither admit nor deny this allegation, leaving Plaintiff to his proofs. The Princeton Parties deny the remaining allegations set forth in Paragraph 20 of Plaintiff's Complaint.

21. The Princeton Parties are currently without sufficient knowledge or information to form an opinion as to the truth or falsity of what attendees may have stated during the event and therefore neither admit nor deny this allegation, leaving Plaintiff to his proofs. The Princeton Parties deny the remaining allegations in Paragraph 21 of Plaintiff's Complaint.

22. The allegations in Paragraph 22 of Plaintiff's Complaint are not directed at the Princeton Parties and therefore no response is required. To the extent a response is required, the Princeton Parties do not deny that there were protests on college campuses in April 2024, but they are without personal knowledge to admit or deny the allegations in this Paragraph regarding what occurred at those individual protests, leaving Plaintiff to his proofs.

23. The Princeton Parties lack sufficient knowledge or information to admit or deny the allegations as to Plaintiff's state of mind, leaving Plaintiff to his proofs. The Princeton Parties admit that a recent Princeton graduate informed Princeton administrators about encampment plans. The Princeton Parties deny the remaining allegations set forth in Paragraph 23 of Plaintiff's Complaint.

24. The Princeton Parties admit the allegations in Paragraph 24 of Plaintiff's Complaint.

25. The Princeton Parties admit that the email quoted from and characterized in Paragraph 24 of Plaintiff's Complaint "threaten[ed] potential disciplinary action." The Princeton Parties deny the remaining allegations in this Paragraph.

26. The Princeton Parties admit that there was an encampment on Princeton's campus beginning on April 25, 2024 through approximately April 29, 2024, that approximately 250 people gathered on the courtyard, and that Hezbollah and the Popular Front for the Liberation of Palestine are U.S.-designated terrorist organizations. The Princeton Parties are currently without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 26 of Plaintiff's Complaint, leaving Plaintiff to his proofs .

**B. April 29: Plaintiff Piegaro Is Assaulted by Princeton's Chief of Police.**

27. The Princeton Parties admit that the Council of the Princeton University Committee hosted a scheduled meeting on April 29, 2024. As to the allegation that "[p]rotesting students attended to disrupt [the meeting]," the Princeton Parties lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations regarding the motivations of others. To the extent a response is required, the Princeton Parties neither admit nor deny the same, leaving Plaintiff to his proofs.

28. The Princeton Parties admit that a group of people marched toward Clio Hall, occupied Clio Hall, and attempted to persuade Princeton to negotiate with Princeton Israeli Apartheid Divest.

29. The Princeton Parties admit that DPS officers warned the people in Clio Hall that anyone remaining after 5:30 p.m. would be arrested, that certain demonstrators remained, and that approximately 200 individuals surrounded Clio Hall. The Princeton Parties lack sufficient

knowledge or information to form a belief as to the truth or falsity of the allegations as to the motivations of demonstrators and neither admit nor deny the same, leaving Plaintiff to his proofs.

30. The Princeton Parties deny that Plaintiff acted as a "neutral journalist." The Princeton Parties lack sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations in Paragraph 30 of Plaintiff's Complaint and neither admit nor deny the same, leaving Plaintiff to his proofs.

31. The Princeton Parties admit the allegations in Paragraph 31 of Plaintiff's Complaint.

32. The Princeton Parties admit the allegations in Paragraph 32 of Plaintiff's Complaint.

33. To the extent Plaintiff characterizes himself as "lawfully" on campus, such characterization is a legal conclusion to which no response is required. The Princeton Parties are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 33 of Plaintiff's Complaint and neither admit nor deny the same, other than to admit that Plaintiff took photos and videos outside of Clio Hall.

34. To the extent Plaintiff characterizes himself as "lawfully" entering Whig Hall, such characterization is a legal conclusion to which no response is required. The Princeton Parties lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 34 of Plaintiff's Complaint, and therefore no response is required. To the extent a response is required, the Princeton Parties neither admit nor deny the same, leaving Plaintiff to his proofs.

35. The Princeton Parties deny the allegations set forth in Paragraph 35 of Plaintiff's Complaint.

36. To the extent Plaintiff characterizes himself as having "calmly approached" and "responded respectfully," the Princeton Parties deny such characterizations. The Princeton Parties admit that three men were having a conversation and that "Chief Strother told Piegaro that they were having a private discussion." As to the remaining allegations, the Princeton Parties lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations, and therefore no response is required. To the extent a response is required, the Princeton Parties neither admit nor deny the allegation, leaving Plaintiff to his proofs.

37. To the extent Plaintiff characterizes himself as "lawfully" having entered Whig Hall, such characterization is a legal conclusion to which no response is required. The Princeton Parties deny that Chief Strother ignored Plaintiff. The Princeton Parties admit the remaining allegations in Paragraph 37 of Plaintiff's Complaint.

38. The Princeton Parties admit that Chief Strother did not speak to Plaintiff and held the door open for Professor Weiss and Professor Mian. The Princeton Parties deny the remaining allegations in Paragraph 38 of Plaintiff's Complaint.

39. The Princeton Parties deny the allegations in Paragraph 39 of Plaintiff's Complaint.

40. The Princeton Parties deny the allegations in Paragraph 40 of Plaintiff's Complaint.

41. The Princeton Parties deny the allegations in Paragraph 41 of Plaintiff's Complaint other than to admit that the excerpted quote is consistent with testimony by a graduate student in municipal court.

42. The Princeton Parties admit that Chief Strother restrained Plaintiff, called the nearby uniformed DPS police officer, John Neiman, to handcuff Piegaro, and that DPS Detective Martin Krzywicki arrived on the scene thereafter. The Princeton Parties deny the remaining allegations in Paragraph 42 of Plaintiff's Complaint.

