Christian T. Becker (N.J. Bar No. 044142005)
Andrew C. Bernstein (admitted *pro hac vice*)
KASOWITZ LLP
1633 Broadway
New York, New York 10019
(212) 506-1700
CBecker@Kasowitz.com
ABernstein@Kasowitz.com

*Attorneys for Plaintiff/Counterclaim-Defendant David Piegaro*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DAVID PIEGARO,<br><br>Plaintiff,<br><br>v.<br><br>THE TRUSTEES OF PRINCETON UNIVERSITY and KENNETH E. STROTHER, JR.,<br><br>Defendants. | Civil Action No. 3:25-cv-13919-ZNQ-JTQ |

# PLAINTIFF/COUNTERCLAIM-DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS AND TO STRIKE

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................1

FACTUAL BACKGROUND ....................4

PROCEDURAL HISTORY ....................7

LEGAL STANDARD ....................8

ARGUMENT ....................8

I. STROTHER'S DEFAMATION COUNTERCLAIM FAILS TO STATE A CLAIM FOR RELIEF (COUNT III) ....................9

A. The *New York Times* Article Strother Cites Demonstrates That His Claim Must Fail ....................10

B. Undated and Vague "Online" Posts Cannot Support a Claim ....................12

C. Strother Fails to Plead Actual Malice ....................14

II. STROTHER'S COUNTERCLAIMS AND DEFENDANTS' ANSWER ARE UNTIMELY (ALL COUNTS) ....................17

A. The Counterclaims Are Time Barred and Not Tolled by Defendants' Late Pleading ....................17

B. Defendants' Unexcused Delay Warrants Striking Their Pleading ....................19

III. THE COURT SHOULD DECLINE SUPPLEMENTAL JURISDICTION OVER THE DEFAMATION COUNTERCLAIM (COUNT III) ....................21

IV. STROTHER'S ASSAULT AND BATTERY ALLEGATIONS FORECLOSE RELIEF (COUNTS I AND II) ....................23

A. Strother Fails to Plead He Was in Apprehension of Imminent Contact (Count II) ....................23

B. Strother Fails to Plead Intent to Cause Harmful or Offensive Contact (Counts I and II) ....................24

V. STROTHER'S REQUEST FOR ATTORNEYS' FEES SHOULD BE STRICKEN (ALL COUNTS) ....................25

VI. MR. PIEGARO IS ENTITLED TO HIS ATTORNEYS' FEES ..................26

CONCLUSION ..........................................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*Anglin v. Anglin*,
2018 WL 1278304 (D.N.J. Mar. 12, 2018) ....................12

*Applebaum v. Fabian*,
2021 WL 5833454 (D.N.J. Dec. 9, 2021)....................26

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................8, 14, 25

*Berger v. Edgewater Steel Co.*,
911 F.2d 911 (3d Cir. 1990) ....................20

*Bridgeforth v. Compass Grp. USA, Inc.*,
2020 WL 3097683 (N.J. Super. Ct. App. Div. June 11, 2020) ....................24

*Bullock v. Cabasa*,
2014 WL 5286613 (D.N.J. Oct. 15, 2014) ....................24

*Buying for the Home, LLC v. Humble Abode, LLC*,
2006 WL 8458811 (D.N.J. Feb. 15, 2006)....................26

*Carnegie-Mellon Univ. v. Cohill*,
484 U.S. 343 (1988)....................22

*Churchill v. New Jersey*,
876 A.2d 311 (N.J. Super. Ct. App. Div. 2005) ....................17

*Costello v. Ocean Cnty. Observer*,
643 A.2d 1012 (N.J. 1994) ....................14

*County of Hudson v. Janiszewski*,
520 F. Supp. 2d 631 (D.N.J. 2007)....................8

*Davis v. City of Philadelphia*,
821 F.3d 484 (3d Cir. 2016) ....................8

*Drippe v. Tobelinski*,
604 F.3d 778 (3d Cir. 2010) ....................19, 20

*Durando v. Nutley Sun*,
37 A.3d 449 (N.J. 2012) ....................14

*Fennec Pharms. Inc. v. Cipla Ltd.*,
2024 WL 4432773 (D.N.J. Oct. 7, 2024) ....................20

*Gannett Satellite Info. Network, LLC v. Township of Neptune*,
296 A.3d 442 (N.J. 2023) ....................26

*Hearns v. Johnson*,
2016 WL 4690386 (D.N.J. Sept. 6, 2016) ....................25

*Illiano v. Wayne Bd. of Educ.*,
2024 WL 687756 (D.N.J. Feb. 20, 2024) ....................12

*Kennedy v. Am. Airlines Inc.*,
195 F. Supp. 3d 646 (D.N.J. 2016) ....................9, 12

*Kline v. Valentic*,
283 F. App'x 913 (3d Cir. 2008) ....................14

*Kotlikoff v. Cmty. News*,
444 A.2d 1086 (N.J. 1982) ....................11, 12

*Lee v. TMZ Prods. Inc.*,
710 F. App'x 551 (3d Cir. 2017) ....................13, 16

*Lento L. Grp., PC v. Hendrickson*,
361 A.3d 1278 (N.J. Super. Ct. App. Div. 2026) ....................15, 23

*Livingstone v. Haddon Point Manager, LLC*,
2021 U.S. Dist. LEXIS 230828 (D.N.J. Dec. 1, 2021) ....................19

*Neuwirth v. State*,
300 A.3d 274 (N.J. Super. Ct. App. Div. 2023) ....................11, 16

*Oatway v. Am. Int'l Grp.*,
325 F.3d 184 (3d Cir. 2003) ....................8, 10

*Papasan v. Allain*,
478 U.S. 265 (1986) ....................8

*Paucek v. Shaulis*,
349 F.R.D. 498 (D.N.J. 2025)....................2, 22, 26, 27

*Perez v. Factory Direct of Secaucus, LLC*,
2013 WL 5770734 (D.N.J. Oct. 23, 2013) ....................10, 12

