**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DAVID PIEGARO,<br><br>Plaintiff,<br>v.<br><br>THE TRUSTEES OF PRINCETON UNIVERSITY and KENNETH E. STROTHER, JR.,<br><br>Defendants. | Civil Action No. 3:25-cv-13919-ZNQ-JTQ<br><br>*Document electronically filed* |

**DEFENDANTS/COUNTERCLAIM PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF/COUNTERCLAIM DEFENDANT'S MOTION**

**FBT GIBBONS LLP**
One Gateway Center
Newark, New Jersey 07102
(973) 596-4500

*Attorneys for Defendants*
*The Trustees of Princeton University and*
*Kenneth E. Strother, Jr.*

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT ..... 1

BACKGROUND ..... 2

LEGAL STANDARD ..... 4

ARGUMENT ..... 4

I. STROTHER'S COUNTERCLAIMS ARE COMPULSORY AND WERE ACCORDINGLY TIMELY. ..... 4

A. The Counterclaims are Compulsory Under Rule 13(a). ..... 4

B. Plaintiff's Initiation of Suit Suspended the Running of the Statute of Limitations for the Compulsory Counterclaims. ..... 7

C. The Counterclaims are Otherwise Permissible Under the Doctrine of Equitable Recoupment. ..... 9

II. STROTHER PLAUSIBLY STATES A CLAIM FOR DEFAMATION. ..... 9

A. The Counterclaim Adequately Identifies the Defamatory Publications, including Plaintiff's GoFundMe Page and His Communications to the NY Times. ..... 10

B. The Counterclaim Plausibly Alleges Actual Malice. ..... 14

C. Plaintiff Cannot Shield His Accusations by Characterizing Them as His Litigation Position, and No Privilege Applies. ..... 16

III. THE COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION. ..... 20

IV. STROTHER PLAUSIBLY STATES CLAIMS FOR ASSAULT AND BATTERY. ..... 23

A. The Counterclaims Plead an Intentional, Nonconsensual Touching. ..... 23

B. The Counterclaims Plead Imminent Apprehension of Further Contact. ..... 24

V. PLAINTIFF IS NOT ENTITLED TO ATTORNEYS' FEES UNDER NEW JERSEY'S ANTI-SLAPP STATUTE. ..... 26

VI. THE PLEADINGS SHOULD NOT BE STRICKEN. ..... 27

VII. PLAINTIFF IS ENTITLED, AT MOST, TO STRIKE THE REQUEST FOR ATTORNEYS' FEES. ..... 30

CONCLUSION ..... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aleynikov v. Goldman Sachs Grp., Inc.*,
No. 12-5994, 2016 U.S. Dist. LEXIS 149666 (D.N.J. Oct. 28, 2016) ....................................7

*Ali v. Woodbridge Twp. Sch. Dist.*,
957 F.3d 174 (3d Cir. 2020)........................................................................................10

*Annulli v. Panikkar*,
200 F.3d 189 (3d Cir. 1999)........................................................................................20

*Appletree v. Hartford*,
555 F. Supp. 224 (D. Conn. 1983)................................................................................7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................................................4, 24

*Barefoot Architect, Inc. v. Bunge*,
632 F.3d 822 (3d Cir. 2011)........................................................................................5, 7

*Beach v. Ocwen Fed. Bank*,
523 U.S. 410 (1998)........................................................................................................9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................................................4, 26

*Berger v. Edgewater Steel Co.*,
911 F.2d 911 (3d Cir. 1990)........................................................................................29

*Beverly Enters. v. Trump*,
182 F.3d 183 (3d Cir. 1999)........................................................................................17

*Bove v. AkPharma Inc.*,
460 N.J. Super. 123 (App. Div. 2019) ....................................................................22, 23

*Bridgeforth v. Compass Grp. USA, Inc.*,
No. A-1761-18T2, 2020 N.J. Super. Unpub. LEXIS 1114 (App. Div. June 11, 2020) ....................................................................................................................25

*Buvel v. Bristol Myers Squibb Co.*,
No. 22-6449 (ZNQ) (JBD), 2024 U.S. Dist. LEXIS 146000 (D.N.J. Aug. 15, 2024) ....................................................................................................................23

*Combs v. Homer-Ctr. Sch. Dist.*,
540 F.3d 231 (3d Cir. 2008)........................................................................................22

*Conard v. Pa. State Police*,
902 F.3d 178 (3d Cir. 2018)....................16

*Crawl Space Door Sys., Inc. v. White*,
No. 23-2319, 2024 U.S. App. LEXIS 8597 (3d Cir. Apr. 10, 2024)....................5, 6

*Dill v. Yellin*,
725 F. Supp. 3d 471 (D.N.J. 2024)....................17

*Doe v. Univ. of the Scis.*,
961 F.3d 203 (3d Cir. 2020)....................12

*Drippe v. Tobelinski*,
604 F.3d 778 (3d Cir. 2010)....................29

*Ewing v. Cumberland Cnty.*,
152 F. Supp. 3d 269 (D.N.J. 2015)....................25

*Fallon v. Mercy Catholic Med. Ctr.*,
877 F.3d 487 (3d Cir. 2017)....................12

*First Nat'l Prop. Mgmt., LLC v. Chapman*,
No. 23-00603 (GC) (JBD), 2024 U.S. Dist. LEXIS 10653 (D.N.J. Jan. 22, 2024)....................10, 20, 29

*Friedman v. Isr. Labour Party*,
957 F. Supp. 701 (E.D. Pa. 1997)....................12

*Fulton Fin. Advisors, Nat'l Ass'n v. NatCity Invs., Inc.*,
No. 09-4855, 2013 U.S. Dist. LEXIS 148025 (E.D. Pa. Oct. 15, 2013)....................30

*Gen. Refractories Co. v. Fireman's Fund Ins. Co.*,
337 F.3d 297 (3d Cir. 2003)....................18

*Giordano v. Claudio*,
714 F. Supp. 2d 508 (E.D. Pa. 2010)....................7, 8

*Gould v. JPMorgan Chase Bank, N.A.*,
No. 21-04663 (KM) (ESK), 2021 U.S. Dist. LEXIS 180230 (D.N.J. Sept. 21, 2021)....................13

*Holistic Ave. Inc. v. HIP Innovations, LLC*,
No. 25-16263 (MAS) (JTQ), 2026 U.S. Dist. LEXIS 161775 (D.N.J. July 20, 2026)....................10

*Hritz v. Woma Corp.*,
732 F.2d 1178 (3d Cir. 1984)....................28

*Illiano v. Wayne Bd. of Educ.*,
No. 22-114 (SDW) (JBC), 2024 U.S. Dist. LEXIS 28389 (D.N.J. Feb. 20, 2024) ....................18

*Interdigital Commc'ns. Corp. v. Fed. Ins. Co.*,
308 F. App'x 593 (3d Cir. 2009) ....................9

*Jevremovic v. Courville*,
No. 22-4969 (ZNQ) (RLS), 2023 U.S. Dist. LEXIS 139440 (D.N.J. Aug. 10, 2023) (Quraishi, J.) ....................17

*Jones v. Ford Motor Credit Co.*,
358 F.3d 205 (2d Cir. 2004) ....................20

*Kedra v. Schroeter*,
876 F.3d 424 (3d Cir. 2017) ....................11

*Kennedy v. Am. Airlines, Inc.*,
195 F. Supp. 3d 646 (D.N.J. 2016) ....................13, 14

*Kirby v. Kwilecki*,
No. 20-cv-01670, 2021 U.S. Dist. LEXIS 58717 (D.N.J. Mar. 26, 2021) ....................21

*Kotlikoff v. Cmty. News*,
89 N.J. 62 (1982) ....................18

*Landsman & Funk PC v. Skinder-Strauss Assocs.*,
640 F.3d 72 (3d Cir. 2011), *vacated on other grounds*, 650 F.3d 311 (3d Cir. 2011) ....................22, 23

*Lee v. TMZ Prods., Inc.*,
710 F. App'x 551 (3d Cir. 2017) ....................19

*Lento L. Grp., PC v. Hendrickson*,
485 N.J. Super. 56 (App. Div. 2026) ....................26

*Livingstone v. Haddon Point Manager, LLC*,
No. 19-13412, 2021 U.S. Dist. LEXIS 230828 (D.N.J. Dec. 1, 2021) ....................30

*Lutz v. Portfolio Recovery Assocs., LLC*,
49 F.4th 323 (3d Cir. 2022) ....................20

*Lyon v. Whisman*,
45 F.3d 758 (3d Cir. 1995) ....................21

*M.R. v. Ridley Sch. Dist.*,
744 F.3d 112 (3d Cir. 2014) ....................5, 6

*Mangan v. Corp. Synergies Grp., Inc.*,
834 F. Supp. 2d 199 (D.N.J. 2011) ....................17

*Manus Corp. v. NRG Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*,
188 F.3d 116 (3d Cir. 1999)....................30

*McCafferty v. Newsweek Media Grp., Ltd.*,
955 F.3d 352 (3d Cir. 2020)....................14, 15

*Mrs. Ressler's Food Prods. v. KZY Logistics LLC*, 675 F. App'x 136 (3d Cir. 2017) ....................28

*New York Times Co. v. Sullivan*,
376 U.S. 254 (1964)....................14

*Okogun v. Miller*,
No. 23-2640 (MAS) (JBD), 2025 U.S. Dist. LEXIS 113179 (D.N.J. June 10, 2025) ....................14

