Christian T. Becker (N.J. Bar No. 044142005)
Andrew C. Bernstein (admitted *pro hac vice*)
KASOWITZ LLP
1633 Broadway
New York, New York 10019
(212) 506-1700
CBecker@Kasowitz.com
ABernstein@Kasowitz.com

*Attorneys for Plaintiff/Counterclaim-Defendant David Piegaro*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DAVID PIEGARO,<br><br>Plaintiff,<br><br>v.<br><br>THE TRUSTEES OF PRINCETON UNIVERSITY and KENNETH E. STROTHER, JR.,<br><br>Defendants. | Civil Action No. 3:25-cv-13919-ZNQ-JTQ |

**PLAINTIFF/COUNTERCLAIM-DEFENDANT'S**
**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS**
**<u>MOTION TO DISMISS AND TO STRIKE</u>**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................1

ARGUMENT ....................2

I. STROTHER CANNOT PLEAD DEFAMATION ....................2

A. Strother Alleges No Actionable Statements ....................2

B. Strother Does Not Plausibly Plead Actual Malice ....................5

II. THE COUNTERCLAIMS ARE UNTIMELY ....................8

A. Tolling Does Not Apply Because Strother Filed Late Without Permission ....................8

B. Defamation Is a Permissive Counterclaim Not Subject to Tolling ....................9

C. Recoupment Cannot Support Affirmative Relief ....................12

III. THE COURT SHOULD DECLINE JURISDICTION OVER THE DEFAMATION COUNT ....................13

IV. THE ASSAULT AND BATTERY COUNTS FAIL TO PLEAD INTENT AND APPREHENSION ....................13

V. ONLY MR. PIEGARO IS ENTITLED TO FEES AND COSTS ....................15

CONCLUSION ....................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aleynikov v. Goldman Sachs Grp., Inc.*,
2016 WL 6440122 (D.N.J. Oct. 28, 2016) ....................11, 12

*Anglin v. Anglin*,
2018 WL 1278304 (D.N.J. Mar. 12, 2018) ....................3

*Appletree v. City of Hartford*,
555 F. Supp. 224 (D. Conn. 1983)....................11

*Assocs. Home Equity Servs., Inc. v. Troup*,
778 A.2d 529 (N.J. Super. Ct. App. Div. 2001) ....................12

*Berger v. Edgewater Steel Co.*,
911 F.2d 911 (3d Cir. 1990) ....................9

*Berkery v. Est. of Stuart*,
988 A.2d 1201 (N.J. Super. Ct. App. Div. 2010) ....................5

*Beverly Enters., Inc. v. Trump*,
182 F.3d 183 (3d Cir. 1999) ....................5

*Bridgeforth v. Compass Grp. USA, Inc.*,
2020 WL 3097683 (N.J. Super. Ct. App. Div. June 11, 2020) ....................13

*Buvel v. Bristol Myers Squibb Co.*,
2024 WL 3824025 (D.N.J. Aug. 15, 2024) ....................14

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*,
893 F.2d 26 (2d Cir. 1990) ....................11

*Crawford v. W. Jersey Health Sys.*,
847 F. Supp. 1232 (D.N.J. 1994)....................3

*Drippe v. Tobelinski*,
604 F.3d 778 (3d Cir. 2010) ....................9

*Farash v. Cont'l Airlines, Inc.*,
337 F. App'x 7 (2d Cir. 2009) ....................14

*First Nat'l Prop. Mgmt., LLC v. Chapman*,
2024 WL 230115 (D.N.J. Jan. 22, 2024)....................3

*In re Frescati Shipping Co.*,
886 F.3d 291 (3d Cir. 2018)....................12

*Harris v. Steinem*,
571 F.2d 119 (2d Cir. 1978)....................10

*Holtec Int'l v. Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins, PC*,
2026 WL 2014782 (N.J. Super. Ct. App. Div. July 13, 2026)....................4

*Howell v. Town of Fairfield*,
123 F.R.D. 429 (D. Conn. 1988)....................11