43. The Princeton Parties admit only that Plaintiff was transported to DPS headquarters, that he was placed in a holding room upon arrival, and that he was later transported to Princeton Medical Center. The Princeton Parties lack sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations, and therefore no response is required. To the extent a response is required, the Princeton Parties neither admit nor deny the remaining allegations in Paragraph 43 of Plaintiff's Complaint, leaving Plaintiff to his proofs.

44. The Princeton Parties lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations, and therefore no response is required. To the extent a response is required, the Princeton Parties neither admit nor deny the remaining allegations in Paragraph 44 of Plaintiff's Complaint, leaving Plaintiff to his proofs.

45. The Princeton Parties admit the allegations in Paragraph 45 of Plaintiff's Complaint.

46. The Princeton Parties admit that Plaintiff was released from DPS custody and given a copy of the criminal complaint and summons against him at approximately 12:21 a.m. on April 30, 2024.

47. To the extent the allegations in Paragraph 47 of Plaintiff's Complaint characterize Plaintiff's criminal complaint and summons, the criminal complaint and summons are the best evidence of its terms and as such, the Princeton Parties deny any characterization inconsistent therewith. To the extent a further response is required, the Princeton Parties neither admit nor deny the remaining allegations in Paragraph 47 of Plaintiff's Complaint, leaving Plaintiff to his proofs.

48. The Princeton Parties deny the allegations in Paragraph 48 of Plaintiff's Complaint.

49. The Princeton Parties currently lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations, and therefore no response is required. To the

extent a response is required, the Princeton Parties neither admit nor deny the remaining allegations in Paragraph 49 of Plaintiff's Complaint, leaving Plaintiff to his proofs.

**C. April 30: DPS Officers Ambush Piegaro and Princeton Bans Piegaro from Campus.**

50. The Princeton Parties lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations, and therefore no response is required. To the extent a response is required, the Princeton Parties neither admit nor deny the remaining allegations in Paragraph 50 of Plaintiff's Complaint, leaving Plaintiff to his proofs.

51. The Princeton Parties admit that Officer Maleci Malec was dispatched to University Health Services on April 30, 2024. As to the allegation characterizing Chief Strother's arrest narrative and testimony, those materials are the best evidence of their terms, and the Princeton Parties deny any allegations inconsistent therewith. To the extent a response is required, the Princeton Parties neither admit nor deny the remaining allegations in Paragraph 51 of Plaintiff's Complaint, leaving Plaintiff to his proofs.

52. The Princeton Parties lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations, and therefore no response is required. To the extent a response is required, the Princeton Parties neither admit nor deny the remaining allegations in Paragraph 52 of Plaintiff's Complaint, leaving Plaintiff to his proofs.

53. The Princeton Parties admit the allegations in Paragraph 53 of Plaintiff's Complaint.

54. The Princeton Parties lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegation that Plaintiff was forced "to scramble to find a place to sleep," and therefore no response is required. To the extent a response is required, the Princeton

Parties neither admit nor deny the same, leaving Plaintiff to his proofs. The Princeton Parties admit the remaining allegations set forth in Paragraph 54 of Plaintiff's Complaint.

55. The Princeton Parties admit that Plaintiff's campus ban remained in place until July 15, 2024, albeit with modifications to permit attendance at exams and in person academic presentations, as well as to return to his University housing in May 2024. The remaining allegations characterize the letter received from Regan Crotty, Dean of Undergraduate Students, which is the best evidence of its terms. To the extent a response is required, the Princeton Parties deny any allegations inconsistent therewith.

56. To the extent the allegations in Paragraph 56 of Plaintiff's Complaint characterize a video of Professor Weiss, the video is the best evidence of its terms. To the extent a response is required, the Princeton Parties deny any allegations inconsistent therewith. The Princeton Parties deny the remaining allegations in Paragraph 56 of Plaintiff's Complaint.

57. The Princeton Parties admit that Plaintiff was taken into custody, held at DPS headquarters, and barred from campus.

58. The Princeton Parties admit that such interviews took place and that Chief Strother and other officers were not interviewed in connection with Princeton's disciplinary investigation, though they deny the suggestion that officer reports and statements were not considered as part of the investigation.

59. To the extent the allegations in Paragraph 59 of Plaintiff's Complaint characterize the Princeton investigator's statements, such statements are the best evidence of its contents. To the extent a response is required, the Princeton Parties deny any allegations inconsistent therewith. The Princeton Parties admit that Plaintiff was placed on disciplinary probation for nine months.

The Princeton Parties deny the remaining allegations set forth in Paragraph 59 of Plaintiff's Complaint.

60. The Princeton Parties admit that the "Clio Hall occupiers" were offered a "restorative justice" option. The Princeton Parties deny the remaining allegations set forth in Paragraph 60 of Plaintiff's Complaint.

61. The Princeton Parties admit that, on September 29, 2024, Plaintiff "emailed Melissa Chesanko, Assistant Dean for Student Life, seeking a no-contact order against Chief Strother." As to the allegation that Piegaro attended a vigil in October 2024 and upon noticing Chief Strother "immediately felt physical and emotional distress and ultimately left the vigil," the Princeton Parties lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations, and therefore no response is required. To the extent a response is required, the Princeton Parties neither admit nor deny the same, leaving Plaintiff to his proofs.

62. The allegations in Paragraph 62 of Plaintiff's Complaint characterize Plaintiff's mental health, alleged injuries, and alleged damages. The Princeton Parties lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations, and therefore no response is required. To the extent a response is required, the Princeton Parties neither admit nor deny the same, leaving Plaintiff to his proofs. The Princeton Parties deny the allegation characterizing Princeton's investigation as "sham."