*Pyatkova v. Sylena Motorcars*,
2016 WL 674862 (D.N.J. Feb. 3, 2016) ....................25

*Ragguette v. Premier Wines & Spirits*,
691 F.3d 315 (3d Cir. 2012) ....................19

*Transamerica Occidental Life Ins. Co. v. Aviation Off. of Am., Inc.*,
292 F.3d 384 (3d Cir. 2002) ....................18

*Xerox Corp. v. SCM Corp.*,
576 F.2d 1057 (3d Cir. 1978) ....................19

**Statutes**

28 U.S.C. § 1367 ....................21

N.J.S.A. 2A:14-2....................17

N.J.S.A. 2A:14-3....................17

N.J.S.A. 2A:53A-50(b) ....................22, 26

N.J.S.A. 2A:53A-51....................22

N.J.S.A. 2A:53A-52....................22

N.J.S.A. 2A:53A-54....................22

N.J.S.A. 2A:53A-55....................22

N.J.S.A. 2A:53A-57....................22

N.J.S.A. 2A:53A-58....................4, 5, 22, 27

**Rules**

Fed. R. Civ. P. 6(b) ....................21

Fed. R. Civ. P. 8 ....................9

Fed. R. Civ. P. 12(a)(4)(A) ........................................................................7, 18

Fed. R. Civ. P. 12(f) .........................................................................................8

Plaintiff/Counterclaim-Defendant David Piegaro respectfully submits this memorandum of law in support of his motion to dismiss Defendant/Counterclaim-Plaintiff Kenneth E. Strother, Jr.'s Counterclaims, to strike Defendants' untimely responsive pleading, and for an award of attorneys' fees and costs.[1]

## PRELIMINARY STATEMENT

In this civil rights case, Defendants' attacks on Plaintiff David Piegaro have evolved. What began as a violent physical assault on a student progressed to a criminal prosecution, then to an internal coverup, and now to retaliatory counterclaims that seek to silence Mr. Piegaro on a matter of public concern.

On April 29, 2024, Defendant Kenneth E. Strother, Jr., Princeton University's Assistant Vice President for Public Safety and Chief of Police, attacked and arrested Plaintiff David Piegaro, a U.S. Army veteran and Princeton student, for filming Strother's negotiations with faculty protest representatives. After dropping Mr. Piegaro down Whig Hall's marble stairs, Strother—who weighs over 100 pounds more than Mr. Piegaro—falsely charged Mr. Piegaro with aggravated assault, obstruction, resisting arrest, and defiant trespass. By Mr. Piegaro's criminal trial, the prosecutor had dropped or reduced those charges to a single count of simple assault, of which the Municipal Court found Mr. Piegaro not guilty after a full bench trial.

[1] Unless otherwise noted, all "¶ _" references are to the allegations in Strother's Counterclaims, dated August 28, 2026. Dkt. 30 at 30 *et seq*.

As the *New York Times* reported in its coverage of this matter of public concern, the Municipal Court judge found that Mr. Piegaro "[i]ncidentally collid[ed] with [Strother's] outstretched arm."[2] Becker Decl. Ex. 1.

On July 30, 2025, Mr. Piegaro brought this action to vindicate his civil rights. On July 31, 2026, the Court denied Defendants' motion to dismiss in nearly all respects, upholding Mr. Piegaro's claims that Strother used excessive force, maliciously prosecuted him, and fabricated evidence, among others. Dkt. 26 at 16–20; Dkt. 27. Four weeks later—late, without leave, and without explanation—Defendants filed their Answer. At the same time, Strother first asserted counterclaims for battery, assault, and defamation, even though he knew the facts underlying those claims for more than one year. Dkt. 30.

The counterclaims do not seek to remedy any actual injury. Instead, they serve no purpose but to retaliate against Mr. Piegaro for his protected speech and to raise the costs of this action. Strother's defamation counterclaim seeks to punish an acquitted defendant for allegedly describing his criminal defense posture and civil claims, precisely the type of claim New Jersey's new anti-SLAPP law, the Uniform Public Expression Protection Act ("UPEPA"), was enacted to deter. *See, e.g.*, *Paucek v. Shaulis*, 349 F.R.D. 498, 505 (D.N.J. 2025) ("Anti-SLAPP laws shift the

---

[2] Strother's Counterclaims explicitly rely upon this *New York Times* article, dated April 1, 2025. ¶¶ 17, 32. The article is attached to the Declaration of Christian T. Becker, filed contemporaneously herewith ("Becker Decl.").

economic burden imposed by lawsuits filed to silence a critic's protected speech by requiring the plaintiff to pay a prevailing defendant's legal fees and costs.").

In support of his defamation count, Strother provides two alleged quotes from Mr. Piegaro—that Strother "grabbed me and threw me down the marble stairs of the building" and "charged me with fabricated charges"—and alleges "such statements" were published in the *New York Times* on April 1, 2025. ¶¶ 17, 30, 32. They were not. The only words on this subject that the article even remotely attributes to Mr. Piegaro are a reporter's paraphrase: "Mr. Piegaro says he was the one who was assaulted." This statement is not a quote, but instead is presented as one side of "the crux of the dispute" in a story about his acquittal and the evidence presented at his trial. Becker Decl. Ex. 1. The only other source of allegedly defamatory statements is "online" posts, without identification of where, when, or to whom any statements were published. And although Strother, as a public official, must plead actual malice, he makes no allegations suggesting that Mr. Piegaro doubted his own account of April 29. Instead, the *New York Times* article reveals that Mr. Piegaro was "convinced of his innocence" and "really believe[d] [he was] the victim." *Id.*

Strother's assault and battery counterclaims—for which he alleges no physical injury—fare no better. They rest on incidental contact that Strother admits he did not see coming; therefore, there could not have been apprehension. Strother also admits that Mr. Piegaro's intent was to enter a building, not to make harmful contact. ¶ 14.