*Paucek v. Shaulis*,
349 F.R.D. 498 (D.N.J. 2025)....................22, 26, 27

*Perez v. Factory Direct of Secaucus, LLC*,
No. 2:13-cv-00327 (DMC)(JBC), 2013 U.S. Dist. LEXIS 152407 (D.N.J. Oct. 23, 2013) ....................13, 14

*Piegaro v. Trs. of Princeton Univ.*,
No. 25-13919 (ZNQ) (JTQ), 2026 U.S. Dist. LEXIS 170574 (D.N.J. July 31, 2026) (Quraishi, J.) ....................4, 16, 26

*Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*,
507 U.S. 380 (1993)....................29, 30

*Ragguette v. Premier Wines & Spirits*,
691 F.3d 315 (3d Cir. 2012)....................30

*Salzano v. N. Jersey Media Grp. Inc.*,
201 N.J. 500 (2010) ....................19

*Sarpolis v. Tereshko*,
625 F. App'x 594 (3d Cir. 2016) ....................20, 21

*Satz v. Starr*,
482 N.J. Super. 55 (App. Div. 2025) ....................27

*Schiavone Constr. Co. v. Time, Inc.*,
847 F.2d 1069 (3d Cir. 1988)....................14, 16, 19

*Sherzer v. Homestar Mortg. Servs*,
707 F.3d 255 (3d Cir. 2013)....................................................................................9

*Silver Lining Enters., LLC v. New Gen. Enters., LLC*,
No. 25-cv-01304-ESK-SAK, 2026 U.S. Dist. LEXIS 175322 (D.N.J. Aug. 6, 2026) ....................................................................................................................8

*Sky R. v. Haddonfield Friends Sch.*,
No. 14-5730, 2016 U.S. Dist. LEXIS 43002 (D.N.J. Mar. 31, 2016).....................................21

*Strategic Envtl. Partners, LLC v. Bucco*,
184 F. Supp. 3d 108 (D.N.J. 2016) ..........................................................................20

*Taj Mahal Travel v. Delta Airlines*,
164 F.3d 186 (3d Cir. 1998)....................................................................................12

*In re Tuttle*,
No. 20-2523, 2024 U.S. Dist. LEXIS 115882 (D.N.J. June 28, 2024)...................................24

*United States v. Brown*,
631 F.3d 638 (3d Cir. 2011)....................................................................................24

*United States v. CITGO Asphalt Ref. Co. (In re Frescati Shipping Co.)*,
886 F.3d 291 (3d Cir. 2018)......................................................................................9

*United States v. Gonzalez*,
905 F.3d 165 (3d Cir. 2018)...............................................................................17, 27

*Welch & Forbes, Inc. v. Cendant Corp. (In re Cendant Corp. Prides Litig.)*,
235 F.3d 176 (3d Cir. 2000)....................................................................................30

*Williams v. BASF Catalysts LLC*,
765 F.3d 306 (3d Cir. 2014)....................................................................................18

*Wilson v. King*,
No. 06-CV-2608, 2010 U.S. Dist. LEXIS 16184 (E.D. Pa. Feb. 24, 2010) ............................28

**Statutes**

28 U.S.C. § 1367(a) .................................................................................................20

N.J.S.A. 2A:14-2..........................................................................................................8

N.J.S.A. 2A:14-3..........................................................................................................8

N.J.S.A. 2A:53A-58.....................................................................................................27

N.J.S.A. 2A:53A-49 *et seq*............................................................................................22

**Other Authorities**

Fed. R. Civ. P. 13(a)(1)(A) ....................5

Fed. R. Civ. P. 15(a)(2) ....................20

Fed. R. Civ. P. 9(b) ....................14

Federal Rule of Civil Procedure 12(b)(6) .................... *passim*

Rule 6(b)(1)(B) ....................29

Rule 8 ....................10, 26

Rule 9(b) ....................14, 24

Rule 12(a)(4)(A) ....................9, 21

Rule 12(f) ....................28

## PRELIMINARY STATEMENT

Plaintiff David Piegaro commenced this action based on his account of events that occurred on April 29, 2024, alleging that Kenneth E. Strother, Jr. assaulted him, used excessive force, fabricated charges, and caused him to fall down the steps of Whig Hall. Strother's Counterclaims arise from that same encounter and Plaintiff's subsequent public accusations that Strother "grabbed me and threw me down the marble stairs of the building" and pursued "fabricated charges." The parties' claims are therefore opposite sides of the same controversy and address the same events.

Plaintiff now moves to dismiss Strother's Counterclaims, but in so moving repeatedly asks the Court to do what Federal Rule of Civil Procedure 12(b)(6) forbids. Rather than accepting the Counterclaims' allegations as true, Plaintiff invites the Court to credit his competing factual narrative, draw inferences in his favor, and resolve disputed factual issues before discovery has even begun. That is not the standard on a motion to dismiss. Accepting the Counterclaims' well-pleaded allegations as true, Strother plainly states claims for defamation, assault, and battery.

Plaintiff's procedural arguments fare no better. The Counterclaims are compulsory, arise from the same events Plaintiff placed at issue, and were tolled upon the filing of the Complaint. Moreover, even assuming *arguendo* that Plaintiff is correct about the timing for responsive pleadings, he has identified no resulting prejudice that would justify the complete dismissal that he seeks. Having initiated this litigation, Plaintiff cannot avoid adjudication of Strother's claims through procedural technicalities that neither impaired Plaintiff's rights nor affected the course of this action.

In sum, Plaintiff seeks what he cannot obtain under the Federal Rules: an early win on the merits. Because the Court must accept the Counterclaims' allegations as true, Plaintiff's motion must be denied.

## BACKGROUND[1]

On April 29, 2024, Strother, Princeton University's Assistant Vice President for Public Safety and the supervisor of its Department of Public Safety ("DPS"), was managing a rapidly evolving campus protest situation. Earlier that afternoon, student protesters had entered Clio Hall and were refusing to leave. ¶¶ 1, 6. Ultimately, DPS officers placed them under arrest and escorted them to a DPS bus. ¶ 7. Protesters surrounded and damaged the bus, prompting Strother to conclude that transporting arrestees to DPS headquarters might risk further escalation. ¶¶ 7–8. Instead, the arrestees were issued summonses and released on site. *Id.* Wearing a suit, as was his custom, Strother exited the bus, identified himself to the gathered protesters, and explained that the arrestees would be summonsed and released. ¶ 9.

Later that same evening, Strother met with Professor Max Weiss and Zia Mian, who had been serving as liaisons with the student protesters. ¶ 10. While speaking with them in the area between Whig Hall and Clio Hall, Strother observed an individual—later identified as Plaintiff—approaching the group. ¶¶ 10-11. Strother informed Plaintiff that they were engaged in a private conversation, to which Plaintiff responded that he had a right to be there; Strother agreed and accordingly sought to move his conversation to a more private setting. ¶ 11.

Strother, Weiss, and Mian then proceeded to Whig Hall. ¶ 12. Earlier in the day, Strother had directed that the buildings in the area be locked because of the ongoing protest activity, and as a result, students should not have had access to Whig Hall. ¶ 13. As Strother, Weiss, and Mian ascended the stairs, Strother noticed Plaintiff following behind them. ¶ 12. Upon reaching the entrance, Strother used his access badge to unlock the building and positioned himself between Plaintiff and the doorway, holding the door open for Weiss and Mian to enter. ¶ 13.

[1] References to Strother's Counterclaims (ECF No. 30 at 30 *et seq.*) take the form "¶ _."

While Strother held the door open, Plaintiff "suddenly push[ed] against his outstretched arm in an apparent effort to force entry into the building." ¶ 14. Strother immediately advised Plaintiff that he could not enter. *Id.* Nevertheless, Plaintiff did not stop. Instead, he continued pushing. *Id.* Given the tense circumstances on campus, the restricted status of the building, and Plaintiff's aggressive conduct, Strother was in imminent apprehension of further offensive contact, ¶¶ 15, 26, and concluded that he had no choice but to place Plaintiff under arrest to avoid any further escalation. ¶ 15.

Plaintiff resisted. ¶¶ 16, 27. As Strother attempted to take Plaintiff into custody and escort him down the stairs, Plaintiff pulled away, pushed back, and continued to struggle. *Id.* Plaintiff's resistance created an unsafe situation on a flight of stairs, causing both men to risk losing their footing. ¶ 16. Strother released Plaintiff, who then fell down the stairs. *Id.* To be clear, this occurred only after Plaintiff resisted arrest and created the unstable circumstances that caused both individuals to become unsteady. *Id.*

In the aftermath of the incident, Plaintiff posted online that Strother "grabbed me and threw me down the marble stairs of the building" and "charged me with fabricated charges." ¶ 17. Plaintiff also repeated these false allegations to the New York Times ("NY Times"), which reported in an article published on April 1, 2025, that Plaintiff claimed that he had been assaulted. ¶¶ 17, 32. In fact, Plaintiff initiated the physical encounter, resisted arrest, and then blamed Strother for the consequences of his own conduct. ¶¶ 14-17, 33.