*Illiano v. Wayne Bd. of Educ.*,
2024 WL 687756 (D.N.J. Feb. 20, 2024)....................5

*Jevremovic v. Courville*,
2023 WL 5127332 (D.N.J. Aug. 10, 2023)....................6, 7, 8

*Jevremovic v. Courville*,
2024 WL 4024144 (D.N.J. Aug. 30, 2024)....................5

*Jevremovic v. Courville*,
2025 WL 1911696 (D.N.J. July 11, 2025)....................5

*Kennedy v. Am. Airlines, Inc.*,
195 F. Supp. 3d 646 (D.N.J. 2016)....................3

*Konowicz v. Carr*,
838 F. App'x 1 (3d Cir. 2020)....................5

*Lento L. Grp., PC v. Hendrickson*,
361 A.3d 1278 (N.J. Super. Ct. App. Div. 2026)....................6

*Love v. N.J. Dep't of Corr.*,
2016 WL 2757738 (D.N.J. May 12, 2016)....................14

*M.R. v. Ridley Sch. Dist.*,
744 F.3d 112 (3d Cir. 2014)....................10

*Naughright v. Weiss*,
826 F. Supp. 2d 676 (S.D.N.Y. 2011) ....................13

*Paucek v. Shaulis*,
349 F.R.D. 498 (D.N.J. 2025)....................15

*Perez v. Factory Direct of Secaucus, LLC*,
2013 WL 5770734 (D.N.J. Oct. 23, 2013) ....................3, 4

*Petro-Lubricant Testing Lab'ys, Inc. v. Adelman*,
184 A.3d 457 (N.J. 2018) ....................8

*Schiavone Constr. Co. v. Time, Inc.*,
847 F.2d 1069 (3d Cir. 1988) ....................7

*Silver Lining Enters., LLC v. New Gen Enters., LLC*,
2026 WL 2268477 (D.N.J. Aug. 6, 2026) ....................9

*Simon v. Nw. Univ.*,
2017 WL 25173 (N.D. Ill. Jan. 3, 2017)....................11

*Wang v. Univ. of Pittsburgh*,
181 F.4th 301 (3d Cir. 2026) ....................5

*Xerox Corp. v. SCM Corp.*,
576 F.2d 1057 (3d Cir. 1978) ....................10

*In re Zhejiang Topoint Photovoltaic Co.*,
651 B.R. 477 (Bankr. D.N.J. 2023) ....................8, 10

*Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*,
836 F.2d 173 (3d Cir. 1988) ....................4

**Statutes**

N.J.S.A. 2A:14-3....................9

N.J.S.A. 2A:53A-50(b) ....................15

N.J.S.A. 2A:53A-58....................15

**Other Authorities**

Wright & Miller's *Federal Practice & Procedure* § 1309 (4th ed. 2026)....................3

## PRELIMINARY STATEMENT

Defendant Kenneth E. Strother, Jr.'s opposition seeks to rewrite his counterclaims. *See* Dkt. 40 ("Opp.") at 10–11, 12 n.3, 13, 15 & n.4, 18, 25, 26 n.9, 29. But even with his outside-the-pleadings glosses, Strother fails to meet his burden. His counterclaims should be dismissed with prejudice for four primary reasons.

*First*, Strother cannot state a claim for defamation. Each challenged statement was either not published by Plaintiff David Piegaro or is an unactionable opinion. *See* Dkt. 37-1 ("Mot.") at 10–13. The GoFundMe page Strother introduces—for the first time—with his briefing, Dkt. 40-1, only confirms that amendment would be futile. Furthermore, though Strother concedes he must plead actual malice, his only serious argument is to assert that Mr. Piegaro was a "direct participant" in the events. Opp. at 14–15. But nothing in Strother's pleading or the exhibits remotely suggests that Mr. Piegaro ever doubted the veracity of his statements; to the contrary, every fact shows the consistency of his narrative. Mot. at 14–16. This flaw is fatal.