**D. Chief Strother Provides Knowingly False Reports of the Attack.**

63. The Princeton Parties admit that Chief Strother filed written incident reports on May 1 and 2, 2024. The Princeton Parties deny the remaining allegations set forth in Paragraph 63 of Plaintiff's Complaint.

64. To the extent the allegations in Paragraph 64 of Plaintiff's Complaint characterize or quote from Chief Strother's arrest report narrative, such narrative is the best evidence of its terms. To the extent a response is required, the Princeton Parties deny any allegations inconsistent therewith. The Princeton Parties deny the characterization that "Whig Hall was not locked." The Princeton Parties admit the remaining allegations set forth in Paragraph 64 of Plaintiff's Complaint.

65. The Princeton Parties admit that Whig Hall was manually locked at 5:56 p.m. and that Chief Strother could not provide Dean Chen with the building access records because it could "provide a conflict for the ongoing criminal case against" Plaintiff. The Princeton Parties specifically deny that Chief Strother lied and generally deny the remaining allegations of Paragraph 65 of Plaintiff's Complaint.

66. The Princeton Parties deny the allegations set forth in Paragraph 66 of Plaintiff's Complaint.

67. The Princeton Parties deny the allegations set forth in Paragraph 67 of Plaintiff's Complaint.

68. The Princeton Parties deny the allegations set forth in Paragraph 68 of Plaintiff's Complaint.

69. To the extent that the allegations set forth in Paragraph 69 of Plaintiff's Complaint characterize or quote testimony, such testimony is the best evidence of its terms. To the extent a response is required, the Princeton Parties deny any allegation inconsistent with such testimony. The Princeton Parties deny the remaining allegations set forth in Paragraph 69 of Plaintiff's Complaint.

70. To the extent that the allegations set forth in Paragraph 70 of Plaintiff's Complaint characterize or quote Chief Strother's testimony, such testimony is the best evidence of its terms. To the extent a response is required, the Princeton Parties deny any allegation inconsistent with such testimony. The Princeton Parties deny the remaining allegations set forth in Paragraph 70 of Plaintiff's Complaint.

71. To the extent that the allegations set forth in Paragraph 71 of Plaintiff's Complaint characterize or quote Chief Strother's testimony and the arrest narratives of Officer Neiman and Detective Krzywicki, such testimony and arrest narratives are the best evidence of their terms. To the extent a response is required, the Princeton Parties deny any allegation inconsistent with such testimony and arrest narratives.

72. To the extent that the allegations set forth in Paragraph 72 of Plaintiff's Complaint characterize or quote Chief Strother's testimony and arrest narrative, such testimony and arrest narrative are the best evidence of their terms. To the extent a response is required, the Princeton Parties deny any allegation inconsistent with such testimony and arrest narrative. The Princeton Parties deny the remaining allegations set forth in Paragraph 72 of Plaintiff's Complaint.

73. To the extent that the allegations set forth in Paragraph 73 of Plaintiff's Complaint characterize or quote Chief Strother's testimony and reports, such testimony and reports are the best evidence of their terms. To the extent a response is required, the Princeton Parties deny any allegation inconsistent with such testimony and reports. The Princeton Parties deny the remaining allegations set forth in Paragraph 73 of Plaintiff's Complaint.

74. To the extent that the allegations set forth in Paragraph 74 of Plaintiff's Complaint characterize or quote Chief Strother's testimony and a video, such testimony and video are the best evidence of their terms. To the extent a response is required, the Princeton Parties deny any

allegation inconsistent with such testimony and video. The Princeton Parties deny the remaining allegations set forth in Paragraph 74 of Plaintiff's Complaint.

75. To the extent that the allegations set forth in Paragraph 75 of Plaintiff's Complaint characterize or quote Detective Krzywicki's arrest report, such arrest report is the best evidence of its terms. To the extent a response is required, the Princeton Parties deny any allegation inconsistent with such arrest report. The Princeton Parties admit that Chief Strother did not show law enforcement identification to Plaintiff, but deny the suggestion that he had at no time prior to their interaction identified himself to the gathered individuals. With respect to Plaintiff's allegation that he was not involved in the protests, the Princeton Parties lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegation, and therefore no response is required. To the extent a response is required, the Princeton Parties neither admit nor deny the same, leaving Plaintiff to his proofs. The Princeton Parties deny the remaining characterizations set forth in Paragraph 75 of Plaintiff's Complaint.

76. To the extent that the allegations set forth in Paragraph 76 of Plaintiff's Complaint characterize or quote Detective Krzywicki's criminal complaint, such criminal complaint is the best evidence of its terms. To the extent a response is required, the Princeton Parties deny any allegation inconsistent with such criminal complaint. The Princeton Parties deny the remaining allegations set forth in Paragraph 76 of Plaintiff's Complaint.

77. The Princeton Parties admit that DPS confiscated Plaintiff's phone and took his statement for the internal affairs complaint. With respect to Plaintiff's allegation that DPS "did not take copies of the videos as evidence," the Princeton Parties lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegation, and therefore no response is required. To the extent a response is required, the Princeton Parties neither admit nor deny the

same, leaving Plaintiff to his proofs. The Princeton Parties deny the remaining allegations set forth in Paragraph 77 of Plaintiff's Complaint.

78. The Princeton Parties admit that the Mercer County Prosecutor's Office dismissed the obstruction and resisting arrest charges against Plaintiff and reduced his aggravated assault charge to simple assault. The Princeton Parties further admit that the Princeton Municipal Prosecutor dismissed the defiant trespass charge at the end of the second day of trial. The Princeton Parties deny the characterization that such dismissals and reduction were "[i]n recognition that charges were without any foundation."