The counterclaims should be dismissed for at least five reasons. *First*, the defamation counterclaim fails to state a claim: the only identified publication does not contain the challenged statements, the remaining "online" allegations are too vague to plead publication, and Strother pleads no facts plausibly showing actual malice. *Second*, every counterclaim is untimely. Each was filed after its limitations period expired. Strother cannot invoke tolling for his assault and battery claims because his pleading was filed late without leave. His defamation counterclaim turns on alleged publications years after the facts at the core of this case and was never eligible for tolling. *Third*, if any part of the defamation counterclaim survives, the Court should decline supplemental jurisdiction so that New Jersey courts can apply their new anti-SLAPP statute. *Fourth*, the assault and battery counterclaims fail because Strother's allegations negate any apprehension of imminent contact and any intent to cause harmful or offensive contact. And *fifth*, Strother's demands for attorneys' fees have no legal basis and should be stricken.

The Court should dismiss each of Strother's counterclaims with prejudice, strike Strother's demands for attorneys' fees, and award Mr. Piegaro his fees and costs under N.J.S.A. 2A:53A-58.

## FACTUAL BACKGROUND

On April 29, 2024, protestors occupied Clio Hall on Princeton University's campus. ¶ 6. During the protest, Strother—who was wearing a suit and not

identifiable as an officer—was speaking with two faculty protest liaisons in the area between Whig Hall and Clio Hall when Mr. Piegaro approached. ¶¶ 9–11. Strother told Mr. Piegaro that the conversation was private, to which Mr. Piegaro responded that he had a right to be present. ¶ 11. Strother agreed with Mr. Piegaro and began walking with the professors towards Whig Hall. *Id.* Mr. Piegaro trailed behind. ¶ 12.

The group walked up the steps to the front entrance of Whig Hall. *Id.* Strother swiped his key card and held the door open. ¶ 13. As Mr. Piegaro attempted to walk into the building behind the professors, Strother moved in front of Mr. Piegaro with an outstretched arm, causing Mr. Piegaro to bump into Strother's arm. ¶¶ 13–14. Strother does not allege that he perceived any impending contact or that he was injured. Instead, he "felt Piegaro suddenly push against his outstretched arm," which Strother attributes to Mr. Piegaro's effort to enter Whig Hall, not any effort to touch, harm, or frighten Strother. ¶ 14.

Only after that incidental contact did Strother allegedly advise Mr. Piegaro that he could not enter the building and grab Mr. Piegaro's arm. ¶¶ 14–16. Mr. Piegaro—who had no reason to know that Strother was a police officer—attempted to "pull away" from Strother's grasp. ¶ 16. By Strother's telling, he then "released [Mr. Piegaro], at which point Piegaro fell down the stairs." *Id.*

Strother's allegations say little about the criminal prosecution he instituted against Mr. Piegaro. But his defamation counterclaim relies on an April 1, 2025 *New*

*York Times* article that reported on Mr. Piegaro's criminal case. *See* ¶¶ 17, 32; Becker Decl. Ex. 1. The article reports that the charges against Mr. Piegaro were dropped or reduced and that the Municipal Court found Mr. Piegaro not guilty of the remaining lower-level assault charge that same day, after a trial that "featured competing accounts of the confrontation." Becker Decl. Ex. 1. It quotes the judge's finding that Mr. Piegaro "[i]ncidentally collid[ed] with [Strother's] outstretched arm," and recounts that Mr. Piegaro was "convinced of his innocence." *Id.*

Strother asserts that Mr. Piegaro "told the New York Times that he had been assaulted by Chief Strother." ¶ 17. But the article contains no such quote from Mr. Piegaro, nor any of his other alleged statements: that Strother "grabbed me and threw me down the marble stairs of the building" and "charged me with fabricated charges." *Compare* ¶¶ 17, 30, *with* Becker Decl. Ex. 1. Instead, it relies largely on testimony and evidence from the criminal proceeding, and quotes Mr. Piegaro only for statements such as "I really believe I'm the victim," "I really don't think I did anything," that he was "relieved" by the verdict, and that "I want an apology, honestly." Becker Decl. Ex. 1. The article otherwise recounts Strother's narrative from the police report, summarizes Mr. Piegaro's defense by reporting "Mr. Piegaro says he was the one who was assaulted," and reports on a trial witness's testimony that she saw Strother "holding Mr. Piegaro 'like an open pair of scissors,' losing his grip and dropping him." *Id.*

Strother's defamation counterclaim also vaguely asserts that Mr. Piegaro claimed "online" that Strother "grabbed me and threw me down the marble stairs of the building" and "charged me with fabricated charges." ¶¶ 17, 30. It does not say when, where, on what platform, or to whom any such statements or posts were made. Strother also claims that Mr. Piegaro did not delete these unspecified internet posts after the Mercer County Prosecutor's Office issued an internal-affairs report on September 30, 2025. ¶ 34. Strother does not allege why this report should have led to Mr. Piegaro taking down his posts, nor even that Mr. Piegaro saw the report.

## PROCEDURAL HISTORY

Mr. Piegaro initiated this action on July 30, 2025. Dkt. 1. On July 31, 2026, the Court denied Defendants' motion to dismiss as to nearly all of Mr. Piegaro's constitutional and tort claims. Dkt. 26; Dkt. 27. The Court dismissed only one count asserted against Princeton and gave Mr. Piegaro fourteen days to amend; it set no different deadline for Defendants' answer. Dkt. 27. Mr. Piegaro did not amend.