Plaintiff filed an Internal Affairs complaint with the Mercer County Prosecutor's Office, which, on September 30, 2025, issued a report exonerating Strother. ¶ 34. Nonetheless, Plaintiff continued publishing the same accusations and took no steps to retract, modify, or remove his prior statements. *Id.* As a result, Strother's reputation has been damaged within both the University and

the broader community, as evidenced by threatening and derogatory voicemails he has received since. ¶¶ 18, 35–36.

## LEGAL STANDARD

As this Court has correctly set forth the standard, in evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "the court must accept as true all of the [defendant]'s well-pleaded factual allegations and 'construe the [counterclaim] in the light most favorable to the [defendant].'" *Piegaro v. Trs. of Princeton Univ.*, No. 25-13919 (ZNQ) (JTQ), 2026 U.S. Dist. LEXIS 170574, at *10 (D.N.J. July 31, 2026) (Quraishi, J.) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted)). To survive a motion to dismiss, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the [plaintiff] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 556. The proper inquiry for assessing the sufficiency of a claim for relief is "'not whether a [defendant] will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" *Twombly*, 550 U.S. at 583 (quoting *Scheuer* v. *Rhodes*, 416 U.S. 232, 236 (1974)). A party moving to dismiss "bears the burden of showing that no claim has been presented." *Piegaro*, 2026 U.S. Dist. LEXIS 170574, at *10 (citing *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005)).

## ARGUMENT

### I. STROTHER'S COUNTERCLAIMS ARE COMPULSORY AND WERE ACCORDINGLY TIMELY.

#### A. The Counterclaims are Compulsory Under Rule 13(a).

Plaintiff principally argues that Strother's Counterclaims are barred by the statute of limitations and that, in any event, the Counterclaims were filed fourteen days late and are not entitled to the benefit of tolling. In the alternative, Plaintiff argues that Strother's Counterclaim for

defamation is permissive and not compulsory. Pl. Br. 17-18. Plaintiff necessarily concedes both that, as discussed below, the filing of a complaint tolls the limitations period for compulsory counterclaims, and that the Counterclaims for assault and battery are compulsory. *Id.* Plaintiff's failure to contest those points largely disposes of his statute of limitations argument; his remaining arguments likewise fail.

A counterclaim is compulsory if it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a)(1)(A). In adjudicating whether a counterclaim is compulsory or permissive, the Third Circuit applies a "logical relationship" test: a counterclaim is compulsory where it "bears a logical relationship to an opposing party's claim," which exists "where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts." *M.R. v. Ridley Sch. Dist.*, 744 F.3d 112, 121 (3d Cir. 2014) (internal citations omitted). The overwhelming purpose of Rule 13(a) "is to promote judicial economy, so the term 'transaction or occurrence' is construed generously to further this purpose." *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 835 n.9 (3d Cir. 2011) (quoting *Transamerica Occidental Life Ins. Co. v. Aviation Off. of Am., Inc.*, 292 F.3d 384, 390 (3d Cir. 2002)). The inquiry further examines whether the claims "involve the same factual issues, the same factual and legal issues, or are offshoots of the same basic controversy between the parties." *Crawl Space Door Sys., Inc. v. White*, No. 23-2319, 2024 U.S. App. LEXIS 8597, at *4 (3d Cir. Apr. 10, 2024).

As to the Counterclaims for assault and battery, Plaintiff's concession that they are compulsory is unavoidable. Those Counterclaims arise from the identical moment on the Whig Hall steps that forms the basis of Plaintiff's own assault and battery, excessive force, and unlawful arrest claims. *Compare* ¶¶ 13-16, 20-27, *with* Compl. ¶¶ 92-108. The parties' competing accounts

present the same central question: what occurred on the steps of Whig Hall? Because the claims arise from the same occurrence, they rise and fall on the same factual determinations and are compulsory. Accordingly, the statute of limitations was tolled by the filing of the Complaint here.

The Counterclaim for defamation is equally compulsory. The statements at issue are Plaintiff's own accounts of the April 29, 2024 encounter and the resulting prosecution: Strother "grabbed me and threw me down the marble stairs" and "charged me with fabricated charges." ¶¶ 17, 30. Those statements are the same allegations underlying Plaintiff's excessive force, malicious prosecution, and fabrication of evidence claims. As a result, the dispositive question as to whether the defamatory statements are false is the exact same question that the jury must resolve for Plaintiff's claims (and will involve the same evidence and the same witnesses, including Strother, Plaintiff, and other eyewitnesses). Therefore, a determination as to the falsity of the defamatory statements in a separate action would involve a "substantial duplication of effort and time." *See Ridley Sch. Dist.*, 744 F.3d at 121.

Plaintiff's arguments to the contrary are unavailing. Specifically, Plaintiff's contention that the defamation Counterclaim requires "proof of the content, context, recipients, timing, fault, and reputational consequences of publications from nearly a year after most of the events relevant to" Plaintiff's Complaint, Pl. Br. 18-19, misconstrues the "logical relationship" test, which does not demand a "precise identity of issues and facts between the claim and the counterclaim." *White*, 2024 U.S. App. LEXIS 8597, at *3 (quoting *Transamerica*, 292 F.3d at 389). Rather, only a substantial overlap in the operative facts is required; here, that overlap is complete as to the core issue of truth: if the factfinder concludes that Strother threw Plaintiff down the stairs and fabricated the charges, then the truth of Plaintiff's statements defeats the Counterclaim; if not, Plaintiff's claims fail and the falsity of his statements is established. This substantial overlap of core issues

does not even require that, as the Third Circuit has directed, "transaction or occurrence" is to be liberally construed. *Bunge*, 632 F.3d at 835 n.9. Nor is *Xerox Corp. v. SCM Corp.*, on which Plaintiff relies, Pl. Br. 19, to the contrary; unlike here, the counterclaims there turned on materially different issues and proofs. 576 F.2d 1057, 1059–60 (3d Cir. 1978).

Other courts have addressed the relationship between underlying and defamation claims directly: in *Pochiro v. Prudential Ins. Co.*, the Ninth Circuit held that defamation counterclaims are compulsory "[a]s long as the allegedly defamatory statements are sufficiently related to subject matter of the original action." 827 F.2d 1246, 1251 (9th Cir. 1987). Likewise, the United States District Court for the District of Connecticut has held that a defamation counterclaim was compulsory where the plaintiff brought claims against a police officer for obtaining an arrest warrant based on materially false allegations, which case was subsequently dismissed by a state court judge. *Appletree v. Hartford*, 555 F. Supp. 224, 226-30 (D. Conn. 1983) ("truth of defendant's [] version of events" was "an essential issue of fact in both the [false arrest claim] and the counterclaim . . . sufficient to meet the 'logical relationship' test"); *see also Aleynikov v. Goldman Sachs Grp., Inc.*, No. 12-5994 (KM-MAH), 2016 U.S. Dist. LEXIS 149666, at *23 (D.N.J. Oct. 28, 2016) (finding defamation counterclaim compulsory where it was "an alternative legal theory imposed on the same set of facts"). Because Strother's defamation Counterclaim bears a logical relationship to Plaintiff's underlying claims and is therefore compulsory, Plaintiff's motion to dismiss should be denied.

**B. Plaintiff's Initiation of Suit Suspended the Running of the Statute of Limitations for the Compulsory Counterclaims.**

Because Strother's Counterclaims are compulsory, "the institution of plaintiff's suit tolls or suspends the running of the statute of limitations governing" them. *Giordano v. Claudio*, 714 F. Supp. 2d 508, 523 (E.D. Pa. 2010) (citation omitted); *see also Silver Lining Enters., LLC v. New*

*Gen. Enters., LLC*, No. 25-cv-01304-ESK-SAK, 2026 U.S. Dist. LEXIS 175322, at *8 (D.N.J. Aug. 6, 2026) ("[T]he statute of limitations for compulsory counterclaims is tolled by the filing of the complaint."). The rule rests on a straightforward principle of fairness: a plaintiff may not delay filing the complaint until the statute of limitations has run on the defendant's claim, such that it is barred by the time defendant could assert it as a counterclaim. *Giordano*, 714 F. Supp. 2d at 523.