*Second*, the counterclaims are untimely. Strother does not dispute that his claims would be time-barred without tolling, but tolling requires a timely pleading absent here. Mot. at 17–19; Opp. at 8, 28–30. Moreover, his defamation claim is permissive, not compulsory, and cannot be tolled. Mot. at 18–19. And recoupment, Opp. at 9, does not permit affirmative damages or offsets for nonidentical transactions.

*Third*, any surviving defamation claim belongs in state court, where additional protections under New Jersey's anti-SLAPP law would apply. Mot. at 21–23. *Fourth*, Strother's assault and battery counterclaims fail because he pleads that he did not perceive incoming contact and that Mr. Piegaro intended to enter Whig Hall, not to harm Strother. Mot. at 23–25. *Finally*, the Court should strike Strother's fee demands, which he does not attempt to defend. Opp. at 30.

## <u>ARGUMENT</u>

## I. STROTHER CANNOT PLEAD DEFAMATION

Strother's defamation counterclaim should be dismissed with prejudice for two independent reasons: he does not plead that Mr. Piegaro made any actionable statement, and he cannot plausibly plead actual malice.

### A. Strother Alleges No Actionable Statements

Strother first alleges that Mr. Piegaro "told the New York Times that he had been assaulted." ¶ 17. But liability can attach only to statements Mr. Piegaro actually made. Mot. at 10–11. Strother concedes that the April 1, 2025 *Times* article "does not quote Plaintiff for the specific defamatory statements at issue." Opp. at 18. The article offers merely a reporter's description of "the crux of the dispute" in a story about Mr. Piegaro's trial and litigation position. Mot. at 10–11; Dkt. 37-3. Strother pleads no facts showing that Mr. Piegaro was the source of that description.[1] *See*

[1] Strother argues that the "article makes absolutely clear" that Mr. Piegaro told the "reporter during an interview" that he was assaulted. Opp. at 13. It does not. The

*Perez v. Factory Direct of Secaucus, LLC*, 2013 WL 5770734, at *6 (D.N.J. Oct. 23, 2013). Strother's authorities are inapposite, as those that considered defamatory statements at all addressed a defendant's liability for repeating them, not whether a source can be liable for a reporter's paraphrase. *See* Opp. at 12.

Strother also asserts that Mr. Piegaro made unspecified statements to other "third parties, including online and other publications," but identifies no other dates, media, or audiences. ¶ 32; *see also* ¶ 34; Mot. at 12–13. Strother contends that alleging unnamed "online" publications "following the April 29, 2024 incident" suffices. Opp. at 10–11. Yet courts reject these "vague references," including in authorities Strother cites. *Kennedy v. Am. Airlines, Inc.*, 195 F. Supp. 3d 646, 655–56 (D.N.J. 2016); *see also Anglin v. Anglin*, 2018 WL 1278304, at *4 (D.N.J. Mar. 12, 2018); *First Nat'l Prop. Mgmt., LLC v. Chapman*, 2024 WL 230115, at *4 (D.N.J. Jan. 22, 2024) ("[A] claim identifying the statements' recipients only as third parties, without more, is likely insufficient." (citation modified)) (Opp. at 10).[2] Nor

---

article attributes only one statement to such an interview: "'I really believe I'm the victim,' Mr. Piegaro said in an interview. 'I really don't think I did anything.'" Dkt. 37-3.

[2] The language Strother quotes from *First National*, Opp. at 10, traces to *Crawford v. West Jersey Health Systems*, 847 F. Supp. 1232, 1238–39 (D.N.J. 1994), which dismissed a defamation claim and denied leave to amend where the complaint pleaded no publication dates and at least some statements clearly fell outside the limitations period. *See also* 5A Wright & Miller's *Federal Practice & Procedure* § 1309 (4th ed. 2026) ("[I]n libel and slander suits courts require the time and place of the publication of the alleged defamatory matter to be specifically stated in the complaint.").

can Strother rescue his claim by attaching to his brief a May 20, 2025 GoFundMe page that his pleading never identifies.[3] Dkt. 40-1.