79. The Princeton Parties admit that the Court found that the State had not met its burden of showing that Plaintiff was guilty beyond a reasonable doubt of simple assault and accordingly acquitted him.

80. The Princeton Parties admit that Chief Strother received a President's Achievement Award, but deny the suggestion that it was tied to the interaction between Plaintiff and Chief Strother on April 29, 2024. As to the remaining allegations set forth in Paragraph 80 of Plaintiff's Complaint, the Princeton Parties lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations, and therefore no response is required. To the extent a response is required, the Princeton Parties neither admit nor deny the same, leaving Plaintiff to his proofs.

81. The allegations set forth in Paragraph 81 of Plaintiff's Complaint characterize Plaintiff's claims against the Princeton Parties, to which no response is required.

## **FIRST CAUSE OF ACTION**

*Against Chief Strother*
Violation of the First and Fourteenth Amendments to the U.S. Constitution
Violation of Art. I, §§ 6 and 18 of the N.J. Constitution
Free Speech, Free Press, Free Assembly, Right to Record, Retaliation
(Pursuant to 42 U.S.C. § 1983 and N.J.S.A. 10:6-2)

82. The Princeton Parties hereby incorporate their responses set forth in the preceding Paragraphs as if fully set forth herein.

83. The allegations in Paragraph 83 of Plaintiff's Complaint set forth legal conclusions to which no response is required.

84. The Princeton Parties deny that Plaintiff was "lawfully exercising his" rights. As to the allegation that Plaintiff was "reporting on a matter of public concern," the Princeton Parties lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations, and therefore no response is required. To the extent a response is required, the Princeton Parties neither admit nor deny the same, leaving Plaintiff to his proofs. The remaining allegations in Paragraph 84 of Plaintiff's Complaint set forth legal conclusions to which no response is required.

85. The Princeton Parties deny the allegations set forth in Paragraph 85 of Plaintiff's Complaint.

86. The Princeton Parties deny the allegations set forth in Paragraph 86 of Plaintiff's Complaint.

87. The Princeton Parties deny the allegations set forth in Paragraph 87 of Plaintiff's Complaint.

88. The Princeton Parties deny the allegations set forth in Paragraph 88 of Plaintiff's Complaint.

89. The Princeton Parties deny the allegations set forth in Paragraph 89 of Plaintiff's Complaint.

90. The allegations in Paragraph 90 of Plaintiff's Complaint characterize Plaintiff's alleged injuries. The Princeton Parties lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations, and therefore no response is required. To the extent a

response is required, the Princeton Parties neither admit nor deny the same, leaving Plaintiff to his proofs.

91. The allegations in Paragraph 91 of Plaintiff's Complaint set forth the relief sought by Plaintiff, to which no response is required. To the extent a response is required, the Princeton Parties deny that Plaintiff is entitled to any relief.

## SECOND CAUSE OF ACTION

*Against Chief Strother*
Violation of the Fourth and Fourteenth Amendments to the U.S. Constitution
Violation of Art. I, § 7 of the N.J. Constitution
Unlawful Arrest and False Imprisonment
(Pursuant to 42 U.S.C. § 1983 and N.J.S.A. 10:6-2)

92. The Princeton Parties hereby incorporate their responses set forth in the preceding Paragraphs as if fully set forth herein.

93. To the extent the allegations set forth in Paragraph 93 of Plaintiff's Complaint set forth a legal conclusion, no response is required. The Princeton Parties deny the remaining allegations set forth in Paragraph 93 of Plaintiff's Complaint.

94. The Princeton Parties deny the allegations set forth in Paragraph 94 of Plaintiff's Complaint.

95. The Princeton Parties admit that Plaintiff was photographed, fingerprinted, and charged after being imprisoned for several hours. The Princeton Parties deny the remaining allegations set forth in Paragraph 95 of Plaintiff's Complaint.

96. The allegations in Paragraph 96 of Plaintiff's Complaint set forth legal conclusions to which no response is required. The Princeton Parties deny the remaining allegations set forth in Paragraph 96 of Plaintiff's Complaint.

97. The allegations in Paragraph 97 of Plaintiff's Complaint characterize Plaintiff's alleged injuries. The Princeton Parties lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations, and therefore no response is required. To the extent a response is required, the Princeton Parties neither admit nor deny the same, leaving Plaintiff to his proofs.

98. The allegations in Paragraph 98 of Plaintiff's Complaint set forth the relief sought by Plaintiff, to which no response is required. To the extent a response is required, the Princeton Parties deny that Plaintiff is entitled to any relief.

## THIRD CAUSE OF ACTION

*Against Chief Strother*
Violation of the Fourth and Fourteenth Amendments to the U.S. Constitution
Violation of Art. I, § 7 of the N.J. Constitution
Excessive Force
(Pursuant to 42 U.S.C. § 1983 and N.J.S.A. 10:6-2)

99. The Princeton Parties hereby incorporate their responses set forth in the preceding Paragraphs as if fully set forth herein.

100. To the extent the allegations set forth in Paragraph 100 of Plaintiff's Complaint set forth a legal conclusion, no response is required. The Princeton Parties deny the remaining allegations set forth in Paragraph 100 of Plaintiff's Complaint.

101. The Princeton Parties deny the allegations set forth in Paragraph 101 of Plaintiff's Complaint.

102. The allegations in Paragraph 102 of Plaintiff's Complaint set forth legal conclusions to which no response is required. To the extent a response is required, the Princeton Parties neither admit nor deny the same, leaving Plaintiff to his proofs.