Defendants' responsive pleading was therefore due by August 14, 2026, fourteen days after the Court's decision. Fed. R. Civ. P. 12(a)(4)(A). Defendants did not file until August 28, 2026, and did not move for an extension. Dkt. 30. With Defendants' untimely Answer, Strother asserted, for the first time, counterclaims for battery (Count I), assault (Count II), and defamation (Count III). *Id.* The battery and assault counts rest on the April 29, 2024 encounter. The only dated publication in

the defamation count is the April 1, 2025 *New York Times* article. Each count demands nominal damages and attorneys' fees. *Id.*

## **LEGAL STANDARD**

To survive a motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Davis v. City of Philadelphia*, 821 F.3d 484, 488 (3d Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). It must notify the defendant of the claims and the grounds on which they rest by providing "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). The Court may consider documents "integral to or explicitly relied upon" in the pleading, such as the *New York Times* article Strother's pleading relies upon. *Oatway v. Am. Int'l Grp.*, 325 F.3d 184, 185 n.1 (3d Cir. 2003). The Court may dismiss on statute of limitations grounds where the time bar is facially apparent. *See County of Hudson v. Janiszewski*, 520 F. Supp. 2d 631, 649 (D.N.J. 2007). And the Court may strike "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

## **ARGUMENT**

Strother asserts his counterclaims more than two years after Mr. Piegaro's arrest, and more than one year after the article on which the defamation count relies.

He seeks damages and fees from Mr. Piegaro for an encounter that resulted in Mr. Piegaro's acquittal, and for Mr. Piegaro allegedly describing that experience publicly. Strother's pleading should be dismissed for at least five reasons: (1) the defamation counterclaim identifies no actionable statement and pleads no actual malice; (2) the counterclaims are time-barred and were asserted in an untimely pleading; (3) the circumstances of Strother's counterclaims do not justify exercising supplemental jurisdiction if any portion of the defamation count survives this motion, as it is precisely the type of claim UPEPA was designed to deter; (4) the assault and battery counterclaims are contradicted by Strother's allegations; and (5) there is no basis for Strother's demand for attorneys' fees.

## I. STROTHER'S DEFAMATION COUNTERCLAIM FAILS TO STATE A CLAIM FOR RELIEF (COUNT III)

Strother's defamation counterclaim should be dismissed because it falls well below Rule 8's pleading standards and is a clear example of a claim brought to punish speech rather than to remedy injury. A claim for defamation requires: "(1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher." *Kennedy v. Am. Airlines Inc.*, 195 F. Supp. 3d 646, 655 (D.N.J. 2016) (citation modified). Strother fails to plausibly plead each element. The only publication he identifies—the *New York Times* article—does not contain any of the alleged statements Strother challenges. And what it does attribute

to Mr. Piegaro is not actionable as a description of Mr. Piegaro's criminal defense argument. Strother's remaining allegations of unspecified "online" posts do not identify the when, where, or to whom of any publications. And Strother cannot meet his burden to plead actual malice: he offers nothing but his own competing account of the encounter with Mr. Piegaro, and the *New York Times* article on which he relies only demonstrates Mr. Piegaro's sincere belief in the truth of the alleged statements.

### A. The *New York Times* Article Strother Cites Demonstrates That His Claim Must Fail

Strother's pre-motion letter asserts that his pleading identifies the allegedly defamatory statements and when and where they were published: the April 1, 2025 *New York Times* article "and other online publications." Dkt. 34 at 2. But the article—the only specific source Strother identifies (and which falls outside the limitations period, *see infra* Arg. § II)—does not contain these alleged statements.[3] *Compare* Becker Decl. Ex. 1, *with* ¶¶ 30, 32.

Strother claims that Mr. Piegaro "told the New York Times that he had been assaulted." ¶ 17. Although the article quotes Mr. Piegaro several times, it does not quote him for that alleged statement. Mr. Piegaro can only be held liable for statements he actually made. *See Perez v. Factory Direct of Secaucus, LLC*, 2013

[3] The Court can consider the article on this motion, as the Counterclaims expressly identified and relied upon it. *See Oatway*, 325 F.3d at 185 n.1.

WL 5770734, at *6 (D.N.J. Oct. 23, 2013) (considering quotes "directly attributable" to defendant in an article).

Moreover, context makes clear that the statement is a paraphrase of Mr. Piegaro's litigation position: "Mr. Piegaro says he was the one who was assaulted." Becker Decl. Ex. 1. This context matters, as "allegedly defamatory statements must be viewed in the context of the whole publication." *Neuwirth v. State*, 300 A.3d 274, 283 (N.J. Super. Ct. App. Div. 2023). Nearly everything in the *New York Times* article is attributed to others, including the police report, trial witnesses, counsel, and the court. The paraphrase at issue appears in an article reporting that Mr. Piegaro had just been acquitted in his criminal trial. It is introduced as one side of "the crux of the dispute," and appears between the article's description of Strother's police report narrative and a summary of an eyewitness's trial testimony that Strother held Mr. Piegaro "like an open pair of scissors." Becker Decl. Ex. 1. The article thus plainly paraphrases Mr. Piegaro's criminal defense argument. Indeed, the article tells readers that "*[t]he trial* featured competing accounts of the confrontation," and that Mr. Piegaro was "convinced of his innocence." *Id.*

But even if the article directly quoted Mr. Piegaro as telling the reporter that he had been assaulted—it did not—that statement would not be actionable. Whether a statement is reasonably susceptible of a defamatory meaning is a question of law for the Court. *Kotlikoff v. Cmty. News*, 444 A.2d 1086, 1088 (N.J. 1982). Here,

because no reasonable reader would understand the statement "Mr. Piegaro says he was the one who was assaulted" in context as anything other than a criminal defendant's opinion of his own case and what the evidence showed, the claim must be dismissed. *See Perez*, 2013 WL 5770734, at *5 (dismissing defamation claim where "the context . . . makes it clear to a reasonable reader that the statements . . . describe disputed facts in a lawsuit"). Where "an opinion is accompanied by its underlying nondefamatory factual basis," a defamation claim fails "because readers can interpret the factual statements and decide for themselves whether the writer's opinion was justified." *Illiano v. Wayne Bd. of Educ.*, 2024 WL 687756, at *8 (D.N.J. Feb. 20, 2024); *see also Kotlikoff*, 444 A.2d at 1091 (accusations of a "huge coverup" and "conspiracy" were protected opinion). The key underlying facts here—the charges, trial, competing accounts, and Mr. Piegaro's acquittal—are reported in the article.