Applying that rule, every Counterclaim was timely when Plaintiff filed suit on July 30, 2025. *See* ECF No. 1. The assault and battery claims, which are subject to a two-year statute of limitations, N.J.S.A. 2A:14-2, arise from conduct that occurred on April 29, 2024. Therefore, absent Plaintiff's Complaint, the statute of limitations would have run on April 29, 2026. But because Plaintiff's Complaint was filed prior to that date, the running of the statute of limitations on those Counterclaims was tolled. With respect to the defamation Counterclaim, the statute of limitations is one year from publication. N.J.S.A. 2A:14-3. The filing of Plaintiff's Complaint several months after his statements in the NY Times article on April 1, 2025 and in his GoFundMe page on May 20, 2025, tolled the running of the statute on the defamation claim. *See infra*, § II.A. Plaintiff seeks to avoid these facts by invoking the "single-publication" rule, Pl. Br. 17 n.7 (citing *Churchill v. New Jersey*, 378 N.J. Super. 471, 478-79 (App. Div. 2005)), but that rule does not apply, as it only fixes the accrual date for each publication and does not alter the fact that every identified publication here occurred within one year of the Complaint's filing, such that the statute of limitations was tolled. In sum, because the statute of limitations did not run prior to the filing of the Complaint, the institution of suit tolled the statute as to each compulsory Counterclaim, which were accordingly timely filed.[2]

[2] Plaintiff argues that the purported untimeliness of the Counterclaims under Rule 12(a)(4)(A) bars tolling, Pl. Br. 18, but cites no authority holding that a compulsory counterclaim loses the benefit of tolling merely because the responsive pleading was allegedly filed after the Rule 12(a)(4)(A)

### C. The Counterclaims are Otherwise Permissible Under the Doctrine of Equitable Recoupment.

Even if the Court were to conclude that the Counterclaims were not tolled, the doctrine of equitable recoupment independently permits Strother to assert them defensively. Recoupment is "a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded." *Sherzer v. Homestar Mortg. Servs,* 707 F.3d 255, 266 (3d Cir. 2013) (quoting *Beach v. Ocwen Fed. Bank,* 523 U.S. 410, 415 (1998)). As a result, a defendant may assert such a claim to diminish the plaintiff's award notwithstanding an otherwise applicable statute of limitations, provided that the plaintiff's complaint was filed timely and the counterclaim arises from the same transaction or occurrence. *See Beach,* 523 U.S. at 415; *see also Interdigital Commc'ns. Corp. v. Fed. Ins. Co.*, 308 F. App'x 593, 596 (3d Cir. 2009); *United States v. CITGO Asphalt Ref. Co. (In re Frescati Shipping Co.)*, 886 F.3d 291, 311 (3d Cir. 2018). These requirements are plainly satisfied here. All three Counterclaims arise from the April 29, 2024 encounter and Plaintiff's accounts of it, which is the same "transaction" on which Plaintiff's action is grounded. Thus, recoupment, if applied, would permit the Counterclaims to operate as an offset against any recovery by Plaintiff, and provides an avenue for the same relief. For this reason too, the Counterclaims should not be dismissed as time-barred, even if the running of the statute was not otherwise tolled.

## II. STROTHER PLAUSIBLY STATES A CLAIM FOR DEFAMATION.

Plaintiff argues that the defamation Counterclaim fails because it does not satisfy Rule 8's pleading requirements, the NY Times article does not contain the challenged statements, and, in

---

deadline, and there is none. Tolling turns on the relationship between the claims, not on the existence of a fourteen-day procedural deadline that the Court has discretion to extend. To the extent the Court desires a formal procedural motion, Defendants can move for leave to file *nunc pro tunc*.

any event, the statements are nonactionable descriptions of Plaintiff's criminal defense rather than defamatory assertions of fact. Pl. Br. 9-12. But those arguments ignore the plain text of the Counterclaim and impermissibly rely on Plaintiff's own characterization of the challenged publications and should therefore be rejected.

To bring a defamation claim under New Jersey law, a party must plead: "(1) that defendants made a false and defamatory statement concerning [plaintiff]; (2) that the statement was communicated to another person (and not privileged); and (3) that defendants acted negligently or with actual malice." *Ali v. Woodbridge Twp. Sch. Dist.*, 957 F.3d 174, 182-83 (3d Cir. 2020) (quoting *G.D. v. Kenny*, 205 N.J. 275, 292-93 (2011)). According to Rule 8, "a defamation pleading does not need to cite precise defamatory statements, it must [] provide sufficient notice to the other party of the allegations made against him." *Holistic Ave. Inc. v. HIP Innovations, LLC*, No. 25-16263 (MAS) (JTQ), 2026 U.S. Dist. LEXIS 161775, at *7-8 (D.N.J. July 20, 2026) (quoting *Cristelli v. Filomena II, Inc.*, No. 99-2862 (JEI), 1999 U.S. Dist. LEXIS 18761, at *6 (D.N.J. Dec. 1, 1999)). In other words, to withstand a motion to dismiss, "[a] complaint alleging defamation must include facts sufficient to identify the defamatory words, their utterer and the fact of their publication." *First Nat'l Prop. Mgmt., LLC v. Chapman*, No. 23-00603 (GC) (JBD), 2024 U.S. Dist. LEXIS 10653, at *5 (D.N.J. Jan. 22, 2024) (quoting *Crawford v. W. Jersey Health Sys.*, 847 F. Supp. 1232, 1238 (D.N.J. 1994)) (internal quotations omitted). The defamation Counterclaim easily satisfies this standard.

### A. The Counterclaim Adequately Identifies the Defamatory Publications, including Plaintiff's GoFundMe Page and His Communications to the NY Times.

Plaintiff's argument fails at the outset because it proceeds from a false premise: contrary to Plaintiff's argument, the Counterclaim does not identify the NY Times article as the sole defamatory publication at issue. In fact, the Counterclaim identifies multiple instances of

publication, and consistent with the standards set forth above, identifies (i) the speaker (Plaintiff); (ii) the defamatory statements ("grabbed me and threw me down the marble stairs of the building" and "charged me with fabricated charges," as well as informing the NY Times he had been assaulted by Strother); (iii) the means of publication (Plaintiff's online publications and statements to the NY Times); and (iv) the relevant time frame of publication (following the April 29, 2024 incident, including the April 1, 2025 article and continuing after September 30, 2025). *See* ¶¶ 17, 30, 32, 34. Those allegations provide more than sufficient notice of the claim asserted.

Plaintiff seeks dismissal of the claim by isolating a single article in the NY Times and disregarding the remainder of the Counterclaim. Specifically, Plaintiff argues that the NY Times article does not contain the exact quoted language set forth in Paragraphs 17 and 30. Pl. Br. 10. The Counterclaim, however, does not allege that the challenged statements appeared solely in the NY Times article. Rather, it alleges multiple publications, each of which independently meets the standards set forth above, including Plaintiff's own online publications, where the quoted language can be found. ¶¶ 17, 30, 32. Nor should the Court review these statements in isolation, as the task of the Court on a motion to dismiss is to determine "whether all of the facts alleged, taken collectively, give rise" to a plausible claim "not whether any individual allegation, scrutinized in isolation, meets that standard." *Kedra v. Schroeter*, 876 F.3d 424, 441 (3d Cir. 2017) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007)). Here, taken as a whole, the Counterclaim expressly alleges that Plaintiff published defamatory statements online, including that Strother "grabbed me and threw me down the marble stairs of the building" and "charged me with fabricated charges." ¶ 17. Those statements appear verbatim on Plaintiff's own GoFundMe page, of which Plaintiff is no doubt aware, having created and regularly updated it. Lustberg Cert. ¶ 2, Ex. 1 (David Piegaro, *Help a Veteran Fight Injustice & Antisemitism at*

*Princeton*, GoFundMe.com, May 20, 2025, last updated August 3, 2026, https://www.gofundme.com/f/help-army-veteran-and-jewish-student-assaulted-at-protest (last accessed Oct. 18, 2026)).[3]

Plaintiff, though, argues that the particular passage of the NY Times article is legally insufficient because it does not include direct quotations from Plaintiff but instead states that Plaintiff "told the New York Times that he had been assaulted by Chief Strother." ¶ 17. But the law contains no such quotation requirement and Plaintiff does not cite any authority imposing one. Indeed, the absence of quotation marks bears, at most, on the NY Times' potential liability as a re-publisher, not on whether Plaintiff communicated the challenged statements in the first instance. *See Taj Mahal Travel v. Delta Airlines,* 164 F.3d 186, 190 (3d Cir. 1998) (holding that merely including "has been reported" or similar phraseology does not shield a defendant "because republication of defamatory matter is actionable regardless of the republication's accuracy"); *see also Friedman v. Isr. Labour Party,* 957 F. Supp. 701, 709 (E.D. Pa. 1997) ("It is not essential that the governmental proceeding or the official report be set forth verbatim by the newspaper."). Accordingly, with respect to Plaintiff's liability for defamation, the relevant question is not whether the NY Times quoted Plaintiff's exact words, but whether Plaintiff communicated the challenged assertions to a third party like the Times. *See Gould v. JPMorgan Chase Bank, N.A.*, No. 21-04663 (KM) (ESK), 2021 U.S. Dist. LEXIS 180230, at *11 (D.N.J. Sept. 21, 2021)

---

[3] Because the Counterclaim quotes and relies upon those statements as a basis for the defamation claim, the GoFundMe page is properly before the Court under the established rule permitting a court to consider, on a Rule 12(b)(6) motion, "a document integral to or explicitly relied upon in the complaint." *Fallon v. Mercy Catholic Med. Ctr.*, 877 F.3d 487, 493 (3d Cir. 2017) (finding it permissible for the District Court to consider an essay which was quoted in the Complaint); *see also Doe v. Univ. of the Scis.*, 961 F.3d 203, 208 (3d Cir. 2020) (considering a report attached to a motion to dismiss because it was "integral" to the complaint). Indeed, Plaintiff himself relies on the same integral-document doctrine to place the NY Times article before the Court. Pl. Br. 8, 10 n.3; *see also* Becker Decl. Ex. 1 (ECF No. 37.3).

("'Publication' of defamatory matter is its 'communication intentionally or by a negligent act to one other than the person defamed'"). Here, the Counterclaim specifically alleges—and adequately pleads—that Plaintiff communicated those accusations to third parties including through online websites and to the NY Times. ¶ 32. That is sufficient to plead publication. Moreover, the NY Times article makes absolutely clear that Plaintiff provided this information to the reporter during an interview. *See* Becker Decl. Ex. 1 at 3 (ECF No. 37.3) (". . . Mr. Piegaro said in an interview."). Because Plaintiff communicated defamatory statements about Strother to the NY Times reporter, the element of publication is readily satisfied.