Even assuming Mr. Piegaro told the *Times* that Strother assaulted him and that Strother can properly introduce the GoFundMe page, the challenged statements from these sources, read in context, are protected opinions about a litigated dispute. *See* Mot. at 11–12; *Perez*, 2013 WL 5770734, at *5 (dismissing defamation claim where "the context . . . makes it clear to a reasonable reader that the statements . . . describe disputed facts in a lawsuit"); *Holtec Int'l v. Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins, PC*, 2026 WL 2014782, at *10 (N.J. Super. Ct. App. Div. July 13, 2026) (holding law firm's article describing suit it filed on behalf of a client was protected by the fair-report privilege).[4] The *Times* article reports that "[t]he trial featured competing accounts of the confrontation" and presents the paraphrase that "Mr. Piegaro says he was the one who was assaulted" alongside other descriptions of the trial evidence and testimony. Mot. at 6, 11–12; Dkt. 37-3. The GoFundMe page—which seeks donations for Mr. Piegaro's legal costs—links to the *Times* article and likewise discloses the facts underlying his opinion of the events,

---

[3] Strother invokes the integral-document doctrine to shoehorn in the GoFundMe page. Opp. at 12 n.3. But while the pleading expressly identifies the *Times* article, it does not identify the GoFundMe page. A "complaint may not be amended by the briefs in opposition to a motion to dismiss." *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).

[4] *See also id.* at *11 (holding article fell "short of the high standard of actual malice," given the "content, form, and context," and dismissing with prejudice).

including why the prosecution dismissed the most serious charges. Dkt. 40-1. Given the presentation of these "underlying nondefamatory factual bas[es]" in the context of a criminal defendant's attempt to raise donations for his lawsuits, Strother's claim fails because "readers can interpret the factual statements and decide for themselves whether the writer's opinion was justified." *Illiano v. Wayne Bd. of Educ.*, 2024 WL 687756, at *8 (D.N.J. Feb. 20, 2024); *see also Berkery v. Est. of Stuart*, 988 A.2d 1201, 1213 (N.J. Super. Ct. App. Div. 2010) (author's assertion that criminal charges were dropped against plaintiff because the legal establishment "had had enough" was protected opinion where author disclosed underlying facts).[5]

### B. Strother Does Not Plausibly Plead Actual Malice

Strother concedes he must plead actual malice and argues he has done so through "circumstantial evidence." Opp. at 14. But his conclusory allegation that Mr. Piegaro "knew that the statements were false," ¶ 33, is insufficient; he must plead "enough supporting facts to make inferring the mental state plausible," *Wang v. Univ. of Pittsburgh*, 181 F.4th 301, 313 (3d Cir. 2026); *see also Konowicz v. Carr*,

[5] Strother argues that he alleges defamation *per se* and that context cannot convert a verifiable fact into an opinion. Opp. at 17 (citing *Beverly Enters., Inc. v. Trump*, 182 F.3d 183, 188 (3d Cir. 1999)). But *Beverly* held nonactionable statements insinuating criminal activity where a reasonable listener would recognize them as something else, such as a "vent" by an "angry" person. And this Court has dismissed, as "unactionable opinions" in context, statements suggesting that a plaintiff was a human trafficker. *Jevremovic v. Courville*, 2024 WL 4024144, at *6 (D.N.J. Aug. 30, 2024) (Quraishi, J.); *see also Jevremovic v. Courville*, 2025 WL 1911696, at *4 (D.N.J. July 11, 2025) (same for verifiable allegations that plaintiff conducted experimental treatment on another against her will and lied about her death).

838 F. App'x 1, 4 (3d Cir. 2020) (courts "look to the speaker's subjective understanding of the truth or falsity of a statement when considering actual malice"); *Jevremovic v. Courville*, 2023 WL 5127332, at *7 (D.N.J. Aug. 10, 2023) (Quraishi, J.) ("Plaintiffs need to plead sufficient facts to plausibly allege that Defendant actually doubted the veracity of her statements." (citation modified)).