103. The allegations in Paragraph 103 of Plaintiff's Complaint characterize Plaintiff's alleged injuries. The Princeton Parties lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations, and therefore no response is required. To the extent a response is required, the Princeton Parties neither admit nor deny the same, leaving Plaintiff to his proofs.

104. The allegations in Paragraph 104 of Plaintiff's Complaint set forth the relief sought by Plaintiff, to which no response is required. To the extent a response is required, the Princeton Parties deny that Plaintiff is entitled to any relief.

**FOURTH CAUSE OF ACTION**

*Against Chief Strother*[1]

Assault and Battery

105. The Princeton Parties hereby incorporate their responses set forth in the preceding Paragraphs as if fully set forth herein.

106. The Princeton Parties deny the allegations set forth in Paragraph 106 of Plaintiff's Complaint.

107. The allegations in Paragraph 107 of Plaintiff's Complaint characterize Plaintiff's alleged injuries, to which no response is required. To the extent a response is required, the Princeton Parties lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations, and therefore neither admit nor deny the same, leaving Plaintiff to his proofs.

108. As the Court dismissed Count IV against Princeton, no response is required. The remaining allegations in Paragraph 108 of Plaintiff's Complaint set forth the relief sought by Plaintiff, to which no response is required. To the extent a response is required, the Princeton Parties deny that Plaintiff is entitled to any relief.

---

[1] The Court granted the Princeton Parties Motion to Dismiss as to Princeton on Count IV. Therefore, the Princeton Parties answer only as to Chief Strother for Count IV.

**FIFTH CAUSE OF ACTION**

*Against Chief Strother and Princeton*

Violation of the Fourth and Fourteenth Amendments to the U.S. Constitution

Malicious Prosecution

(Pursuant to 42 U.S.C. § 1983 and Common Law)

109. The Princeton Parties hereby incorporate their responses set forth in the preceding Paragraphs as if fully set forth herein.

110. The Princeton Parties deny the allegations set forth in Paragraph 110 of Plaintiff's Complaint.

111. The Princeton Parties lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 111 of Plaintiff's Complaint regarding Piegaro missing out on important personal events, including wedding festivities. The Princeton Parties otherwise deny the allegations of Paragraph 111 of Plaintiff's Complaint.

112. The Princeton Parties admit that the prosecution dropped three out of the four charges and that the Court found that the State had not met its burden of showing that Plaintiff was guilty beyond a reasonable doubt of the remaining charge.

113. To the extent the allegations set forth in Paragraph 113 of Plaintiff's Complaint characterize or quote Chief Strother's arrest report or testimony, the testimony is the best evidence of their terms. The Princeton Parties deny any allegations inconsistent therewith. The Princeton Parties deny the remaining allegations set forth in Paragraph 113 of Plaintiff's Complaint.

114. The Princeton Parties deny the allegations set forth in Paragraph 114 of Plaintiff's Complaint.

115. To the extent the allegations in Paragraph 115 of Plaintiff's Complaint set forth legal conclusions, no response is required. To the extent a response is required, the Princeton

Parties neither admit nor deny the same, leaving Plaintiff to his proofs. The Princeton Parties deny the remaining allegations set forth in Paragraph 115 of Plaintiff's Complaint.

116. The allegations in Paragraph 116 of Plaintiff's Complaint set forth legal conclusions, to which no response is required. To the extent a response is required, the Princeton Parties neither admit nor deny the same, leaving Plaintiff to his proofs.

117. The allegations in Paragraph 117 of Plaintiff's Complaint characterize Plaintiff's alleged injuries. The Princeton Parties lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations, and therefore no response is required. To the extent a response is required, the Princeton Parties neither admit nor deny the same, leaving Plaintiff to his proofs.

118. The allegations in Paragraph 118 of Plaintiff's Complaint set forth the relief sought by Plaintiff, to which no response is required. To the extent a response is required, the Princeton Parties deny that Plaintiff is entitled to any relief.

**SIXTH CAUSE OF ACTION**

*Against Chief Strother*

Violation of the Fourth and Fourteenth Amendments to the U.S. Constitution

Violation of Art. I, § 7 of the N.J. Constitution

Fabrication of Evidence

(Pursuant to 42 U.S.C. § 1983 and N.J.S.A. 10:6-2)

119. The Princeton Parties hereby incorporate their responses set forth in the preceding Paragraphs as if fully set forth herein.

120. The Princeton Parties deny the allegations set forth in Paragraph 120 of Plaintiff's Complaint.

121. The Princeton Parties deny the allegations set forth in Paragraph 121 of Plaintiff's Complaint.

122. The Princeton Parties deny the allegations set forth in Paragraph 122 of Plaintiff's Complaint.

123. The allegations in Paragraph 123 of Plaintiff's Complaint set forth legal conclusions, to which no response is required. To the extent a response is required, the Princeton Parties neither admit nor deny the same, leaving Plaintiff to his proofs.

124. The allegations in Paragraph 124 of Plaintiff's Complaint characterize Plaintiff's alleged injuries. The Princeton Parties lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations, and therefore no response is required. To the extent a response is required, the Princeton Parties neither admit nor deny the same, leaving Plaintiff to his proofs.

125. The allegations in Paragraph 125 of Plaintiff's Complaint set forth the relief sought by Plaintiff, to which no response is required. To the extent a response is required, the Princeton Parties deny that Plaintiff is entitled to any relief.

**SEVENTH CAUSE OF ACTION**
*Against Princeton*
Municipal Liability – Failure to Train and Failure to Supervise
(Pursuant to 42 U.S.C. § 1983 and N.J.S.A. 10:6-2)

126. The Princeton Parties hereby incorporate their responses set forth in the preceding Paragraphs as if fully set forth herein.