**B. Undated and Vague "Online" Posts Cannot Support a Claim**

Other than the nonactionable paraphrase from the *New York Times* article, Strother's only other allegation is his conclusory statement that Mr. Piegaro published unidentified defamatory statements that he "knew" were "false," "to third parties, including online and other publications." ¶¶ 32, 33. But "vague references to third parties [are] insufficient to state a plausible defamation claim." *Kennedy*, 195 F. Supp. 3d at 655–56 (citation modified); *see also Anglin v. Anglin*, 2018 WL

1278304, at *4 (D.N.J. Mar. 12, 2018) (pleading must identify "the circumstances of publication" (citation omitted)). At best, Strother asserts that Mr. Piegaro stated Strother "grabbed me and threw me down the marble stairs of the building" and "charged me with fabricated charges," ¶¶ 17, 30, but provides no indication of when, where, on what platform, or to whom either statement was communicated.[4]

Even had he alleged such facts, the claim would fail as a nonactionable statement of Mr. Piegaro's litigation position and the testimony therein. *See supra* Arg. § I.A; *cf. Lee v. TMZ Prods. Inc.*, 710 F. App'x 551, 557 (3d Cir. 2017) (holding the fair-report privilege protects "fair and accurate" publication of "matters that appear in a report of an official action or proceeding, or of a meeting open to the public that deals with a matter of public concern" (citation omitted)). The Court has already taken judicial notice of the Municipal Court transcripts for their "existence." Dkt. 26 at 9. The statements Strother attributes to Mr. Piegaro fairly and accurately depict testimony and arguments in the Municipal Court trial.[5]

---

[4] Strother's throwaway allegation that Mr. Piegaro "continued to publish defamatory statements online" identifies no statement at all and is entirely conclusory. ¶ 34.

[5] *See, e.g.*, Dkt. 17-2, Ex. B at 59:1–4 (body camera video reveals Mr. Piegaro stated, at the scene, "[t]hey threw me down the stairs"); *id.* at 79:11–13 ("I know I got picked up, thrown down the stairs."); *id.* at 82:7 ("He threw me down the stairs."); *id.* at 85:18 ("[H]e put his arm out, and grabbed me."); *id.* at 170:11–12 ("[H]e grabbed me and threw me down the stairs."); *see also id.* at 165:5–22 (prosecutor dismissing trespass charge because "I don't think my proofs would be adequate to demonstrate that [Mr. Piegaro] committed a trespass"); *id.*, Ex. A at 4:21–14:24 (judge ordered State to produce Princeton's building access records that bear on the trespass charge); *id.*, Ex. B at 3:11–13:15 (Princeton did not produce building access records to State despite judge's order; Strother is the head of the Princeton department that approves requests for access data).

### C. Strother Fails to Plead Actual Malice

Strother also fails to plead the third defamation element: fault. It is undisputed that Strother's counterclaim is subject to a heightened "actual malice" standard, both because he is a police officer and because the alleged statements—which concern a police chief and university administrator's assault on a student and the resulting prosecution—involve a matter of public concern. *See, e.g.*, *Costello v. Ocean Cnty. Observer*, 643 A.2d 1012, 1022 (N.J. 1994) ("[A] police lieutenant who is challenging an article purporting to describe his official conduct, is a public official and must meet the actual-malice standard."); *Kline v. Valentic*, 283 F. App'x 913, 916 (3d Cir. 2008) ("[P]olice misconduct constitutes a matter of public concern.").

Even if Strother could meet the other elements of his claim, actual malice requires that he plausibly show that Mr. Piegaro knew his statements were false or recklessly disregarded their probable falsity. *Durando v. Nutley Sun*, 37 A.3d 449, 459 (N.J. 2012). Conclusory allegations that are mere "formulaic recitation[s] of the elements," such as that defendant "knew" something, are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680–81. Yet conclusory allegations are all Strother offers. He claims that Mr. Piegaro "knew that the statements were false and were not substantially true in any respect" solely because Mr. Piegaro "engaged in the interaction with Chief Strother." ¶ 33.

Strother's rote recitation of the elements does not plausibly plead that Mr. Piegaro knowingly or recklessly fabricated any statements about Strother's assault or the criminal charges. That Strother disagrees with Mr. Piegaro's account does not render Mr. Piegaro's alleged statements a knowing or reckless lie. He never pleads that Mr. Piegaro made any additional statements or took any actions that would show Mr. Piegaro lied or doubted the veracity of his alleged statements. *See Lento L. Grp., PC v. Hendrickson*, 361 A.3d 1278, 1288 (N.J. Super. Ct. App. Div. 2026) (defendant's signed non-refundable retainer did not establish actual malice as to her review criticizing a firm's refusal to refund it, because "the only person who can attest to the veracity of [her] . . . statement is [defendant] herself").

Instead, Strother's allegations support Mr. Piegaro's good faith belief in the truth of his account and the alleged statements. Mr. Piegaro has maintained a consistent narrative of the relevant events for years, from the date of his arrest, through his successful criminal defense, and now in this civil action, in which this Court found plausible Mr. Piegaro's account of Strother's excessive force and use of fabricated evidence, *see* Dkt. 26 at 16–20, which is supported by video and eyewitness testimony that contradict Strother's version of events. As the *New York Times* article recounts, a trial witness testified that she saw Strother holding Mr. Piegaro "like an open pair of scissors" before "dropping him," leading to "broken ribs and a concussion." Becker Decl. Ex. 1. Strother, in turn, was "uninjured." *Id.*

At bottom, Strother pleads no facts that could establish Mr. Piegaro knew his account was false. Instead, Strother relies upon an article that serves only to demonstrate Mr. Piegaro's steadfast belief in the veracity of his account of Strother's actions. The article characterizes Mr. Piegaro as being "convinced of his innocence," and quotes him as saying "I really believe I'm the victim," "I really don't think I did anything," and "I want an apology, honestly."[6] Becker Decl. Ex. 1. These facts cannot support actual malice.