Plaintiff's reliance on *Perez v. Factory Direct of Secaucus, LLC*, No. 2:13-cv-00327 (DMC)(JBC), 2013 U.S. Dist. LEXIS 152407 (D.N.J. Oct. 23, 2013) and *Kennedy v. Am. Airlines, Inc.*, 195 F. Supp. 3d 646 (D.N.J. 2016), Pl. Br. 10–12, for the propositions that the statements reflected in the NY Times article are not attributable to him and that the Counterclaim fails to identify the circumstances of publication, is misplaced. In *Perez*, the court dismissed the claim because the plaintiffs failed to plausibly allege that the defendants were the source of the challenged statements. 2013 U.S. Dist. LEXIS 152407, at *18. And in *Kennedy*, the court dismissed the defamation claim because the plaintiff failed to identify any defamatory statement and alleged only that defendants disclosed information "at will to third parties," without identifying any facts concerning the publication. 195 F. Supp. 3d at 655-56. Here, by contrast, the Counterclaim directly alleges that Plaintiff made the challenged statements, identifies the statements, and pleads that Plaintiff communicated them through multiple publication mediums, including his own online publication and statements to the NY Times. ¶¶ 17, 30, 32. Those allegations bear no resemblance to the deficient pleadings in *Perez* and *Kennedy*.

In sum, the Counterclaim identifies multiple defamatory publications and the GoFundMe page contains the challenged statements verbatim, Plaintiff's arguments that the NY Times article does not contain the quoted language and that the Counterclaim fails to identify any actionable publications therefore fail as a matter of law.

**B. The Counterclaim Plausibly Alleges Actual Malice.**

For the purposes of this motion, Strother does not dispute that the Counterclaim must plead actual malice—a standard readily satisfied here. *See Okogun v. Miller*, No. 23-2640 (MAS) (JBD), 2025 U.S. Dist. LEXIS 113179, at *9 n.9 (D.N.J. June 10, 2025) ("[P]olice officers acting in their official capacities are public officials for the purposes of the actual malice requirement.") (citation omitted); *see also New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964) (requiring public officials to allege that defamatory statement was made with "actual malice," *i.e.*, published "with knowledge that it was false or with reckless disregard of whether or not it was false"). Although conclusory allegations of knowledge are insufficient, Rule 9(b) permits malice to be alleged generally. Fed. R. Civ. P. 9(b). And because the standard is subjective, turning on the speaker's actual state of mind, it can be pled through circumstantial evidence. *McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 359 (3d Cir. 2020); *see also Schiavone Constr. Co. v. Time, Inc.*, 847 F.2d 1069, 1089-90 (3d Cir. 1988). Specifically, actual malice may be pled by alleging that Plaintiff (1) made up the statements; (2) "used them to accuse [the defendant] of breaking the law when [the speaker] knew he was innocent"; or (3) "published facts contrary to the information [he] otherwise knew." *McCafferty*, 955 F.3d at 360.

The Counterclaim alleges precisely that. Most fundamentally, of course, Plaintiff was a direct participant in the April 29, 2024 encounter and therefore possessed firsthand knowledge of what occurred on the steps of Whig Hall and the circumstances of the resulting criminal charges. ¶¶ 17, 33. Nevertheless, Plaintiff knowingly and falsely accused Strother of having "grabbed me

and thr[own] me down the marble stairs of the building" and having brought "fabricated charges." ¶¶ 17, 30-31. Accepting those allegations as true, Plaintiff's statements concerned events in which Plaintiff himself participated and, which he used "to accuse [the defendant] of breaking the law when [he] knew he was innocent." *McCafferty*, 955 F.3d at 360; ¶¶ 17, 33. Those allegations, then, constitute exactly the type of circumstantial facts that may, if proven, constitute actual malice. *Id.*

Moreover, Plaintiff continued to publish the challenged accusations online and took no action to retract or correct any of his prior defamatory statements after the Mercer County Prosecutor's Office issued its September 30, 2025 report exonerating Strother in connection with Plaintiff's Internal Affairs complaint. ¶ 34. Plaintiff dismisses that allegation by arguing that the report post-dates the NY Times article and cannot speak to his state of mind at the time of publication. Pl. Br. 16. But as discussed above, Count III expressly alleges that Plaintiff "continued to publish defamatory statements online" after the report issued, ¶ 34, and those later publications—including Plaintiff's own GoFundMe page, which Plaintiff continued updating as recently as August 3, 2026 while leaving the challenged accusations intact, Lustberg Cert. Ex. 1 at 3—must be measured against Plaintiff's state of mind at the time they were made—here, after he was on notice of the report.[4] A publisher's decision to continue promoting the defamatory statements in the face of information undermining their veracity supports an inference of actual malice. *See Schiavone*, 847 F.2d at 1091-92 (concluding that defendant acted with actual malice where reliable, independent sources contradicted the veracity of a defamatory statement, and the publisher deliberately omitted "exculpatory" information and "add[ed] editorial comment to draw attention" from readers).

[4] Nor does Plaintiff's argument that the Counterclaim does not allege that he saw the report, Pl. Br. 16, warrant dismissal. It is more than reasonable at the pleading stage to infer, as the Court must, that a complainant was aware of the outcome of his own Internal Affairs complaint.

Plaintiff's contrary argument improperly assumes the truth of his own version of events. Thus, Plaintiff argues that he "maintained a consistent narrative" and that "this Court found plausible Mr. Piegaro's account of Strother's excessive force and use of fabricated evidence." Pl. Br. 15 (citing ECF No. 26 at 16-20). But Plaintiff's reliance on this Court's prior ruling, which held only that his allegations ought not be dismissed at the pleading stage is inappropriate. The Court's prior decision obviously did not establish the truth of Plaintiff's allegations; it merely held that, accepting Plaintiff's allegations as true, Plaintiff stated plausible claims for relief. *Piegaro*, 2026 U.S. Dist. LEXIS 170574, at *23 (Quraishi, J.) ("Reading these allegations in the light most favorable to Plaintiff, the facts plead are sufficient to articulate a claim that Strother used excessive force to effectuate Plaintiff's arrest."). Now, however, Plaintiff asks the Court to abandon that same principle because he is the Counterclaim Defendant. But here too the Court must "accept as true all allegations in the [counterclaims] and all reasonable inferences that can be drawn from [the allegations] after construing them in light most favorable to the non-movant." *Conard v. Pa. State Police*, 902 F.3d 178, 182 (3d Cir. 2018) (quoting *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994)). Plaintiff's actual malice argument fails because it repeatedly asks the Court to do the opposite: disregard the Counterclaim's allegations and credit Plaintiff's competing account, resolving the central factual dispute in his favor. As this Court held earlier, Rule 12(b)(6) does not permit that. Accepting the Counterclaim's well-pleaded allegations as true, the pleading easily supports a plausible inference that Plaintiff knowingly published false accusations or acted with reckless disregard for their truth.

### C. Plaintiff Cannot Shield His Accusations by Characterizing Them as His Litigation Position, and No Privilege Applies.

Plaintiff also attempts to characterize the challenged statements as non-actionable opinions, but this contention fails as a matter of law. The difference between statements of fact

and opinion is that facts have the ability "to be proven true or false," whereas pure opinions "'reflect a state of mind,' and therefore generally 'cannot be proven true or false.'" *Mangan v. Corp. Synergies Grp., Inc.*, 834 F. Supp. 2d 199, 205 (D.N.J. 2011) (quoting *Lynch v. N.J. Educ. Ass'n*, 161 N.J. 152, 167 (1999)). Thus, "[a] statement is actionable if it suggested specific factual assertions that can be proven true or false." *Jevremovic v. Courville*, No. 22-4969 (ZNQ) (RLS), 2023 U.S. Dist. LEXIS 139440, at *15-16 (D.N.J. Aug. 10, 2023) (Quraishi, J.) (citation omitted). Here, the challenged statements accuse Strother of assaulting Plaintiff and fabricating charges. Whether those accusations are true is objectively verifiable. They are not subjective impressions or statements of personal belief. That Plaintiff identifies himself as the purported victim only underscores that he was involved in the event, not that he is expressing an opinion.