The pleading reveals only Mr. Piegaro's genuine belief in his accounts. Strother's principal argument is that Mr. Piegaro must have known his statements were false because he "was a direct participant" in the events. Opp. at 14. But Strother's differing recollection does not make Mr. Piegaro's account a knowing falsehood, and Strother cites no authority finding such an allegation sufficient. *See* Mot. at 15 (citing *Lento L. Grp., PC v. Hendrickson*, 361 A.3d 1278, 1288 (N.J. Super. Ct. App. Div. 2026) (finding no actual malice where "the only person who can attest to the veracity of [defendant's] . . . statement is [defendant] herself")). Strother ignores *Lento*, and ignores the facts that make his theory implausible. For example, his pleading supports Mr. Piegaro's belief that Strother "grabbed me and threw me down the marble stairs": Strother admits that he "grabb[ed] Piegaro by the arm" and then "released him, at which point Piegaro fell down the stairs." ¶¶ 16–17. And the *Times* article on which he relies describes Mr. Piegaro as "convinced of his innocence" and quotes a trial witness who testified that Strother held Mr. Piegaro

"like an open pair of scissors" before "dropping him."[6] Mot. at 15–16; Dkt. 37-3. Strother misunderstands his burden in responding only that Mr. Piegaro "improperly assumes the truth of his own version of events." Opp. at 16. *Strother's* pleading demonstrates Mr. Piegaro's belief in his statements, which defeats actual malice whether or not that belief is correct. *See Jevremovic*, 2023 WL 5127332, at *7.

Strother's remaining argument is that Mr. Piegaro should have removed the challenged statements from his GoFundMe page after a prosecutor's office issued a September 2025 internal affairs ("IA") report. Opp. at 15. But even had Mr. Piegaro seen the report (Strother pleads no facts suggesting that he did, ¶ 34), Strother cites no authority requiring Mr. Piegaro to retract statements published months earlier.[7] Indeed, Strother concedes that actual malice is measured at the time of publication, Opp. at 15, yet identifies no defamatory statement made after the IA report, *see* ¶ 34; Mot. at 12–13, 16. Nor does he contend that any GoFundMe "update" added or modified any defamatory statements; the only update he identifies is a non-

[6] Strother also ignores facts supporting Piegaro's belief that Strother "fabricated charges." The GoFundMe page and the Answer explain that prosecutors dropped three of four charges and that Piegaro was acquitted of the remaining, downgraded charge. Dkt. 30 at 21 ¶ 112; Dkt. 40-1. Having just sat through the trial, Piegaro had ample reason to believe those charges were fabricated.

[7] Strother relies only on *Schiavone Construction Co. v. Time, Inc.*, 847 F.2d 1069, 1074, 1091–92 & n.39 (3d Cir. 1988), where a magazine "consciously chose to omit" exculpatory language and published despite four "unbiased" and "highly reliable" sources who earlier contradicted the alleged defamatory statement's accuracy.

defamatory August 2026 comment about this Court's motion opinion.[8] Dkt. 40-1. Moreover, Strother does not explain what in the IA report could have caused Mr. Piegaro to doubt his firsthand account and the trial evidence, much less allege that he actually doubted it. *See* Mot. at 15–16; *Jevremovic*, 2023 WL 5127332, at *8 (dismissing where "Plaintiffs do not point to any facts—circumstantial or direct—that demonstrates Defendant entertained any serious doubts about the veracity of the statements"). The Court should dismiss with prejudice because both publications on which Strother relies have now been filed, and both fail to support the claim.

## II. THE COUNTERCLAIMS ARE UNTIMELY

### A. Tolling Does Not Apply Because Strother Filed Late Without Permission

Strother does not dispute the limitations periods that govern his counterclaims or that each would be barred absent tolling. Mot. at 17; Opp. at 8, 27–28. But a compulsory counterclaim is tolled only if it is "timely asserted," meaning "filed within the time provided by Rule 12(a)." *E.g.*, *In re Zhejiang Topoint Photovoltaic Co.*, 651 B.R. 477, 490 & n.4 (Bankr. D.N.J. 2023). Strother's counterclaims were not. Mot. at 18. Strother admits that tolling protects a defendant from a plaintiff who delays suit until the defendant's claims have nearly expired, Opp. at 8, but Mr.