127. The Princeton Parties deny the allegations of Paragraph 127 of Plaintiff's Complaint.

128. The Princeton Parties admit the allegations set forth in Paragraph 128 of Plaintiff's Complaint.

129. The Princeton Parties deny the allegations set forth in Paragraph 129 of Plaintiff's Complaint.

130. The Princeton Parties deny the allegations set forth in Paragraph 130 of Plaintiff's Complaint.

131. The Princeton Parties deny the allegations set forth in Paragraph 131 of Plaintiff's Complaint.

132. The Princeton Parties deny the allegations set forth in Paragraph 132 of Plaintiff's Complaint.

133. The Princeton Parties deny the allegations set forth in Paragraph 133 of Plaintiff's Complaint.

134. The allegations in Paragraph 134 of Plaintiff's Complaint set forth legal conclusions, to which no response is required. To the extent a response is required, the Princeton Parties neither admit nor deny the same, leaving Plaintiff to his proofs. The Princeton Parties deny the remaining allegations set forth in Paragraph 134 of Plaintiff's Complaint.

135. The allegations in Paragraph 135 of Plaintiff's Complaint characterize Plaintiff's alleged injuries. The Princeton Parties lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations, and therefore no response is required. To the extent a response is required, the Princeton Parties neither admit nor deny the same, leaving Plaintiff to his proofs.

**EIGHTH CAUSE OF ACTION**
*Against Chief Strother and Princeton*
Intentional Infliction of Emotional Distress

136. The Princeton Parties hereby incorporate their responses set forth in the preceding Paragraphs as if fully set forth herein.

137. The Princeton Parties deny the allegations set forth in Paragraph 137 of Plaintiff's Complaint.

138. The Princeton Parties deny the allegations set forth in Paragraph 138 of Plaintiff's Complaint.

139. The Princeton Parties deny the allegations set forth in Paragraph 139 of Plaintiff's Complaint.

140. The Princeton Parties admit that Chief Strother received the President's Achievement Award. The Princeton Parties deny the remaining allegations set forth in Paragraph 140 of Plaintiff's Complaint.

141. The Princeton Parties deny the allegations set forth in Paragraph 141 of Plaintiff's Complaint.

142. The allegations in Paragraph 142 of Plaintiff's Complaint characterize Plaintiff's alleged injuries. The Princeton Parties lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations, and therefore no response is required. To the extent a response is required, the Princeton Parties neither admit nor deny the same, leaving Plaintiff to his proofs. To the extent the allegations in Paragraph 142 of Plaintiff's Complaint set forth the relief sought by Plaintiff, no response is required. To the extent a response is required, the Princeton Parties deny that Plaintiff is entitled to any relief.

**NINTH CAUSE OF ACTION**
*Against Chief Strother and Princeton*
Negligent Infliction of Emotional Distress

143. The Princeton Parties hereby incorporate their responses set forth in the preceding Paragraphs as if fully set forth herein.

144. To the extent the allegations set forth in Paragraph 144 of Plaintiff's Complaint set forth legal conclusions, no response is required. To the extent a response is required, the Princeton

Parties neither admit nor deny the same, leaving Plaintiff to his proofs. The Princeton Parties deny the remaining allegations set forth in Paragraph 144 of Plaintiff's Complaint.

145. The Princeton Parties deny the allegations set forth in Paragraph 145 of Plaintiff’s Complaint.

146. The Princeton Parties deny the allegations set forth in Paragraph 146 of Plaintiff's Complaint.

147. The Princeton Parties deny the allegations set forth in Paragraph 147 of Plaintiff’s Complaint.

148. The allegations in Paragraph 148 of Plaintiff’s Complaint characterize Plaintiff’s alleged injuries. The Princeton Parties lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations, and therefore no response is required. To the extent a response is required, the Princeton Parties neither admit nor deny the same, leaving Plaintiff to his proofs. To the extent the allegations in Paragraph 148 of Plaintiff’s Complaint set forth the relief sought by Plaintiff, no response is required. To the extent a response is required, the Princeton Parties deny that Plaintiff is entitled to any relief.

## JURY DEMAND

149. The Princeton Parties also demand a trial by jury.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

Plaintiff’s Complaint fails to state a cause of action upon which relief can be granted.

### SECOND DEFENSE

Plaintiff’s claims are barred, in whole or in part, because Chief Strother acted lawfully, reasonably, and with probable cause.

**THIRD DEFENSE**

Chief Strother is entitled to qualified immunity because his conduct did not violate any clearly established constitutional or statutory right of which a reasonable official would have known.

**FOURTH DEFENSE**

No act or failure to act on the part of Princeton proximately caused any actual or other damages in this case.

**FIFTH DEFENSE**

At all material times, Princeton has complied with all applicable laws, rules, regulations and standards.

**SIXTH DEFENSE**

No act or failure to act on the part of Princeton was a substantial factor in causing any damages to Plaintiff.

**SEVENTH DEFENSE**

Plaintiff's injuries, if any, were caused in whole or in part by Plaintiff's own acts, omissions, conduct, negligence, fault, recklessness, and/or failure to exercise reasonable care, thereby barring or reducing recovery under applicable comparative-fault principles.

**EIGHTH DEFENSE**

Any force used in connection with Plaintiff's detention, arrest, or removal was objectively reasonable, privileged, necessary, and proportionate under the circumstances.

**NINTH DEFENSE**

Defendants acted at all times in good faith and in the reasonable belief that their conduct was lawful and authorized.