Strother's only other allegation is that Mr. Piegaro did not delete his unspecified online posts after the Mercer County Prosecutor's Office allegedly issued an internal-affairs report on September 30, 2025. ¶ 34. That report postdates the *New York Times* article—the only dated allegedly defamatory publication—and provides no support for Mr. Piegaro's "subjective state of mind when he made the statements" at issue. *Neuwirth*, 300 A.3d at 285; *see also Lee*, 710 F. App'x at 558 ("The truth of an alleged libel must be measured as of the time of the defamatory publication." (citation modified)). Moreover, Strother does not allege that Mr. Piegaro saw the report, that any allegedly defamatory statements followed it, or why an internal-affairs determination would have any bearing on whether Mr. Piegaro believed in the truth of any statements Strother attributes to him.

[6] Mr. Piegaro is still waiting for that apology.

## II. STROTHER'S COUNTERCLAIMS AND DEFENDANTS' ANSWER ARE UNTIMELY (ALL COUNTS)

Strother's counterclaims also independently fail because they were time barred when filed. Strother does not dispute the limitations period expired before his pleading. Instead, he argues that Mr. Piegaro's Complaint tolled them. Dkt. 34 at 1. But tolling cannot rescue counterclaims asserted in a pleading that was filed late and without leave. And the defamation claim is a permissive counterclaim that was never eligible for tolling. Defendants' unexcused delay independently warrants striking the Answer and Counterclaims or, at a minimum, the defamation claim.

### A. The Counterclaims Are Time Barred and Not Tolled by Defendants' Late Pleading

As is apparent from the face of the pleading, Strother filed his counterclaims roughly four months late for assault and battery, and five months late for defamation. New Jersey imposes a two-year limitations period on assault and battery claims and a one-year period on defamation claims. N.J.S.A. 2A:14-2; N.J.S.A. 2A:14-3. Strother's assault and battery counterclaims rest entirely on the April 29, 2024 encounter, ¶¶ 20–27, and thus expired on April 29, 2026. The only dated publication alleged in Strother's defamation counterclaim is the *New York Times* article, dated April 1, 2025, ¶ 17. The claim thus expired on April 1, 2026.[7]

---

[7] Strother's generalized assertions that Mr. Piegaro continued publishing unspecified statements or failed to modify his prior statements, ¶ 34, do not make the counterclaim any less untimely, *see, e.g.*, *Churchill v. New Jersey*, 876 A.2d 311, 316 (N.J. Super. Ct. App. Div. 2005) (single-publication rule applies to internet publications).

Strother contends that his counterclaims are compulsory and therefore the limitations periods were tolled by the filing of Mr. Piegaro's Complaint. Dkt. 34 at 1. But even assuming the counterclaims were compulsory, Strother cannot take advantage of tolling. Defendants' Answer and Strother's Counterclaims were untimely under Rule 12(a)(4)(A), which required them to serve their responsive pleading "within 14 days after" the Court's July 31, 2026 decision on Defendants' motion to dismiss "[u]nless the court sets a different time." The Court set no different time. Dkt. 27. The Answer and Counterclaims were therefore due on August 14, 2026, but were not filed until August 28, 2026. Defendants did not seek an extension.

Moreover, Strother's defamation counterclaim was never eligible for tolling because it is permissive, not compulsory. A compulsory counterclaim arises out of the same transaction or occurrence as plaintiff's claims, and thus involves the same factual or legal issues as the original controversy. *See Transamerica Occidental Life Ins. Co. v. Aviation Off. of Am., Inc.*, 292 F.3d 384, 390 (3d Cir. 2002). Mr. Piegaro's claims arise from Defendants' conduct during the April 29, 2024 encounter and subsequent investigation. Strother's defamation counterclaim, by contrast, arises from Mr. Piegaro's alleged communications to third parties, including in an article published the day he was acquitted in the criminal case. Strother's defamation claim would require proof of the content, context, recipients, timing, fault, and reputational consequences of publications from nearly a year after most of the events relevant to

Mr. Piegaro's Complaint. That the allegedly defamatory statements concerned Mr. Piegaro's interpretation of the April 29 encounter does not establish that Strother's counterclaim is compulsory, as the Third Circuit has long rejected compulsory-counterclaim treatment where the counterclaims involved materially different issues and proofs. *See Xerox Corp. v. SCM Corp.*, 576 F.2d 1057, 1059–60 (3d Cir. 1978).

**B. Defendants' Unexcused Delay Warrants Striking Their Pleading**

The Court should strike Defendants' Answer and Strother's Counterclaims. A party seeking to excuse an untimely filing "must make a formal motion for extension of time and the district court must make a finding of excusable neglect" before the court can accept the filing. *Drippe v. Tobelinski*, 604 F.3d 778, 785 (3d Cir. 2010). Defendants have not moved for an extension and offer no reason for their delay.

Defendants now attempt to belatedly excuse their late pleading by asserting that Mr. Piegaro has not been prejudiced. Dkt. 34 at 1 n.1 (citing *Livingstone v. Haddon Point Manager, LLC*, 2021 U.S. Dist. LEXIS 230828, at *17 (D.N.J. Dec. 1, 2021)). Even if Defendants were correct, and had properly moved for an extension, lack of prejudice alone does not excuse Defendants' late pleading. *See Ragguette v. Premier Wines & Spirits*, 691 F.3d 315, 331–32 (3d Cir. 2012) (finding no excusable neglect where the district court "accorded too much weight" to the absence of prejudice, a factor that "may nearly always favor" the late filer). Moreover, *Livingstone* concerned only a late answer. By contrast, Defendants'

untimely pleading added three new claims, including a defamation count that turns on distinct factual and legal issues from those in the Complaint.