Indeed, courts have long recognized that statements falsely accusing another of criminal conduct are defamatory *per se*. *See Beverly Enters. v. Trump*, 182 F.3d 183, 188 (3d Cir. 1999); *see also Dill v. Yellin*, 725 F. Supp. 3d 471, 486 (D.N.J. 2024). Nor may a speaker avoid liability by recasting such fundamentally factual statements as a "sincerely held [] belief." *United States v. Gonzalez*, 905 F.3d 165, 192 (3d Cir. 2018). Plaintiff argues that the defamatory statements must be viewed in the context of the publication as a whole and, when so viewed, amount to nothing more than "a criminal defendant's opinion of his own case." Pl. Br. 11-12. But the assertion that "Mr. Piegaro says he was the one who was assaulted" is not an expression of subjective judgment or personal viewpoint. ¶ 17; *see also* Becker Decl. Ex. 1 at 4. Rather, it is a concrete factual assertion regarding a specific event that either occurred or did not occur and is therefore susceptible to proof or disproof. Accordingly, even accepting Plaintiff's premise that the statements should be read in the context of the publication as a whole, that context does not transform an otherwise verifiable factual assertion into a protected opinion. The same is, of course, true of the GoFundMe

page quotes that Strother "grabbed me and threw me down the marble stairs of the building" and brought "fabricated charges." ¶¶ 17, 30; Lustberg Cert. Ex. 1 at 2.[5]

Plaintiff likewise cannot invoke the litigation privilege. Pl. Br. 26 n.11. Under New Jersey law, the privilege applies to statements "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 319 (3d Cir. 2014) (quoting *Loigman v. Twp. Comm.*, 185 N.J. 566, 585 (2006)); *see also Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 311 (3d Cir. 2003). The Counterclaim is not based on statements contained in pleadings, testimony, or other litigation filings. Rather, it is based on Plaintiff's publication of the accusations through a NY Times interview and his GoFundMe page—statements made to the public and to prospective and prior donors, not in the context of litigation. Indeed, while the NY Times article does not quote Plaintiff for the specific defamatory statements at issue, it does quote him elsewhere and specifically states, ". . . Mr. Piegaro said *in an interview*." Becker Decl. Ex. 1 at 3 (emphasis added) (ECF No. 37.3). It is therefore clear that his statements were made outside the judicial proceedings and thus fall outside the scope of the litigation privilege.

[5] Plaintiff's reliance on *Illiano* and *Kotlikoff*, Pl. Br. 12, is misplaced. Those cases protect opinions grounded in disclosed facts that allow readers to draw their own conclusions. *Illiano v. Wayne Bd. of Educ.*, No. 22-114 (SDW) (JBC), 2024 U.S. Dist. LEXIS 28389, at *24-25 (D.N.J. Feb. 20, 2024); *Kotlikoff v. Cmty. News*, 89 N.J. 62, 72 (1982) (finding that "[t]he terms 'conspiracy' and 'coverup' were employed here in a 'loose, figurative sense' and as 'rhetorical hyperbole'"). Here, Plaintiff's statements are not opinions derived from disclosed facts but are instead the factual assertions themselves. The statements that Strother "grabbed me and threw me down the marble stairs" and pursued "fabricated charges" cannot be construed as "rhetorical hyperbole." Nor does Plaintiff's acquittal on a simple-assault charge establish otherwise. An acquittal does not establish that Strother assaulted Plaintiff or fabricated charges; it establishes only that the charge *against Plaintiff* was not proven beyond a reasonable doubt.

Plaintiff's reliance on the fair report privilege, Pl. Br. 13, is equally misplaced. "Under New Jersey law the media enjoy a qualified fair report privilege," *Schiavone*, 847 F.2d at 1085, which protects the publication of another's defamatory statements where the publication constitutes a fair and accurate report of an official proceeding. *Lee v. TMZ Prods., Inc.*, 710 F. App'x 551, 557 (3d Cir. 2017) ("It recognizes that the author or publisher of a piece reporting on what transpired at an official proceeding acts as an agent for persons who had a right to attend, and informs them of what they might have seen for themselves.") (citation omitted). But Plaintiff is not here being counterclaimed against for purportedly reporting on an official proceeding in which one person defamed another. The Counterclaim instead challenges statements Plaintiff himself made about Strother's participation in actual events that predated the judicial proceedings. The fact that Plaintiff made the challenged accusations while also making statements about his Municipal Court proceedings does not insulate Plaintiff's defamatory statements. *See Salzano v. N. Jersey Media Grp. Inc.*, 201 N.J. 500, 506, 532 (2010) (holding that the fair report privilege protects only fair and accurate reports of official proceedings and does not extend to defamatory statements added by the speaker that go beyond what occurred in the proceeding). Indeed, Strother was never charged with, let alone tried for, assaulting Plaintiff. Thus, Plaintiff's accusations do not merely recount what transpired in an official proceeding—they are factual allegations beyond the scope of any such proceeding. Accepting the Counterclaim's allegations as true, neither the litigation privilege nor the fair report privilege provides a basis to dismiss the defamation Counterclaim.[6]

---

[6] Plaintiff asks the Court to dismiss each Counterclaim with prejudice. Pl. Br. 4. Even if the Court were to find any aspect of the Counterclaims insufficiently pleaded, dismissal with prejudice would be unwarranted. Leave to amend is to be "freely give[n] when justice so requires," Fed. R. Civ. P. 15(a)(2), and the Third Circuit has instructed that where a pleading is vulnerable to

## III. THE COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION.

Strother's defamation claim plainly falls within the Court's supplemental jurisdiction, and Plaintiff's arguments to the contrary are unavailing. To exercise supplemental jurisdiction, the state claims must share "a common nucleus of operative fact" with the federal claims. *Sarpolis v. Tereshko*, 625 F. App'x 594, 598 (3d Cir. 2016) (citing *Sinclair v. Soniform, Inc.*, 935 F.2d 599, 603 (3d Cir. 1991)).[7] In determining whether to exercise supplemental jurisdiction, courts consider judicial economy, convenience, fairness to the litigants, and comity. *Strategic Envtl. Partners, LLC v. Bucco*, 184 F. Supp. 3d 108, 134 (D.N.J. 2016) (quoting *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009)); *see also Annulli v. Panikkar*, 200 F.3d 189, 202 (3d Cir. 1999). Each factor favors Strother.

*First*, judicial economy and convenience strongly support exercising supplemental jurisdiction. While Plaintiff argues that the defamation Counterclaim concerns statements made "long after the April 29 incident" and introduces inquiries regarding Strother's damages, Pl. Br. 22, the facts alleged in the defamation Counterclaim do not support that argument. As explained in § I.A., *supra*, resolving whether Plaintiff's accusations that Strother assaulted him and pursued fabricated criminal charges are true will require examination of the same incident, witnesses, evidence, and competing factual narratives that underlie Strother's Counterclaims. That the statements were published approximately one year after the underlying incident is immaterial. The relevant inquiry is whether the claims arise from a common "nucleus of operative fact[s]," as they

---

dismissal under Rule 12(b)(6), a court should permit a curative amendment unless it would be inequitable or futile. *Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 328 (3d Cir. 2022).

[7] That standard is even satisfied if the defamation Counterclaim were deemed permissive because 28 U.S.C. § 1367(a) extends to all claims that "form part of the same case or controversy." *See Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 213 (2d Cir. 2004) (holding that § 1367 may supply jurisdiction over permissive counterclaims). Here, however, it is compulsory, as discussed above.

plainly do. *See Sarpolis*, 625 F. App'x at 598. Indeed, the Third Circuit has specifically recognized that, as is the case here, "district courts will exercise supplemental jurisdiction if the federal and state claims 'are merely alternative theories of recovery based on the same acts.'" *Lyon v. Whisman*, 45 F.3d 758, 761 (3d Cir. 1995) (quoting *Lentino v. Fringe Employee Plans, Inc.*, 611 F.2d 474, 479 (3d Cir. 1979)). Consistent with that principle, courts in this District routinely exercise supplemental jurisdiction over defamation claims arising from the same operative facts as related federal claims. *See Sky R. v. Haddonfield Friends Sch.*, No. 14-5730, 2016 U.S. Dist. LEXIS 43002, at *12 (D.N.J. Mar. 31, 2016) (exercising supplemental jurisdiction over a defamation counterclaim because it arose from the same nucleus of operative facts and would be expected to be tried in the same proceeding); *Kirby v. Kwilecki*, No. 20-cv-01670, 2021 U.S. Dist. LEXIS 58717, at *16-17 (D.N.J. Mar. 26, 2021) (exercising supplemental jurisdiction over defamation counterclaim which stemmed from the same incident underlying the § 1983 claim and thus arose from a common nucleus of operative fact).

*Second*, fairness considerations likewise favor exercising supplemental jurisdiction. Plaintiff seeks to rebut this point by repeatedly characterizing the Counterclaims as retaliatory because they were filed only after this Court substantially denied Defendants' motion to dismiss. Pl. Br. 22-23. But the filing of a Rule 12 motion postpones the time to serve a responsive pleading, which is not required until after the Court resolves the motion. Fed. R. Civ. P. 12(a)(4)(A). Strother therefore had no obligation to assert Counterclaims while the motion to dismiss remained pending. Nor does the request for nominal damages suggest an improper motive: New Jersey law permits recovery for an unconsented touching without proof of injury, *Bove v. AkPharma Inc.*, 460 N.J. Super. 123, 143 (App. Div. 2019), and defamation *per se* carries presumed damages, ¶ 31. This case involved routine litigation practice, not improper motive.

More importantly, fairness favors retaining jurisdiction because the Counterclaims arise directly from the same events already being litigated before this Court. Requiring Strother to pursue those claims in a separate state court action would needlessly increase expense, duplicate proceedings, and risk inconsistent results. *See Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 88-89 (3d Cir. 2011), *vacated on other grounds*, 650 F.3d 311 (3d Cir. 2011) (recognizing that declining supplemental jurisdiction of related claims can result in duplicative litigation and inconsistent outcomes). Under these circumstances, fairness strongly favors resolving all related claims in a single forum.