[8] *See Petro-Lubricant Testing Lab'ys, Inc. v. Adelman*, 184 A.3d 457, 468 (N.J. 2018) (holding that "a republication occurs to an online publication if an author makes a material and substantive change to the original defamatory article").

Piegaro sued nine months before the assault and battery limitations period ran. Nothing prevented Strother from filing on time if he thought he had a claim.[9]

Strother's claimed misreading of his deadline does not change the result. Absent a "formal motion for extension of time" and a "finding of excusable neglect," the Court may not accept the late pleading. *Drippe v. Tobelinski*, 604 F.3d 778, 785 (3d Cir. 2010). Strother twice declined to file that motion after being put on notice, Dkt. 31; Mot. at 20–21, now offering to do so only if "the Court deems it necessary," Opp. at 28–29. Any such motion would fail because his defamation claim "would inject new issues into the case requiring extensive discovery."[10] *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 924 (3d Cir. 1990). Strother cites no authorities excusing even a short delay in raising *counterclaims*. *See* Opp. at 28–30.

### B. Defamation Is a Permissive Counterclaim Not Subject to Tolling

Strother cannot dispute that without tolling, his defamation counterclaim expired by May 20, 2026, which was one year after the latest publication he can identify and three months before he asserted the claim. N.J.S.A. 2A:14-3; Opp. at 8,

[9] *Cf. Silver Lining Enters., LLC v. New Gen Enters., LLC*, 2026 WL 2268477, at *5 (D.N.J. Aug. 6, 2026) (dismissing with prejudice compulsory counterclaim that expired before complaint was filed and refusing equitable tolling where counterclaimant, after failing to defeat plaintiff's claims, took an "if-you-cannot-beat-them-join-them approach"); *see also* Mot. at 20–23.

[10] That the parties have requested discovery on the counterclaims only confirms that they will require extensive factual investigation. Opp. at 29; *see also* Mot. at 20.

11–12. The claim is untimely because it is a permissive counterclaim that cannot be tolled by Mr. Piegaro's pleading. *See In re Zhejiang*, 651 B.R. at 490.

Strother argues that his defamation counterclaim is compulsory because the statements are Mr. Piegaro's later "accounts of the April 29, 2024 encounter and the resulting prosecution." Opp. at 6. True, but as Strother's cited authority holds, that two claims "are related does not erase the[] significant differences between the causes of action." *M.R. v. Ridley Sch. Dist.*, 744 F.3d 112, 120 (3d Cir. 2014) (rejecting compulsory-counterclaim treatment where claims arose under the same statute but turned on different legal questions, acts, and documentation). The proper inquiry is whether the claims involve "(1) many of the same factual issues; (2) the same factual and legal issues; or (3) offshoots of the same basic controversy between the parties." *Xerox Corp. v. SCM Corp.*, 576 F.2d 1057, 1059 (3d Cir. 1978). Mr. Piegaro's claims turn on what Defendants did on April 29, 2024, its immediate aftermath, and the prosecution. Strother's defamation claim turns on different elements, defenses, and facts, including what Mr. Piegaro said a year later, the platform and audience of each publication, Mr. Piegaro's state of mind in 2025, Strother's reputation, and the voicemails Strother received. ¶¶ 17, 30–36.

It is no surprise that courts have held defamation counterclaims permissive in similar circumstances. *See Harris v. Steinem*, 571 F.2d 119, 123–24 (2d Cir. 1978) (libel counterclaim based on plaintiff's filing and "publicity surrounding the suit"

was permissive because its "essential issues" differed from the main claim); *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 893 F.2d 26, 29 (2d Cir. 1990) (defamation counterclaims permissive where they presented distinct "factual questions" and "legal issues"); *Simon v. Nw. Univ.*, 2017 WL 25173, at *4 (N.D. Ill. Jan. 3, 2017) (defamation counterclaim over statements about an investigation was permissive in suit alleging evidence was falsified during the investigation itself because, although "technically related," the claims raised "different" issues).