**TENTH DEFENSE**

The relief sought in the Complaint is barred by the Charitable Immunity Act, N.J.S.A. 2A:53A-7, which immunizes Princeton from liability for any alleged negligence.

**ELEVENTH DEFENSE**

Plaintiff has failed to mitigate his alleged damages and any recovery must be reduced accordingly.

**TWELFTH DEFENSE**

Plaintiff's claims for emotional distress fail because Defendants' conduct was not extreme, outrageous, reckless, or otherwise sufficient to support such claims as a matter of law.

**THIRTEENTH DEFENSE**

Plaintiff's claims against Princeton based on respondeat superior, vicarious liability, municipal liability, failure to train, failure to supervise, custom, policy, or practice fail because no constitutional violation occurred and because Plaintiff cannot establish the elements required under 42 U.S.C. § 1983, *Monell v. Dep't of Soc. Servis.*, 436 U.S. 658 (1978), or analogous state-law theories.

**ADDITIONAL DEFENSES**

Princeton reserves the right to file additional affirmative defenses based on the results of further investigation and discovery.

**WHEREFORE**, the Princeton Parties respectfully request that the Court enter judgment in their favor on all claims set forth in Plaintiff's Complaint, awarding Plaintiff nothing on his causes of action, dismissing the Complaint with prejudice and on the merits, and awarding Princeton attorneys' fees, interest, costs of suit, and such other relief as the Court may deem just and proper.

## LOCAL CIVIL RULE 11.2 CERTIFICATION

On behalf of the Princeton Parties, to the best of my knowledge, the matter in controversy is not the subject of any other action pending in any court, pending arbitration, or administrative proceeding.

Dated: August 28, 2026

Respectfully submitted,

*/s/ Lawrence S. Lustberg*

Lawrence S. Lustberg, Esq.
Anne M. Collart, Esq.
Jessica A. Masi, Esq.
**FBT GIBBONS LLP**
One Gateway Center
Newark, N.J. 07102-5310
Telephone: (973) 596-4500
Facsimile: (973) 596-0545
llustberg@fbtgibbons.com
acollart@fbtgibbons.com
jmasi@fbtgibbons.com

## COUNTERCLAIMS

Kenneth E. Strother, Jr. ("Chief Strother" or "Counterclaim Plaintiff"), for his Counterclaims against Plaintiff David Piegaro ("Piegaro" or "Counterclaim Defendant") states and alleges as follows:

## FACTUAL BACKGROUND TO ALL COUNTS

### Parties

1. Counterclaim Plaintiff Kenneth E. Strother, Jr. is a 53-year-old resident of New Jersey and the Assistant Vice President for Public Safety and supervisor of the Department of Public Safety ("DPS") at Princeton University.

2. Upon information and belief, David Piegaro is a resident of New Jersey and former full-time undergraduate student at Princeton University.

### Jurisdiction and Venue

3. The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the counterclaims asserted herein because they form part of the same case or controversy as federal claims alleged by Piegaro in the Complaint.

4. The Court has personal jurisdiction over Piegaro by virtue of his New Jersey residency and having filed suit in this court.

5. Venue is proper under 28 U.S.C. § 1391.

### Background

6. On April 29, 2024, before 5:00 p.m., Chief Strother was advised that students connected with campus protests had entered Clio Hall and were refusing to leave.

7. DPS officers placed individuals who refused to vacate the premises under arrest and escorted them onto a DPS bus, which was subsequently surrounded by protesters.

8. Chief Strother was present on the bus and determined that, given the volume of protestors and damage to the DPS bus, DPS officers would issue summonses to the arrested individuals on location and release them from the bus without the need to transport the individuals back to DPS headquarters for processing.

9. Chief Strother, who was wearing a suit as is customary for his position in University administration, then exited the bus, announced who he was to the gathered protestors, and advised that the individuals would be summonsed and released from the bus on location without being transported to DPS headquarters.

10. Thereafter, at approximately 7:45 p.m., Chief Strother spoke with Princeton Professors Max Weiss and Zia Mian in the area between Whig Hall and Clio Hall. Weiss and Mian had previously served as liaisons to student protestors, including conveying communications from University administration to the protest group.

11. Chief Strother noticed an individual—later determined to be Piegaro—approaching, and advised him that he, Weiss, and Mian were engaged in a private conversation. Piegaro responded that he had a right to be there. Chief Strother believed that to be correct, and moved to relocate the conversation with Weiss and Mian to a different location where they could speak privately.

12. Chief Strother, Weiss, and Mian then traversed approximately 15 yards and ascended the stairs to the front entrance to Whig Hall, which was locked. Chief Strother saw Piegaro out of the corner of his eye, following the trio.

13. Chief Strother had previously ordered all buildings surrounding the Greens to be locked, which included Whig Hall. Accordingly, pursuant to his order, no students should have been able to gain entry to the building. Chief Strother swiped his badge to gain entry and held open

the door for Weiss and Mian to enter, positioning himself between the entrance and Piegaro.

14. While holding the door for his colleagues to enter, Chief Strother felt Piegaro suddenly push against his outstretched arm in an apparent effort to force entry into the building. Chief Strother advised that Piegaro could not enter, but Piegaro did not retreat and continued pushing.

15. Chief Strother felt that, given the circumstances on campus and Piegaro's aggressive conduct, he had no choice but to take him into custody to avoid further escalation.

16. Immediately after grabbing Piegaro by the arm to effect the arrest, Piegaro began to pull away and push back at Chief Strother while Chief Strother was attempting to escort Piegaro down the stairs. During the course of conducting the arrest, Piegaro continuously struggled and attempted to pull away from Chief Strother, even after being told that he was under arrest. Piegaro's continued resistance created an unsafe situation for both individuals, causing them to become unsteady and placing them in danger of falling down the stairs. As a direct result of Piegaro's own resistance, both individuals lost their footing, and Chief Strother released him, at which point Piegaro fell down the stairs.