That distinction is important because the Third Circuit has upheld the denial of new claims that would "inject new issues into the case requiring extensive discovery." *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 924 (3d Cir. 1990); *see also Fennec Pharms. Inc. v. Cipla Ltd.*, 2024 WL 4432773, at *2 (D.N.J. Oct. 7, 2024) (in assessing prejudice from a late filing, courts consider whether it would would "require the opposing party to expend significant resources to conduct discovery" or "significantly delay resolution"). The counterclaims will prejudice Mr. Piegaro for precisely that reason. For example, though Strother pleads no details regarding Mr. Piegaro's online statements, his defamation counterclaim would invite a fishing expedition into Mr. Piegaro's online activity, discovery into Strother's "stature within the University and community," and inquiries into unidentified "threatening and derogatory voicemails" from third parties. ¶¶ 17–18, 34–36. None of these topics bears on what happened on the steps of Whig Hall or on Defendants' efforts to prosecute Mr. Piegaro.

The Court's excusable-neglect inquiry also considers "whether the movant acted in good faith." *Drippe*, 604 F.3d at 785 (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 395 (1993)). Strother did not. He knew the facts underlying his Counterclaims for more than a year, but only asserted them in

retaliation after his efforts to dismiss Mr. Piegaro's claims failed. And he waited two additional weeks after Mr. Piegaro declined to amend his pleading against Princeton.[8] Strother's retaliatory motivation is also facially apparent: he pleads no actual injury, seeks attorneys' fees without basis (*see infra* Arg. § V), and bases his defamation count on nonactionable statements that fail the actual malice standard.

Mr. Piegaro recognizes that striking a pleading is a drastic remedy. But Defendants made no motion under Rule 6(b) and offered no reason for their delay. Indeed, Defendants chose not to seek an extension after Mr. Piegaro raised their tardiness, claiming the issue does "not justify motion practice." Dkt. 34 at 1 n.1. The circumstances of the filing further weigh against excusing its lateness. Even if the Court is not inclined to strike the Answer or Counterclaims as a whole, it should still reject Strother's untimely and retaliatory defamation counterclaim.

## III. THE COURT SHOULD DECLINE SUPPLEMENTAL JURISDICTION OVER THE DEFAMATION COUNTERCLAIM (COUNT III)

Should any part of Strother's defamation counterclaim survive, the Court should decline to exercise jurisdiction over it. The only jurisdictional basis that Strother asserts for his Counterclaims is 28 U.S.C. § 1367. ¶ 3. In exercising its discretion pursuant to 28 U.S.C. § 1367(c), the Court weighs "judicial economy,

[8] The only claim the Court dismissed without prejudice from Mr. Piegaro's Complaint was against *Princeton*, not Strother. Dkt. 27. As the Court did not permit amendment as to any claims against Strother, its order provides no justification for Strother's delayed counterclaims. *See id.*

convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Each factor supports declining jurisdiction.

*First*, judicial economy and convenience favor separate treatment. Strother's defamation counterclaim turns on statements allegedly made long after the April 29 incident the other events relevant to the Complaint, and introduces inquiries into Strother's reputation and third-party voicemails.

*Second*, comity weighs heavily against retaining the claim. New Jersey enacted its anti-SLAPP law, UPEPA, three years ago to protect statements made on "an issue under consideration or review" in a judicial proceeding and on a matter of public concern. N.J.S.A. 2A:53A-50(b). The statute gives parties targeted by such claims an expedited order to show cause procedure with expanded evidence and different burdens, a presumptive discovery stay, an interlocutory appeal as of right, and mandatory fee-shifting. *See* N.J.S.A. 2A:53A-51, -52, -54, -55, -57, -58. Several of those protections have been held unavailable in federal court. *See Paucek*, 349 F.R.D. at 505, 512–13. Questions of how this novel law applies to claims like Strother's are best resolved by New Jersey courts, where Mr. Piegaro can make full use of UPEPA's protections.

*Third*, fairness favors declining jurisdiction, as Strother's Counterclaims are retaliatory. Though Strother knew of all facts relevant to his claims by April 2025, he asserted them only after Mr. Piegaro defeated Defendants' motion to dismiss.

And despite the plain lack of any alleged injury to Strother, Strother filed assault and battery counterclaims and a defamation counterclaim that focuses entirely on nonactionable statements concerning Mr. Piegaro's criminal defense and this action. A counterclaim aimed at a litigant's public account of his own prosecution risks precisely the chilling effect that New Jersey's anti-SLAPP statute was enacted to prevent. *See, e.g.*, *Lento*, 361 A.3d at 1280–81 (UPEPA targets "meritless lawsuits intended to chill [] constitutionally protected free speech").

## IV. STROTHER'S ASSAULT AND BATTERY ALLEGATIONS FORECLOSE RELIEF (COUNTS I AND II)

Strother's assault and battery counterclaims seek damages for a single moment of incidental contact that, by Strother's account, he did not see coming, caused him no alleged physical injury, and was motivated by Mr. Piegaro's intent to enter a building rather than to cause harm, offense, or fear. ¶¶ 14, 20, 25. Strother's assault counterclaim therefore does not plausibly allege that he was placed in apprehension of imminent contact. Both counterclaims fail because Strother's allegations negate the requisite intent.

### A. Strother Fails to Plead He Was in Apprehension of Imminent Contact (Count II)

Strother fails to plead assault because he does not plausibly allege that Mr. Piegaro placed him in imminent apprehension of harmful or offensive contact. Such a claim must fail where the plaintiff "had no apprehension or awareness" that the

defendant "was approaching him." *Bridgeforth v. Compass Grp. USA, Inc.*, 2020 WL 3097683, at *2 (N.J. Super. Ct. App. Div. June 11, 2020). Strother's allegations show that he did not perceive any incoming contact. By Strother's telling, he was holding the door open when he "*felt* Piegaro suddenly push against his outstretched arm." ¶ 14 (emphasis added). Such an "unexpected" touching that Strother only "felt," but did not see coming, ¶¶ 14, 26, could not have put Strother in "apprehension" that battery was imminent, *Bridgeforth*, 2020 WL 3097683, at *6.