*Third*, comity does not support declining jurisdiction. As a general matter, comity concerns are implicated when federal claims have been dismissed and courts find that any remaining state issue should be adjudicated by a state court. *See Combs v. Homer-Ctr. Sch. Dist.*, 540 F.3d 231, 253-54 (3d Cir. 2008) (citation omitted). Plaintiff's argument rests entirely on the premise that New Jersey's Uniform Public Expression Protection Act ("UPEPA"), N.J.S.A. 2A:53A-49 *et seq.*, gives New Jersey courts a particular interest in adjudicating Strother's defamation Counterclaim. Pl. Br. 22, 26-27. But for the reasons discussed in § V, *infra*, Plaintiff's reliance on the UPEPA is misplaced. Indeed, while certain UPEPA procedures may not apply in federal court, Pl. Br. 22, the case upon which Plaintiff relies, *Paucek v. Shaulis*, 349 F.R.D. 498, 505, 509-19 (D.N.J. 2025), nevertheless applied UPEPA's fee-shifting provision, confirming that this Court is fully capable of adjudicating UPEPA-related issues. That certain of UPEPA's procedural mechanisms may be unavailable in federal court, Pl. Br. 22, reflects the ordinary application of the Federal Rules, not a state interest that comity requires this Court to honor. More fundamentally, New Jersey has no unique interest that would warrant adjudicating this dispute in a separate state-court proceeding, which would require two courts to resolve the single question of what occurred on April 29, 2024,

risking both inefficiency and inconsistent results. *See Landsman*, 640 F.3d at 88-89 (declining supplemental jurisdiction could risk the possibility of conflicting findings and legal holdings). Comity therefore provides no basis to decline supplemental jurisdiction.

Because Strother's defamation claim arises from the same operative facts as Plaintiff's federal claims, and because considerations of judicial economy, convenience, fairness, and comity all favor a single proceeding, this Court should exercise supplemental jurisdiction.

## IV. STROTHER PLAUSIBLY STATES CLAIMS FOR ASSAULT AND BATTERY.

Plaintiff argues that the Counterclaims for assault and battery fail because Strother could not have been placed in apprehension of imminent contact and because Plaintiff lacked the requisite intent, as his objective was simply to enter Whig Hall. Pl. Br. 23-25. Plaintiff further contends that alleged factual inconsistencies warrant dismissal. Pl. Br. 25 n.10. But each argument depends on Plaintiff's own characterization of the facts rather than the allegations actually pleaded. Accepting those allegations as true, the Counterclaims plausibly allege both battery and assault.

### A. The Counterclaims Plead an Intentional, Nonconsensual Touching.

Under New Jersey law, battery is the intentional, nonconsensual touching of another. *Buvel v. Bristol Myers Squibb Co.*, No. 22-6449 (ZNQ) (JBD), 2024 U.S. Dist. LEXIS 146000, at *9-10 (D.N.J. Aug. 15, 2024). Any unauthorized touching may constitute battery, regardless of whether it causes injury. *Bove*, 460 N.J. Super. at 143. The Counterclaim readily satisfies that standard. It alleges that Plaintiff "intentionally made physical contact with Chief Strother by pushing his body into Chief Strother's outstretched arm in an attempt to force entry into Whig Hall," which contact was "unauthorized, unwanted, and occurred without Chief Strother's consent," and that Plaintiff "continued pushing" after being told he could not enter. ¶¶ 14, 20–22. Those allegations plausibly state a claim for battery.

Plaintiff's contention that the Counterclaim fails to allege the requisite intent because his objective was "to enter a building, not to make harmful contact," Pl. Br. 3, 24-25, misunderstands the governing standard. Battery requires only an intent to make the contact, not an intent to cause injury. *In re Tuttle*, No. 20-2523 (RMB-SAK), 2024 U.S. Dist. LEXIS 115882, at *34-35 (D.N.J. June 28, 2024). And as Plaintiff's own authority recognizes, intent is satisfied where the actor knows "to a substantial certainty" that contact will result. Pl. Br. 24 (quoting *Bullock v. Cabasa*, 2014 WL 5286613, at *10 (D.N.J. Oct. 15, 2014)). A person who deliberately pushes his body through another person's outstretched arm to gain entry knows, to a substantial certainty, that contact will occur. Plaintiff cannot avoid the consequences of his conduct by recasting the contact as incidental to his ultimate objective. Pl. Br. 25. The alleged contact was not incidental; it was the means by which Plaintiff sought to accomplish that objective.

Nor does Plaintiff meaningfully challenge the factual sufficiency of the pleading. Rule 9(b) expressly permits intent—which is uniquely a factual issue for trial, *see, e.g.*, *United States v. Brown*, 631 F.3d 638, 646 (3d Cir. 2011)—to be alleged generally. Fed. R. Civ. P. 9(b). Here, the allegations of intentional conduct, ¶¶ 20, 22, 25, are supported by specific factual allegations that Plaintiff forcefully pushed into Strother, attempted to force entry into Whig Hall, and continued pushing after being told he could not enter. ¶ 14. Those allegations are far from the "[t]hreadbare recitals" rejected by *Iqbal*. 556 U.S. at 678. They plausibly allege an intentional and nonconsensual touching and therefore state a claim for battery.

**B. The Counterclaims Plead Imminent Apprehension of Further Contact.**

An individual is liable for assault if "(a) he acts intending to cause a harmful or offensive contact with the person, or an imminent apprehension of such a contact, and (b) the person is thereby put in such imminent apprehension." *Ewing v. Cumberland Cnty.*, 152 F. Supp. 3d 269,

299 (D.N.J. 2015) (citing *Leang v. Jersey City Bd. of Educ*., 198 N.J. 557, 591 (2009)). Strother's Counterclaim plausibly pleads those elements.

Plaintiff argues that Strother could not have been in apprehension of contact because he "felt" the initial push rather than seeing it coming. Pl. Br. 23-24. But Count II is not premised on apprehension with regard to the initial contact. It alleges that, "[g]iven the unexpected and forceful nature of Piegaro's initial contact with Chief Strother, and Piegaro's continued advance toward him, Chief Strother was in imminent apprehension of further offensive contact and injury." ¶ 26. After the initial push, Plaintiff "did not retreat and continued pushing," ¶ 14, and after being placed under arrest, "continued to push, pull away, and struggle with Chief Strother," creating an imminent risk of injury on a flight of marble stairs. ¶¶ 16, 27. Moreover, contrary to Plaintiff's portrayal of Strother as unaware of Plaintiff, the Counterclaim alleges that Strother saw Plaintiff following the group up the stairs and positioned himself between Plaintiff and the entrance. ¶¶ 12–13. *Bridgeforth*, upon which Plaintiff relies, Pl. Br. 24, involved a plaintiff who had no awareness that the defendant was approaching and therefore could not have experienced apprehension before the contact occurred. *Bridgeforth v. Compass Grp. USA, Inc.*, No. A-1761-18T2, 2020 N.J. Super. Unpub. LEXIS 1114, at *17 (App. Div. June 11, 2020). By contrast, Strother alleges that he was aware of Plaintiff's approach and, following the initial contact, was fully aware of Plaintiff's continued physical advances and reasonably apprehended further offensive contact. ¶¶ 12-14, 26-27. Plaintiff's contention that no "new contact" occurred after the initial push, Pl. Br. 24, is beside the point; assault requires imminent apprehension of contact, not completed contact, and in any event the Counterclaim alleges that Plaintiff continued to push against Strother. ¶¶ 14, 16, 27. Moreover, Plaintiff's recharacterization of those allegations—as describing "a person trying to retreat from a stranger's grip," Pl. Br. 24—improperly substitutes his version of events for the facts

alleged in the Counterclaim.[8] But as this Court has previously held when the shoe was on the other foot, that is not permitted under Rule 12(b)(6). *Piegaro*, 2026 U.S. Dist. LEXIS 170574, at *10 (Quraishi, J.) (construing pleading in light most favorable to the non-moving party); *see also Twombly*, 550 U.S. at 555.[9] Because the Counterclaims adequately plead the elements of assault and battery, the motion to dismiss Counts I and II should be denied.

## V. PLAINTIFF IS NOT ENTITLED TO ATTORNEYS' FEES UNDER NEW JERSEY'S ANTI-SLAPP STATUTE.

Plaintiff seeks an award of fees and costs under UPEPA. Pl. Br. 26-27. Because Strother's defamation Counterclaim neither falls within UPEPA's intended scope nor warrants dismissal, Plaintiff's request should be denied. UPEPA provides a mechanism for the swift dismissal of meritless lawsuits brought to "chill" constitutionally protected speech. *Lento L. Grp., PC v. Hendrickson*, 485 N.J. Super. 56, 61 (App. Div. 2026); *see also Paucek*, 349 F.R.D. at 509. More specifically, UPEPA was enacted to protect public expression on matters of public concern, not to immunize alleged physical misconduct or knowingly false statements. *See, e.g.*, *Satz v. Starr*, 482 N.J. Super. 55, 64 (App. Div. 2025). Accordingly, while UPEPA serves an important role in

---

[8] Plaintiff's reliance on the Municipal Court transcript to argue that he lacked the requisite intent for assault is improper. Pl. Br. 25 n.9. Defendants previously submitted those same transcripts in support of their motion to dismiss the Complaint, and this Court expressly held that, while it could take judicial notice of their existence, it could not consider them for the truth of the matters asserted therein. *Piegaro*, 2026 U.S. Dist. LEXIS 170574, at *12 (Quraishi, J.) ("[T]he Municipal Court transcripts would run afoul of the limitations of judicial notice if the Court were to accept the contents of those transcripts as true."). In light of that ruling, Plaintiff cannot rely on the transcripts' contents as substantive evidence for the truth of what they say, which is exactly what he seeks to do.