Strother's reliance on *Appletree* fails because there, the defamation counterclaim rested on "a libelous publication contemporaneous with the transaction complained of in the original dispute." *Appletree v. City of Hartford*, 555 F. Supp. 224, 230 (D. Conn. 1983). Strother alleges no such *contemporaneous* statement here. Notably, that court later found officers' defamation counterclaims based on statements made between plaintiff's arrest and his civil rights filing—as here—were permissive, recognizing that beyond "common questions of truth and falsity" the case presented "distinct and particular defamation issues, foreign to [a] civil rights suit," including questions of "publication," "privilege," "liability standards," fact versus opinion, and whether counterclaimants were public officials. *Howell v. Town of Fairfield*, 123 F.R.D. 429, 431 (D. Conn. 1988).[11]

[11] *Aleynikov v. Goldman Sachs Grp., Inc.*, 2016 WL 6440122, at *8 (D.N.J. Oct. 28, 2016), Opp. at 7, is also inapposite. There, Goldman asked the court to declare that it had not maliciously prosecuted Aleynikov by reporting him to law enforcement,

### C. Recoupment Cannot Support Affirmative Relief

Strother's fallback contention—that his counterclaims survive by equitable recoupment—also fails. Opp. at 9. Recoupment is a "defense [that] is not intended to be a catch-all to allow any claims otherwise barred." *In re Frescati Shipping Co.*, 886 F.3d 291, 312 (3d Cir. 2018). It "allow[s] only truly similar claims arising from the same transaction to offset one another," such as claims over "the same taxable event or the same contractual obligation." *Id.* In New Jersey, recoupment must involve "the *identical* transaction that provided plaintiff with a cause of action, and no affirmative relief may be granted independent of plaintiff's claim." *Assocs. Home Equity Servs., Inc. v. Troup*, 778 A.2d 529, 539 (N.J. Super. Ct. App. Div. 2001) (citation omitted). Strother's own authority, Opp. at 7, thus rejected recoupment as a "defensive and narrow remedy" unavailable for a defamation claim that was related but "not identical" to the opposing claim and turned on events that "extended for some months thereafter," *Aleynikov*, 2016 WL 6440122, at *12–13.

Recoupment thus cannot save Strother's counterclaims. He has not pleaded a recoupment defense, and none of his authorities permits recoupment to support the affirmative tort damages and fees he seeks. *See* Opp. at 9. His argument doubly fails

---

and Aleynikov's defamation claim challenged those same reports. The court called relation back "a close[] call." Piegaro's claims, by contrast, do not rely on his later public statements.

as to defamation because that counterclaim arises from publications a year after the events underlying the Complaint, ¶¶ 17, 32–34, not an "identical transaction."

## III. THE COURT SHOULD DECLINE JURISDICTION OVER THE DEFAMATION COUNT

If the defamation claim survives, the Court should decline supplemental jurisdiction for the reasons in the Motion. Mot. at 21–23. Strother argues that his claim is merely an "alternative theor[y] of recovery based on the same acts" as Mr. Piegaro's claims. Opp. at 21. But apart from falsity, every defamation element turns on different evidence from a different period. None of Strother's authorities, Opp. at 21–22, exercised supplemental jurisdiction over a claim governed by a novel state statute that was designed to address the very type of claim at issue through protections unavailable in federal court, *see* Mot. at 22.

## IV. THE ASSAULT AND BATTERY COUNTS FAIL TO PLEAD INTENT AND APPREHENSION

Strother pleads a single continuous contact for which he alleges no imminent apprehension or intent. The assault claim first fails because Strother did not see the incoming alleged contact before he "unexpected[ly]" "felt" it, ¶¶ 14, 26, and thus cannot have been in apprehension. Mot. at 23–24 (citing *Bridgeforth v. Compass Grp. USA, Inc.*, 2020 WL 3097683, at *2, *6 (N.J. Super. Ct. App. Div. June 11, 2020)); *see also Naughright v. Weiss*, 826 F. Supp. 2d 676, 685 (S.D.N.Y. 2011) ("If

the Plaintiff was not aware of the potential for danger, or apprehensive that imminent offensive contact could occur, there can be no claim for assault.”).[12]