17. Despite having assaulted Chief Strother and having created the unsteady circumstances that caused him to fall down the stairs by resisting arrest, Piegaro later posted misstatements about Chief Strother online, falsely claiming that Chief Strother "grabbed me and threw me down the marble stairs of the building" and "charged me with fabricated charges." Piegaro also told the New York Times that he had been assaulted by Chief Strother, a claim that appeared in a New York Times article published on April 1, 2025.

18. As a result of the false allegations that Piegaro has made against Chief Strother and the negative publicity, Chief Strother has received threatening and derogatory voicemails and

otherwise suffered damage to his reputation.

**COUNT I: BATTERY**

19. Chief Strother repeats and realleges the allegations set forth in Paragraphs 1 through 18 of his Counterclaim as if fully set forth herein.

20. Piegaro intentionally made physical contact with Chief Strother by pushing his body into Chief Strother's outstretched arm in an attempt to force entry into Whig Hall.

21. Piegaro's conduct resulted in the offensive touching of Chief Strother's person.

22. The physical contact was intentional, unauthorized, unwanted, and occurred without Chief Strother's consent.

23. As a direct and proximate result of Piegaro's battery, Chief Strother suffered actual and nominal damages, as the law allows.

**WHEREFORE**, Chief Strother demands the entry of judgment in his favor and against Piegaro, with an award in favor of Chief Strother on his Counterclaim and against Piegaro for damages, attorneys' fees, interest, costs of suit, and such other relief as the court may deem just and proper.

**COUNT II: ASSAULT**

24. Chief Strother repeats and realleges the allegations set forth in Paragraphs 1 through 23 of his Counterclaim as if fully set forth herein.

25. Piegaro intentionally advanced toward Chief Strother and made physical contact with him while attempting to force entry into Whig Hall, despite being advised that he could not enter.

26. Given the unexpected and forceful nature of Piegaro's initial contact with Chief Strother, and Piegaro's continued advance toward him, Chief Strother was in imminent

apprehension of further offensive contact and injury, as a result of which contact and apprehension, he placed Piegaro under arrest.

27. Following the initial contact, and after being advised that he was under arrest, Piegaro continued to push, pull away, and struggle with Chief Strother, further creating an imminent risk of injury.

28. As a direct and proximate result of Piegaro's conduct, Chief Strother suffered actual and nominal damages, as the law allows, and was placed in imminent apprehension of unwanted offensive contact.

**WHEREFORE**, Chief Strother demands the entry of judgment in his favor and against Piegaro, with an award in favor of Chief Strother on his Counterclaim and against Piegaro for damages, attorneys' fees, interest, costs of suit, and such other relief as the court may deem just and proper.

**COUNT III: DEFAMATION**

29. Chief Strother repeats and realleges the allegations set forth in Paragraphs 1 through 28 of his Counterclaim as if fully set forth herein.

30. Piegaro published statements about Chief Strother, claiming that Chief Strother "grabbed me and threw me down the marble stairs of the building" and "charged me with fabricated charges."

31. These statements were false and, because they accused Chief Strother of committing a crime and fabricating evidence while acting in his official capacity, constitute defamation per se, entitling Chief Strother to presumed damages.

32. Piegaro communicated and published such statements to third parties, including online and other publications, including the New York Times, thereby disseminating the

defamatory statements to a wide audience.

33. Having engaged in the interaction with Chief Strother, in which Piegaro assaulted him and then resisted arrest, thereby creating the unsteady circumstances that caused him to fall down the stairs, Piegaro knew that the statements were false and were not substantially true in any respect. Specifically, Piegaro knew that Chief Strother did not throw him down the steps of Whig Hall and did not fabricate any evidence against him.

34. On or about September 30, 2025, in response to an Internal Affairs Complaint filed by Piegaro, the Mercer County Prosecutor's Office issued a report exonerating Chief Strother. Nonetheless, Piegaro continued to publish defamatory statements online, and took no action to delete or modify any of his prior statements, described above.

35. Piegaro's statements harmed Chief Strother's reputation and stature within the University and community.

36. Additionally, as a result of the negative publicity and Piegaro's allegations, Chief Strother has received threatening and derogatory voicemails.

**WHEREFORE**, Chief Strother demands the entry of judgment in his favor and against Piegaro, with an award in favor of Chief Strother on his Counterclaim and against Piegaro for damages, attorneys' fees, interest, costs of suit, and such other relief as the court may deem just and proper.

**CERTIFICATION OF SERVICE**

I am an attorney admitted to practice before this Court and a Partner with the law firm FBT Gibbons LLP, attorneys for Defendants The Trustees of Princeton University and Kenneth E. Strother, Jr. I certify that, on September 28, 2026, I caused the Answer and Counterclaims to be electronically filed with the Clerk of the Court and served upon all counsel of

record via the Court's EM/ECF system. I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I may be subject to punishment.

Dated: August 28, 2026

By: *s/ Lawrence S. Lustberg*

Lawrence S. Lustberg, Esq.
Anne M. Collart, Esq.
Jessica A. Masi, Esq.
**FBT GIBBONS LLP**
One Gateway Center
Newark, New Jersey 07102
Phone: (973) 596-4500
llustberg@fbtgibbons.com
acollart@fbtgibbons.com
jmasi@fbtgibbons.com

*Attorneys for Defendant Trustees of Princeton University and Defendant/Counterclaim Plaintiff Kenneth E. Strother, Jr.*