Strother's pre-motion letter touts his allegations that Mr. Piegaro's "continued advance" and later "struggle" created apprehension of "further" contact. ¶¶ 26–27; Dkt. 34 at 2. But Strother alleges no new contact after the initial contact. Instead, he alleges that he "grabb[ed] Piegaro" to effectuate the arrest, and that Mr. Piegaro "struggled and *attempted to pull away*." ¶ 16 (emphasis added). These allegations describe a person trying to retreat from a stranger's grip—a stranger who outweighed Mr. Piegaro by more than 100 pounds—not any conduct that placed Strother in fear of imminent attack.

### B. Strother Fails to Plead Intent to Cause Harmful or Offensive Contact (Counts I and II)

Strother's assault and battery counterclaims are intentional torts for which he must plead that Mr. Piegaro intended to cause harmful physical contact or knew "to a substantial certainty, imminent apprehension [of such contact] w[ould] result." *Bullock v. Cabasa*, 2014 WL 5286613, at *10 (D.N.J. Oct. 15, 2014) (citation

modified); *see also Hearns v. Johnson*, 2016 WL 4690386, at *7 (D.N.J. Sept. 6, 2016) ("Battery thus has an intent requirement – the defendant must have intended either to cause a harmful or offensive touching or to place the plaintiff in apprehension of such a touching.").

Strother fails to do so. Instead, Strother alleges that Mr. Piegaro's intent was to enter Whig Hall, not to touch, frighten, or hurt Strother.[9] ¶¶ 14, 20, 25. Strother's conclusory assertion that Mr. Piegaro acted intentionally, ¶¶ 20, 22, 25, cannot substitute for plausible factual allegations, *see Iqbal*, 556 U.S. at 678. Strother's allegations describe a student attempting to enter a building and then retreat from an unknown man's grasp.[10]

## V. STROTHER'S REQUEST FOR ATTORNEYS' FEES SHOULD BE STRICKEN (ALL COUNTS)

Strother baselessly demands attorneys' fees for each counterclaim. Dkt. 30 at 33–35. Under New Jersey law, each party bears its own fees absent a contrary statute,

[9] According to Defendants' own exhibits, the Municipal Court found that Mr. Piegaro did not have the requisite intent for assault. *See* Dkt. 17-2, Ex. C at 4:20–25, 8:24–12:20; *see also* Becker Decl. Ex. 1 (reporting that the Municipal Court judge found Mr. Piegaro "incidentally collid[ed]" with Strother's arm). Defendants cannot attempt to rely on the Municipal Court proceeding when it benefits them but ignore it when inconvenient.

[10] Strother's allegations are also internally inconsistent. *See Pyatkova v. Sylena Motorcars*, 2016 WL 674862, at *2 (D.N.J. Feb. 3, 2016) (a court "need not accept factual claims that are internally inconsistent," and "is not required to turn a blind eye to contradictory facts"), *R. & R. adopted*, 2016 WL 676371 (D.N.J. Feb. 18, 2016). Though Strother's cause of action states that Mr. Piegaro "made physical contact with him . . . despite being advised that he could not enter," ¶ 25, his factual allegations state the physical contact occurred *before* Strother advised Mr. Piegaro that he could not enter the building, ¶ 14.

rule, or contract. *Gannett Satellite Info. Network, LLC v. Township of Neptune*, 296 A.3d 442, 451–53 (N.J. 2023). Strother identifies no basis for his demands in either his pleading or his pre-motion letter, as none exists. *See* Dkt. 30; Dkt. 34. The Court should thus strike Strother's demands for fees with prejudice. *See Buying for the Home, LLC v. Humble Abode, LLC*, 2006 WL 8458811, at *1 (D.N.J. Feb. 15, 2006) (granting with prejudice motion to strike counterclaim's fee demand that was "devoid of any allegations indicating a legal or factual basis for such a demand").

## VI. MR. PIEGARO IS ENTITLED TO HIS ATTORNEYS' FEES

UPEPA was enacted to protect "people from meritless lawsuits intended to intimidate them for exercising their free speech rights." *Paucek*, 349 F.R.D. at 509 (citation omitted). It applies to claims based on a "communication on an issue under consideration or review" in a judicial proceeding or on a matter of public concern. N.J.S.A. 2A:53A-50(b). Strother's defamation counterclaim targets just that. The only publication he identifies is a *New York Times* article about Mr. Piegaro's criminal trial published the day he was acquitted, and the only statements alleged concern Mr. Piegaro's account of the events at issue in that trial.[11] *See* Becker Decl. Ex. 1; ¶¶ 17, 30, 32.

[11] To the extent Strother's vague reference to "Piegaro's allegations," ¶ 36, concerns statements made in the course of this action or the criminal case, they are protected by the absolute litigation privilege, *see, e.g., Applebaum v. Fabian*, 2021 WL 5833454, at *10 (D.N.J. Dec. 9, 2021).

Mr. Piegaro is entitled to his costs and reasonable attorneys' fees if he prevails in dismissing Strother's defamation claim. *See* N.J.S.A. 2A:53A-58 (awarding fees and expenses to prevailing movant); *Paucek*, 349 F.R.D. at 509–19 (applying UPEPA's fee-shifting provision in federal court). In that event, Mr. Piegaro will respectfully submit a fee application.

## CONCLUSION

For the foregoing reasons, Mr. Piegaro's motion should be granted and he should be awarded his costs and reasonable attorneys' fees.

Dated: October 9, 2026
New York, New York

Respectfully,

By: */s/ Christian T. Becker*

Christian T. Becker
(N.J. Bar No. 044142005)
Andrew C. Bernstein
(admitted *pro hac vice*)
KASOWITZ LLP
1633 Broadway
New York, New York 10019
(212) 506-1700
CBecker@Kasowitz.com
ABernstein@Kasowitz.com

*Attorneys for Plaintiff/Counterclaim-Defendant David Piegaro*