[9] Plaintiff further argues that the Counterclaim is internally inconsistent because Paragraph 25 alleges that Plaintiff made contact "despite being advised that he could not enter," whereas Paragraph 14 alleges that the warning came after the initial contact. Pl. Br. 25 n.10. There is no inconsistency. Paragraph 14 describes a continuing course of conduct: Plaintiff pushed against Strother's arm; Strother advised that Plaintiff could not enter; and Plaintiff "did not retreat and continued pushing." Read as a whole and in the light most favorable to Strother, the allegations describe a single, coherent sequence of events which satisfy Rule 8.

safeguarding First Amendment rights, *Paucek*, 349 F.R.D. at 509, it does not extend protection to defamatory statements, which fall outside the First Amendment's protections. *Gonzalez*, 905 F.3d at 191.

This case has none of the hallmarks of the kind of retaliatory litigation that UPEPA strives to protect against. To the contrary, Plaintiff initiated litigation against Strother, and Strother asserted, as Rule 13(a) requires, his own claims arising from the same events that Plaintiff placed at issue. The defamation Counterclaim, therefore, reflects the parties' competing accounts of the same underlying incident. A statute intended to deter strategic lawsuits, i.e., lawsuits designed to silence constitutionally protected speech, has no application here.

Moreover, for the reasons discussed in § II, *supra*, Strother has plausibly stated a claim for defamation. Because the Counterclaim is neither a meritless attempt to "chill" protected speech nor subject to dismissal, Plaintiff is not entitled to fees or costs under N.J.S.A. 2A:53A-58. The Court should therefore deny Plaintiff's request.

## VI. THE PLEADINGS SHOULD NOT BE STRICKEN.

Plaintiff argues that, even if Strother's Counterclaims are compulsory and therefore subject to tolling, they lose that protection because they were filed fourteen days after the deadline for Plaintiff's amended complaint as opposed to fourteen days after the opinion on Defendants' motion to dismiss permitting that amendment. Plaintiff construes this as a late filing and seeks the extraordinary remedy of striking Strother's Counterclaims and Defendants' Answer in their entirety. Pl. Br. 18-19. This argument fails.

Initially, motions to strike under Rule 12(f) are limited to matter that is "redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. P. 12(f). A purportedly late pleading falls within none of those categories. And such motions are disfavored, particularly where, as here, striking the Defendants' pleading would effectively result in their default. Rather, the Third Circuit

has long expressed a strong preference for resolving cases on the merits rather than through procedural defaults. *See, e.g., Mrs. Ressler's Food Prods. v. KZY Logistics* LLC, 675 F. App'x 136, 137 (3d Cir. 2017); *see also Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984) ("[W]e have repeatedly stated our preference that cases be disposed of on the merits whenever practicable."); *Wilson v. King*, No. 06-CV-2608, 2010 U.S. Dist. LEXIS 16184, at *12 (E.D. Pa. Feb. 24, 2010) (denying motion to strike an answer filed ten months late because doing so "would undermine the strong interest the Court has in resolving disputes on the merits").

In any event, Defendants do not concede that the Answer and Counterclaims were untimely. Rather, the Court's July 31, 2026 Order permitted Plaintiff to file a First Amended Complaint within fourteen days after dismissing Count Four against Princeton without prejudice. ECF No. 27. Under those circumstances, the Defendants reasonably understood that the date by which their responsive pleadings were due was fourteen days from the deadline for amendment. Had Plaintiff amended on August 14, 2026, Defendants would therefore have been required to prepare and file responsive pleadings directed to both the Complaint and then a First Amended Complaint. As it turns out, Plaintiff chose not to amend, but Defendants did not know that until the due date for amendment. Defendants accordingly filed within fourteen days of that date. Nor would it have made sense for them to do otherwise, since that would potentially have meant filing duplicative pleadings—for both the original and amended complaint.

Defendants correctly interpreted the Court's Order to allow them 14 days to file from the due date of any amendment; certainly that interpretation was a reasonable one.[10] If, however, the

---

[10] Plaintiff argues that the Court's July 31, 2026 Order permitted an amendment only as to a Count against Princeton and therefore cannot explain the timing of Strother's Counterclaims. Pl. Br. 21 n.8. That argument misses the point. Counsel reasonably understood that the deadline for responsive pleadings and counterclaims would run from the date by which Plaintiff was permitted to amend. The brief delay in filing Strother's Counterclaims was not an act taken in bad faith or

Court deems it necessary, Defendants are certainly willing to file a formal motion for leave to file *nunc pro tunc* pursuant to Rule 6(b)(1)(B).[11] The determination under Rule 6(b)(1)(B) "is at bottom an equitable one, taking into account all relevant circumstances surrounding the party's omission," including prejudice, length of delay, reason for the delay, and whether the movant acted in good faith. *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). Those factors overwhelmingly favor Defendants. *First*, Plaintiff cannot demonstrate prejudice. His principal argument is that the Counterclaims will expand discovery leading to "fishing expeditions" of Plaintiff's social media and discovery of Strother's defamation damages. Pl. Br. 20. But that is not prejudice arising from the date of filing; it is merely a consequence of Strother having claims asserted against him, and it would exist equally had the Counterclaims been filed a few days earlier. Plaintiff's reliance on *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 924 (3d Cir. 1990), in this regard is misplaced; *Berger* concerned a belated attempt to inject new issues into a case, whereas here the Counterclaims were asserted with the first responsive pleading, at the outset of discovery, and concern the same incident asserted in the Complaint.

Indeed, discovery remains ongoing, and Strother has already responded to Plaintiff's Interrogatories and produced documents responsive to Plaintiff's Requests for Production concerning the Counterclaims. No deadlines were affected, and the filing occurred only fourteen days after the date Plaintiff contends was the applicable deadline. Courts routinely find far longer delays insufficient to establish meaningful prejudice. *See, e.g.*, *Livingstone v. Haddon Point Manager, LLC*, No. 19-13412 (RBK/AMD), 2021 U.S. Dist. LEXIS 230828, at *17 (D.N.J. Dec.

---

for gamesmanship purposes, but a good faith calculation of the applicable deadline in light of the Court's Order permitting amendment.

[11] Fed. R. Civ. P. 6(b)(1)(B) permits an extension after expiration of a deadline based upon a showing of excusable neglect. *See Drippe v. Tobelinski*, 604 F.3d 778, 785 (3d Cir. 2010).

1, 2021) (denying motion to strike Answer filed two months late where plaintiff failed to demonstrate prejudice); *Welch & Forbes, Inc. v. Cendant Corp. (In re Cendant Corp. Prides Litig.)*, 235 F.3d 176, 183 (3d Cir. 2000) (characterizing a three-week delay as "trivial"); *Manus Corp. v. NRG Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 188 F.3d 116, 130 (3d Cir. 1999) (finding a two-month delay to be "insignificant").[12] Plaintiff's real objection is not to the brief delay, but the existence of the Counterclaims themselves. That is not prejudice under *Pioneer*.

Accordingly, even assuming *arguendo* that the Answer and Counterclaims were untimely, the *Pioneer* factors support a finding of excusable neglect and leave to file *nunc pro tunc*. Plaintiff's request to strike the pleadings should be denied.

## VII. PLAINTIFF IS ENTITLED, AT MOST, TO STRIKE THE REQUEST FOR ATTORNEYS' FEES.

The Counterclaims include, as part of the prayer for relief, a request for attorneys' fees. To the extent the Court agrees that such fees are unavailable, the proper remedy is to strike that portion of the prayer for relief, not dismiss otherwise viable causes of action. *See Fulton Fin. Advisors, Nat'l Ass'n v. NatCity Invs., Inc.*, No. 09-4855, 2013 U.S. Dist. LEXIS 148025, at *66 (E.D. Pa. Oct. 15, 2013) (striking claim for attorneys' fees rather than dismissing). Therefore, any relief as to this portion of Plaintiff's motion should be narrowly tailored to the fee request itself.

## CONCLUSION

For the reasons provided herein, the Court should deny Plaintiff's motion to dismiss, to strike, and his request for attorneys' fees and costs in its entirety.

---

[12] Plaintiff's reliance on *Ragguette v. Premier Wines & Spirits*, 691 F.3d 315, 331–32 (3d Cir. 2012), Pl. Br. 19, does not alter the analysis. Defendants do not rely on lack of prejudice alone, as discussed; the minimal length of delay, the reason for it, and the Defendants' good faith each independently favor their position.

Dated: October 23, 2026
Newark, New Jersey

Respectfully submitted,

*s/ Lawrence S. Lustberg*

Lawrence S. Lustberg
Anne M. Collart
Jessica A. Masi
**FBT Gibbons LLP**
One Gateway Center
Newark, New Jersey 07102-5310
Telephone: (973) 596-4500
llustberg@fbtgibbons.com
acollart@fbtgibbons.com
jmasi@fbtgibbons.com

*Attorneys for Defendants*
*The Trustees of Princeton University and*
*Kenneth E. Strother, Jr.*

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on this day, October 23, 2026, I authorized the electronic filing of the foregoing with the Clerk of the Court using CM/ECF system which will send a notification of such filing to all registered counsel of record.

Dated: October 23, 2026
Newark, New Jersey

*/s/ Lawrence S. Lustberg*
Lawrence S. Lustberg