Recognizing that his allegations foreclose a claim based on the initial incidental contact, Strother now relies on his supposed apprehension of further contact. Opp. at 25. But courts reject such “bald” allegations that lack “sufficient facts” to establish intent to cause harmful contact or fear thereof. *Love v. N.J. Dep’t of Corr.*, 2016 WL 2757738, at *12 (D.N.J. May 12, 2016). What Strother pleads is that he grabbed Mr. Piegaro after the initial contact and that Mr. Piegaro “attempted to pull away,” ¶ 16, which does not plead the necessary intent. Strother’s claim that he feared injury, ¶ 26—despite his police training, size, and having seized Mr. Piegaro—also fails to allege intent and is conclusory and implausible as to apprehension, *cf. Buvel v. Bristol Myers Squibb Co.*, 2024 WL 3824025, at *3 (D.N.J. Aug. 15, 2024) (Quraishi, J.) (“Courts are reluctant to protect extremely timid individuals from exaggerated fears of contact . . . .” (citation modified)).

Strother’s counterclaims for assault and battery also fail because Strother pleads that Mr. Piegaro’s intent was to enter Whig Hall, not to touch, frighten, or hurt Strother. Mot. at 24–25; ¶¶ 14, 20, 25. None of Strother’s authorities supports a

---

[12] Strother claims that he saw Piegaro walking behind his group at some point before the contact. ¶ 12. But mere awareness of a person’s presence is a far cry from apprehension of imminent contact. *See, e.g.*, *Farash v. Cont’l Airlines, Inc.*, 337 F. App’x 7, 10 (2d Cir. 2009) (holding “vague allegations of improper body language” insufficient) (citation modified).

claim where, as here, Strother admits he stepped in front of Mr. Piegaro and put his arm out as Mr. Piegaro attempted to walk into a building. Opp. at 23–24; ¶¶ 13–14.

## V. ONLY MR. PIEGARO IS ENTITLED TO FEES AND COSTS

As Strother does not defend his three requests for attorneys' fees, Opp. at 30, the Court should strike them with prejudice, *see* Mot. at 25–26. Mr. Piegaro, by contrast, is entitled to fees and costs under UPEPA. Mot. at 26–27. Strother does not dispute that fees are mandatory under N.J.S.A. 2A:53A-58 if Mr. Piegaro prevails. Instead, he circularly argues that UPEPA does not protect defamatory statements. Opp. at 26–27. Strother also argues that his claims are not "retaliatory" simply because they are counterclaims. Opp. at 27. Though they are retaliatory, *see* Mot. at 21–23, UPEPA does not require such a motivation and contains no exception for counterclaims, N.J.S.A. 2A:53A-50(b)-(c).

Because Strother's counterclaim rests entirely on a litigant's public description of his prosecution and civil claims—which Strother does not dispute is "an issue under consideration or review" in a judicial proceeding and a "matter of public concern"—Mr. Piegaro is entitled to fees if he prevails. *See Paucek v. Shaulis*, 349 F.R.D. 498, 513–14 (D.N.J. 2025).

## CONCLUSION

For the foregoing reasons, the Court should grant the motion with prejudice and award Mr. Piegaro his reasonable attorneys' fees and costs.

Dated: November 5, 2026
New York, New York

Respectfully,

By: */s/ Christian T. Becker*

Christian T. Becker
(N.J. Bar No. 044142005)
Andrew C. Bernstein
(admitted *pro hac vice*)
KASOWITZ LLP
1633 Broadway
New York, New York 10019
(212) 506-1700
CBecker@Kasowitz.com
ABernstein@Kasowitz.com

*Attorneys for Plaintiff/Counterclaim-Defendant David Piegaro*

**CERTIFICATE OF SERVICE**

I, Christian T. Becker, hereby certify that on November 5, 2026, a copy of the foregoing instrument was served via ECF on all counsel of record.

By: */s/ Christian T. Becker*
Christian T. Becker